1
2
3
4
5
6
7
8

Jeffrey B. Isaacs (SBN 117104)
Jerome H. Friedberg (SBN 125663)
William Wargo (SBN 189987)
**ISAACS | FRIEDBERG LLP**
555 South Flower Street, Suite 4250
Los Angeles, California 90071
Phone:     (213) 929-5550
Facsimile:   (213) 955-5794
Email:     *jisaacs@ifcounsel.com*
               *jfriedberg@ifcounsel.com*
               *wwargo@ifcounsel.com*

*Attorneys for Plaintiff Louis Loe*

9
10

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LOUIS LOE,**

           Plaintiff,

     vs.

**UNITED STATES OF AMERICA;
TRACY L. WILKISON,**
     in her official capacity only;
**KRISTI KOONS JOHNSON,**
     in her official and individual
     capacities; and
**DOE UNIDENTIFIED FEDERAL
LAW ENFORCEMENT AGENTS
1-10,**
     in their individual capacities,

           Defendants.

Case No. 2:21-cv-03348

**COMPLAINT FOR:**

**(1) RETURN OF PROPERTY
     PURSUANT TO FEDERAL
     RULE OF CRIMINAL
     PROCEDURE 41(g);**

**(2) DAMAGES PURSUANT TO
     *BIVENS V. SIX UNKNOWN
     NAMED AGENTS OF THE
     FEDERAL BUREAU OF
     NARCOTICS*, 403 U.S. 388
     (1971);**

**(3) DECLARATORY RELIEF;
     AND**

**(4) AN ORDER REQUIRING
     DISCLOSURE OF WARRANT
     AND RECEIPT OF TAKEN
     PROPERTY PURSUANT TO
     FEDERAL RULE OF
     CRIMINAL PROCEDURE
     41(f);**

**DEMAND FOR JURY TRIAL**

1
**COMPLAINT**

Plaintiff Louis Loe alleges as follows:

**INTRODUCTION**

1.      Plaintiff brings this action pseudonymously as Louis Loe against Defendants United States of America ("**United States**"); Acting United States Attorney for the Central District of California, Tracy L. Wilkison ("**Wilkison**"), in her official capacity only; Assistant Director in Charge of the Los Angeles Field Office of the Federal Bureau of Investigation ("**FBI**"), Kristi Koons Johnson ("**Koons Johnson**"), in her official and individual capacities; and DOE Unidentified Federal Law Enforcement Agents 1 through 10 ("**DOES 1-10**"), in their individual capacities (collectively, "**Defendants**" or the "**Government**").

2.      Plaintiff seeks redress for the Government's unlawful and unconstitutional seizure, search and retention of Plaintiff's property in violation of Plaintiff's Fourth and Fifth Amendment rights.

3.      Plaintiff stored valuable personal property in a safe deposit Box No. 2300 that he leased at U.S. Private Vaults, Inc. ("**USPV**") in Beverly Hills, California, none of which is contraband.

4.      As described more fully below, between on or about March 22, 2021 and March 26, 2021, the United States Attorney's Office for the Central District of California (the "**USAO**"), the FBI and DOES 1-10 unlawfully seized and then broke open and searched Plaintiff's safe deposit box and its contents, in violation of Plaintiff's Fourth Amendment rights.  Thereafter, Defendants unlawfully deprived Plaintiff of the use, benefit and enjoyment of his property, and are continuing to deprive him of the use, benefit and enjoyment of his property, by conditioning the return of the contents of his safe deposit box on his disclosing his identity to the Government, so that the Government can criminally investigate him, in violation of his Fifth Amendment rights to due process and against self-incrimination.

//

//

## JURISDICTION, AUTHORITY AND VENUE.

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. section 1331 and Article III of the United States Constitution in that the United States is a party to this action, and the action involves questions of federal statutory and constitutional law.

6.      This Court has the authority to order Defendants to return property pursuant to Federal Rule of Criminal Procedure 41(g) ("**Rule 41(g)**"), even in the absence of a criminal proceeding, as it was the subject of an unlawful seizure, an unlawful search and an otherwise unlawful deprivation of property.  *See Ramsden v. United States*, 2 F.3d 322, 324 (9th Cir. 1993); *United States v. Martinson*, 809 F.2d 1364, 1366-67 (9th Cir. 1987).

7.      This Court has the authority to award damages against the law enforcement agents who engaged in the unlawful seizure and search of Plaintiff's property pursuant to the United States Supreme Court's decision in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("***Bivens***"), and its progeny.

8.      This Court has the authority to grant the declaratory relief sought herein pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57.

9.      This Court has the authority to order the Government to disclose to Plaintiff's counsel a copy of the warrant by which Plaintiff's property was purportedly seized and the receipt of his property taken, pursuant to Federal Rule of Criminal Procedure 41(f) ("**Rule 41(f)**").

10.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1), (2) and (3) and (e)(1) because Defendants include officers and employees of the United States and its agencies and, on information and belief, they reside in this district; because a substantial part of the events and/or omissions giving rise to the claims alleged herein occurred in this district; and because a substantial part of the

property that is the subject of this action is situated in this district.

## PARTIES.

**A.      Plaintiff.**

11.      Plaintiff Louis Loe is, and at all relevant times was, an individual over the age of 18 and residing in Los Angeles County, California.[1]

12.      On information and belief, Defendants are unaware of Plaintiff's identity.

13.      Defendants have publicly stated that "USPV was a criminal business"; that it "conspired with its criminal clients to distribute drugs, launder money, and structure transactions to avoid currency reporting requirements"; that these were "among [the] other offenses" USPV and its clients committed; and that "the majority of box holders are criminals . . . ."  Defendants have also expressly stated their intention to criminally investigate any USPV box holder whose identity they can determine, and, on information and belief, are currently actively conducting such investigations.

14.      Plaintiff therefore brings this action pseudonymously, to protect himself from the risk of unfounded criminal investigation and prosecution arising from the Government's unlawful seizure and search of his property, and from injury, harassment, embarrassment and retaliation based merely on the fact that he is a USPV box holder.  *See Does I-XXII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067-68 (9th Cir. 2000) ("In this circuit, we allow parties to use pseudonyms in the 'unusual case' which nondisclosure of the party's identity 'is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment.'") (quoting *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981)).

**B.      Defendants.**

15.      Defendant United States of America is, and at all relevant times was, the

---

[1] This complaint uses male pronouns only as a grammatical convenience consistent with the reference to Louis Loe.  Plaintiff makes no allegation as to his or her gender.

**COMPLAINT**

United States, its departments, agencies and entities, including those responsible for the Fourth and Fifth Amendment violations alleged in this action.

16.  Defendant Wilkison is, and at all relevant times was, the Acting United States Attorney for the Central District of California (the "**U.S. Attorney**"). The U.S. Attorney has authority over all policies and practices of the USAO, and all actions taken by Assistant United States Attorneys for the Central District of California.  Defendant Wilkison is sued in her official capacity only.

17.  Defendant Koons Johnson is, and at all relevant times was, the Assistant Director in Charge of the FBI's Los Angeles Field Office (the "**Assistant Director**"). The Assistant Director has authority over the policies and procedures implemented by, and the actions of, FBI agents assigned to the Los Angeles Field Office. Defendant Koons Johnson is sued in her official and individual capacities.

18.  Plaintiff is unaware of the true names and capacities of those Defendants sued as DOES 1-10, and therefore sues those Defendants using their fictitious names. On information and belief, each such Defendant is a federal law enforcement agent who supervised, participated in, or otherwise aided and assisted the unlawful seizure and search of Plaintiff's safe deposit box and its contents, and is jointly and severally responsible and liable for the damage and harm caused Plaintiff.  Plaintiff will amend this pleading to allege the true names and capacities of DOES 1-10 when they have been ascertained.

## **RELATED CASES.**

19.  This case is related to a civil case pending in this district before United States District Judge Mark C. Scarsi, entitled, *DOES 1-6 v. United States of America, at al*., Case No. 2:21-cv-03254, filed on April 15, 2021.  That case was assigned to Judge Scarsi as related to the criminal case pending before him, filed on March 9, 2021, entitled *United States of America v. U.S. Public Vaults, Inc*., Case No. 2:21-cr-00106.

20.  This case is also related to the following civil cases pending in this

district before United States District Judge Gary R. Klausner:

> (a)   *John Doe v. United States of America, et al.*,

Case No. 2:21-cv-02803, filed on March 31, 2021 ("**Case No. 02803**");

> (b)   *Richard Roe v. United States of America, et al.*,

Case No. 2:21-cv-02919, filed on April 5, 2021;

> (c)   *Michael Me v. United States of America, et al.*,

Case No. 2:21-cv-02990, filed on April 6, 2021; and

> (d)   *Charles Coe. v. United States of America, et al.*,

Case No, 2:21-cv-03019, filed on April 7, 2021.

21.   This case is related to the above civil cases pursuant to Local Rule 83-1.3, in that: (a) they all arise from the same or closely related transactions, happenings and events; (b) they all call for the determination of the same or substantially related or similar questions of law and fact; and (c) because they all name the United States as a defendant and seek some of the same relief, they would entail substantial duplication of effort if heard by different judges.

22.   A Notice of Related Case is being filed concurrently herewith.

## STATEMENT OF FACTS.

**A.    U.S. Private Vaults, Inc.**

23.   USPV has operated a facility offering private safe deposit boxes for rent to the public at 9182 West Olympic Boulevard in Beverly Hills for the past decade. There is nothing secretive about the business; it advertises by prominent store front signage and on-line through a website that provides detailed information about the services it offers, including videos of customers accessing their safe deposit boxes. *See* https://www.usprivatevaults.com.

24.   USPV houses several hundred safe deposit boxes of varying sizes, each secured by its own key.  USPV leases these boxes to the public under yearly leases and provides security and insurance for their contents.  On information and belief, many of USPV's customers live in the vicinity and use its services because it is

conveniently located.

25.     Notably, USPV does not keep a key to any rented box, which means that the only person with the ability to open the box is the box holder or his or her authorized designee.  *See* https://www.usprivatevaults.com/uspv-vs-bank-safe-deposit-box.

26.     According to USPV's website:

- USPV has been operating in Beverly Hills since 2011.

- USPV provides several advantages that are unavailable at bank safety deposit boxes:

    o   All USPV boxes are insured.  Banks do not offer insurance for their boxes.

    o   USPV does not hold keys to their clients' boxes.  Banks do keep a key.

    o   USPV is not subject to federal banking rules that could mandate "bank holidays" or a suspension of withdrawals in case of an economic crisis.

    o   Accessing a box at USPV takes much less time than at a bank.  Indeed, the facility advertises "In & out access in 5 minutes."

    o   USPV boxes are not subject to probate lock out upon the death of the box owner.

    o   USPV offers a wider selection of box sizes than do banks.

- Security at USPV is handled by ADT (a publicly traded security company with over $5 billion in revenue, which operates "the largest network of security professionals in the United States").

https://investor.adt.com/press-releases/press-release-details/2021/ADT-Reports-Fourth-Quarter-and-Full-Year-2020-Results/default.aspx.

27.     All of the safe deposit boxes that USPV leases to the public include enhanced security features.  Those features include:

(a)     USPV identifies box holders by encrypted biometric information in the form of an iris scan and does not use other personal identifying information to identity box holders.  USPV advertises this feature as an enhanced privacy and

7

**COMPLAINT**

security measure that protects against the theft of personal identifying information.

(b)     USPV does not maintain keys to box holders' safe deposit boxes. Each box holder maintains all keys to his or her box and can only access the vault containing their box through an iris scan and/or biometric hand geometry scan (which reads the shape of a customer's hand as opposed to finger or palm prints).

(c)     USPV offers 24/7 monitoring by the ADT security company through the use of a video link to ADT's central station, as well as motion detectors, heat sensors and other sophisticated security measures to detect the presence of intruders after regular business hours.

**B.     Plaintiff is a USPV Box Holder.**

28.     Plaintiff leases safe deposit Box No. 2300 at USPV.  Plaintiff was given the only keys to the box and has maintained control over the box since commencement of the lease.  He is current on his lease payments.  He has an expectation of privacy in the interior of the box and its contents.

29.     Plaintiff leased a box at USPV for the sake of convenience.  He is not an owner, officer, director, manager, supervisor, employee, or representative of USPV, and is not associated with or a customer of the Gold Business that is co-located with or adjacent to USPV.  He is not aware of any criminal activity occurring at or connected to USPV, and would not have leased a box, or continued to lease a box, at USPV if he had become aware of such activity.

30.     Plaintiff's box contains sealed envelopes holding currency belonging to Plaintiff.  The currency is Plaintiff's savings and for emergency purposes; it is not contraband.

31.     Plaintiff's property was in his safe deposit box when the Government seized control of USPV and all of the safety deposit boxes on or about March 22, 2021.  Plaintiff has been unable to enter the USPV facility or access his box and its contents since the commencement of the Government's search on the morning of March 22, 2021.

**COMPLAINT**

**C.    The Government Seizes and Searches All USPV Safe Deposit Boxes and Their Contents, Including Plaintiff's.**

32.    Beginning early in the morning on Monday, March 22, 2021, agents of the United States, including DOES 1-10, executed a seizure warrant at USPV.

33.    In executing the warrant, the agents closed the parking lot and the USPV facility to the public.  *See* "Federal Investigation Takes Over Beverly Hills Strip Mall," *Beverly Hills Courier* (Mar. 25, 2021), available at https://beverlyhillscourier.com/2021/03/25/federal-investigation-takes-over-beverly-hills-strip-mall/ ("The strip mall at the intersection of West Olympic Boulevard and South Palm Drive is hardly something to gawk at—upscale by strip mall standards, but still a strip mall.  But since March 22, dozens of local and federal agents have taken over the lot.").

34.    On Tuesday, March 23, when the agents were still present at USPV, counsel for the box holder in the Case No. 02803 visited the site and attempted to speak with an agent to learn whether there was a warrant for his clients' safe deposit boxes, and, if so, to obtain a copy of the warrant pursuant to the Federal Rules of Criminal Procedure.  A police officer guarding the perimeter carried counsel's message inside to the agents and returned with a message that no agents would come out to speak with counsel, but that counsel could call a telephone number that the agents provided.  The number provided was the FBI's general Los Angeles number.  Counsel left a voicemail message at that number, but his call was never returned.

35.    Counsel subsequently learned that Assistant United States Attorney ("**AUSA**") Andrew Brown was handling the matter.  That same day, another attorney for the box holder in Case No. 02803 contacted AUSA Brown to attempt (a) to determine whether his clients' safe deposit boxes had been searched; (b) to determine whether his clients' property had been seized; and (c) in the event either had occurred, to obtain a copy of the warrant pursuant to the Federal Rules.

36.    During the ensuing conversation, AUSA Brown told the attorney the

9

**COMPLAINT**

following:

- The Government is seizing all safe deposit boxes at the site, even though the boxes are separately leased by numerous unknown individuals;

- The Government will inspect and inventory the contents of every box and use that information to try to identify every box's owner(s);

- The Government will not read the contents of notebooks or thumb drives that they find in the boxes;

- A search and seizure warrant was served on the owners or management of USPV, but AUSA Brown declined to disclose either the names of the persons served or their counsel;

- The Government will not provide the search and seizure warrant to a USPV box holder unless and until the box holder identifies himself or herself to the Government;

- If a box holder identifies himself or herself, the Government will commence an investigation of the holder to determine whether he or she came by the contents of his or her box legally, and the box holder will be required to establish his or her claim to lawful ownership of the property contained in the box; and

- The Government assumes that all USPV box holders are engaged in illegal activity, even though the Government does not know the identity of the box holders or the contents of their boxes.

37.    Accordingly, as confirmed by AUSA Brown, it was and remains the Government's plan to subject every USPV box holder to criminal investigation by doing the following:

(a)    Each safe deposit box holder would be required to disclose his or her identity to the Government to make a claim for the return of the contents of their box.

(b)    Once provided with the box holder's identity, the Government would open a criminal investigation into that person based upon AUSA Brown's belief that anybody who utilized the safe deposit boxes at USPV was a criminal engaged in felonious activity.

(c)    The Government would also refuse to return property found in a

**COMPLAINT**

483965.1

1  safe deposit box to its owner unless the box holder explained to the Government how

2  they obtained that property and could prove to the Government that it was not related

3  to criminal activity.

4  **D.     The Government's Phony Claims Process.**

5       38.     As of March 26, 2021, the USPV location was closed and a sign – a true

6  and correct depiction of which is pictured below – was affixed to the front door

7  directing safe deposit box holders to use the web link *forms.fbi.gov/uspvclaims* to

8  "initiate a claim for your US Private Vaults box":



19       39.     The form located at forms.fbi.gov/uspvclaims – a true and correct

20  depiction of which is pictured below – states: "To make a claim for property stored at

21  U.S. Private Vaults in Beverly Hills, California, please provide the following

22  information.  An FBI agent will contact you for additional details."  The form

23  requires the box holder to enter his or her first name, last name and contact number

24  for submission:

25  //

26  //

27  //

28  //

**COMPLAINT**

483965.1

40.     The form also requires the person submitting it to acknowledge that "it is a federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning the facts on this form as applicable under the provisions of Title 18, United States Code, Section 1001, et seq."

41.     On information and belief, the Government's website and form are nothing more than a subterfuge for obtaining the identities and contact information of USPV box holders, in furtherance of the Government's plan to criminally investigate all USPV box holders, as confirmed by the following facts, among others:

(a)     The form does not ask, or even allow, a box holder to list his or her box number, and thus it cannot possibly aid the Government in returning the contents of particular safe deposit boxes to their owners;

(b)     Government representatives have admitted to persons who have completed and submitted forms that the FBI currently has no established or standardized policies, procedures, or process for returning the contents of safe deposit boxes to their owners; and

(c)     Since the Government had not initiated forfeiture proceedings against the contents of the vast majority of safe deposit boxes, there was no legal

**COMPLAINT**

basis for requiring box holders to submit "claims" to obtain return of their property.

**E.    The Government's Public Statements Concerning the Seizure and Search of the USPV Safe Deposit Boxes.**

42.    In an April 2, 2021 public filing in Case No. 02803, the USAO made the following relevant statements, among others, concerning the seizure and search of the USPV safe deposit boxes, which necessarily included Plaintiff's box:

(a)    "USPV was a criminal business that conspired with its criminal clients to distribute drugs, launder money, and structure transactions to avoid currency reporting requirements, among other offenses."

(b)    "[T]he majority of box holders are criminals . . . ."

(c)    "The government obtained a sealed criminal seizure warrant for, among other things, the nests of safety deposit boxes located at USPV."

(d)    "During the week of March 22 through 26, federal agents executed the seizure warrant and removed the contents of safety deposit boxes, inventorying their contents in the process . . . ."

(e)    "The inventory was completed on site."

(f)    "Agents left USPV on March 26, 2021."

(g)    "[A]ll the inventory searches were completed by March 26, 2021."

**F.    Plaintiff Is Suffering Ongoing Harm.**

43.    Plaintiff's property that he was storing in his safe deposit box remains in the Government's possession and control, and Plaintiff continues to be deprived of any use, benefit, enjoyment, or access to that property.  Meanwhile, Plaintiff has no means to recover possession of that property unless he first subjects himself to criminal investigation by following the Government's phony claims procedure described above, and even then the Government has no established and standardized policies, procedures, or process for promptly returning Plaintiff's property to him.

//

//

13
**COMPLAINT**

1

## GOVERNING LEGAL PRINCIPLES

2

**A.      Relevant Search and Seizure Law.**

3          44.     The Fourth Amendment to the United States Constitution provides that,

4    "[t]he right of the people to be secure in their persons, houses, papers, and effects,

5    against unreasonable searches and seizures, shall not be violated, and no Warrants

6    shall issue, but upon probable cause, supported by Oath or affirmation, and

7    particularly describing the place to be searched, and the persons or things to be

8    seized."  U.S. Const., amend IV.

9          45.     The confiscation, detention, inspection and/or cataloguing of the

10   contents of a safe deposit box containing private property is a search and seizure for

11   purposes of the Fourth Amendment.  *See, e.g., United States v. Chadwick*, 433 U.S. 1,

12   11 (1977) ("By placing personal effects inside a double-locked footlocker,

13   respondents manifested an expectation that the contents would remain free from

14   public examination."), *abrogated on other grounds by California v. Acevedo*,

15   500 U.S. 565 (1991); *United States v. Spilotro*, 800 F.2d 959, 962 (9th Cir. 1986)

16   ("We begin by noting that there is no question that defendant Blasko has standing to

17   challenge the search of his home, person, and safe deposit box."); *United States v.*

18   *Wetselaar*, No. 2:11-CR-00347-KJD, 2013 WL 8206582, *10 (D. Nev. Dec. 31,

19   2013) ("[A]s renters of those boxes, Defendants had a reasonable expectation of

20   privacy in the contents, which include the space inside the box and the inner metal

21   liner itself.").

22         46.     The Supreme Court has made clear that a warrant must describe the

23   places to be searched and the items to be seized with particularity and supported by

24   probable cause specific to those places and items:

25         The Warrant Clause of the Fourth Amendment categorically
           prohibits the issuance of any warrant except one "particularly
26         describing the place to be searched and the persons or things to be
           seized."  The manifest purpose of this particularity requirement was
27         to prevent general searches.  By limiting the authorization to search
           to the specific areas and things for which there is probable cause to
28         search, the requirement ensures that the search will be carefully

1
2
3
4
5

> tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit. Thus, the scope of a lawful search is "defined by the object of the search and the places in which there is probable cause to believe that it may be found.  Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase."

6   *Maryland v. Garrison*, 480 U.S. 79, 84 (1987) (quoting *United States v. Ross*,

7   456 U.S. 798, 824 (1982)); *accord United States v. SDI Future Health, Inc.,* 568 F.3d

8   684, 702-703 (9th Cir. 2009) ("A warrant must not only give clear instructions to a

9   search team, it must also give legal, that is, not overbroad, instructions.  Under the

10   Fourth Amendment, this means that there [must] be probable cause to seize the

11   particular thing[s] named in the warrant.  [P]robable cause means a fair probability

12   that contraband or evidence of a crime will be found in a particular place, based on

13   the totality of circumstances.") (citations and quotation marks omitted).

14       47.    Consequently, the search of a place or the seizure of an item pursuant to

15   an overbroad warrant for which there is no specific probable cause is invalid.  *See*

16   *United States v. Know,* 58 F.3d 423, 427 (9th Cir. 1995) ("The warrant authorized the

17   seizure of virtually every document and computer file at HK Video . . . . [T]he

18   warrant contained no limitations on which documents within each category could be

19   seized or suggested how they related to specific criminal activity.  By failing to

20   describe with any particularity the items to be seized, the warrant is indistinguishable

21   from the general warrants repeatedly held by this court to be unconstitutional.").

22   Moreover, probable cause in the warrant context requires more than "mere suspicion"

23   that the place to be searched or the item to be seized is connected to criminal activity;

24   it requires an "evidentiary nexus" to the alleged criminal activity.  *United States v.*

25   *Wanless*, 882 F.2d 1459, 1466 (9th Cir. 1989) ("Even if the evidence here would . . .

26   justify the . . . suspicion that there were illegal substances . . . [m]ere suspicion does

27   not rise to the level of probable cause.") (internal quotations omitted); *United States*

28   *v. Schultz*, 14 F.3d 1093, 1097-98 (6th Cir. 1994) ("While an officer's 'training and

15

**COMPLAINT**

1   experience' may be considered in determining probable cause, it cannot substitute for

2   the lack of evidentiary nexus . . . between the safe deposit boxes and any criminal

3   activity.  Officer Ideker did not have anything more than a guess that contraband or

4   evidence of a crime would be found in the boxes, and therefore the . . . warrant

5   should not have been issued.").

6        48.    It is also well established that a warrant based upon deliberately or

7   recklessly false or misleading information material to the issue of probable cause is

8   invalid, in whole or in part.  As the Supreme Court has decreed:

> [W]hen the Fourth Amendment demands a factual showing sufficient
> to comprise "probable cause," the obvious assumption is that there
> will be a *truthful showing*.  This does not mean 'truthful' in the sense
> that every fact recited in the warrant affidavit is necessarily correct,
> for probable cause may be founded upon hearsay and upon
> information received from informants, as well as upon information
> within the affiant's own knowledge that sometimes must be garnered
> hastily.  But surely it is to be 'truthful' in the sense that the
> information put forth is believed or appropriately accepted by the
> affiant as true.  It is established law, that a warrant affidavit must set
> forth particular facts and circumstances underlying the existence of
> probable cause, so as to allow the magistrate to make an independent
> evaluation of the matter.  If an informant's tip is the source of
> information, the affidavit must recite some of the underlying
> circumstances from which the informant concluded that relevant
> evidence might be discovered, and some of the underlying
> circumstances from which the officer concluded that the informant,
> whose identity need not be disclosed, . . . was "credible" or his
> information "reliable."  Because it is the magistrate who must
> determine independently whether there is probable cause, it would be
> an unthinkable imposition upon his authority if a warrant affidavit,
> revealed after the fact to contain a deliberately or reckless false
> statement, were to stand beyond impeachment."

21   *Franks v. Delaware*, 438 U.S. 154, 164-65 (1984) (citations and internal quotations

22   omitted, emphasis in original); *see also United States v. Perkins*, 850 F.3d 1109, 1123

23   (9th Cir. 2017) ("We hold that the district court clearly erred in finding that Agent

24   Ensley did not omit relevant information with at least a reckless disregard for whether

25   the omissions would render the warrant application misleading.  Had the omitted

26   information been included, the application would not have supported probable cause.

27   We, therefore, reverse the district court's denial of the motion to suppress evidence

28   obtained pursuant to the search warrant, and vacate Perkins' conviction.").

16

**COMPLAINT**

49.     The "good faith" exception to a legally insufficient search or seizure warrant, recognized by the Supreme Court in *United States v. Leon*, 468 U.S. 897 (1984), does not apply where the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923; *see also United States. v. Underwood*, 725 F.3d 1076, 1085-86 (9th Cir. 2013) ("An affidavit is so lacking in indicia of probable cause, or bare bones, when it fails to provide a colorable argument for probable cause. A colorable argument is made when 'thoughtful and competent judges' could disagree that probable cause does not exist. Here . . . the affidavit submitted . . . in support of the state search warrant . . . was so deficient as to render official belief in its existence entirely unreasonable.") (citations omitted).

50.     The Supreme Court has held that "the opening of containers found during inventory searches is based on the principle that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence"; that "inventory searches should be designed to produce an inventory"; and that "individual police officer[s] must not be allowed so much latitude that inventory searches are turned into a purposeful and general means of discovering evidence of crime." *Florida v. Wells*, 495 U.S. 1, 4-5 (1990) (internal quotations omitted).

51.     For an inventory search to be valid, it must be required by and conducted in accordance with established and standardized policies and procedures. *See United States v. Bulacan,* 156 F.3d 963, 970 (9th Cir. 1998) ("'discretion when conducting an inventory'" must be "'exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity'") (quoting *Wells*, 495 U.S. at 3-4); *United States v. Johnson*, 936 F.2d 1082, 1084 (9th Cir. 1991) ("[A]n inventory search is unconstitutional unless it is conducted both (a) pursuant to an established inventory-search policy . . . and (b) in accordance with the official procedures of the relevant [law enforcement agency]".).

//

1    52.    According to the Supreme Court, the purpose of an inventory search is

2    limited to "the protection of the owner's property while it remains in police custody;

3    the protection of the police against claims or disputes over lost or stolen property; and

4    the protection of the police from potential danger." *South Dakota v. Opperman*, 428

5    U.S. 364, 368 (1976) (citations omitted).

6    53.    Thus, "[a]n inventory search will not be sustained where the court

7    believed that the officers were searching for incriminating evidence of other

8    offenses." *United States v. Feldman*, 788 F.2d 544, 553 (9th Cir. 1986).

9    **B.    Relevant Due Process Law.**

10   54.    The Due Process Clause of the Fifth Amendment to the United States

11   Constitution provides that, "[n]o person shall be . . . deprived of life, liberty, or

12   property, without due process of law."  U.S. Const., amend. V.

13   55.    The government's continued retention of seized property – even if

14   initially lawful – raises the issue of procedural due process.  *See Case v. Eslinger*, 555

15   F.3d 1317, 1330 (11th Cir. 2009) ("A complaint of continued retention of legally

16   seized property raises an issue of procedural due process. . ."); *see also Al Haramain*

17   *Islamic Foundation v. U.S. Dept. of Treasury*, 686 F.3d 965, 980 (9th Cir. 2012)

18   ("[T]he Constitution does require that the government take reasonable measures to

19   ensure basic fairness to the private party and that the government follow procedures

20   reasonably designed to protect against erroneous deprivation of the private party's

21   interests."); *Lewis v. City of Culver City*, 2018 WL 1406609, *2 (C.D. Cal. Mar. 19,

22   2018) ("[T]he continued retention of legally seized property would raise an issue of

23   procedural due process . . . ."); *Lena Sutton* v. *Leesburg, Alabama,* 2021 WL

24   1264244, *13 (N.D. Ala. Apr. 6, 2021) ("[T]he continued retention of legally seized

25   property. . . raises an issue of procedural due process.").

26   56.    The Fifth Amendment further provides that no person "shall be

27   compelled in any criminal case to be a witness against himself . . . ."  *Id*.

28   //

57.     The Fifth Amendment privilege against self-incrimination precludes the government from requiring disclosure of information where to do so presents a threat of criminal prosecution that is "real and appreciable" and not a mere "remote possibility." *Marchetti v. United States,* 390 U.S. 39, 48 (1968) ("In these circumstances, it can scarcely be denied that the obligations to register . . . created for petitioner 'real and appreciable,' and not merely 'imaginary and unsubstantial,' hazards of self-incrimination."); *Grosso v. United States*, 390 U.S. 62, 66-67 (1968) (Privilege against self-incrimination is implicated where "[t]he criminal penalties for . . . which petitioner is threatened are scarcely remote possibilities . . . yet he is obliged . . . to provide information which . . . he may reasonably expect would be provided to prosecuting authorities") (internal quotations omitted).

58.     It is a matter of well established constitutional jurisprudence that the government may not require a person to waive his Fifth Amendment privilege against self-incrimination in order to vindicate his Fourth Amendment rights against unreasonable searches and seizures.  *See Simmons v. United States*, 390 U.S. 377, 394 (1968) (where defendant "was obliged either to give up what he believed, with advice of counsel, a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination," Court found "it intolerable that one constitutional right should have to be surrendered in order to assert another"); *Bittaker v. Woodford*, 331 F.3d 715, 724 (9th Cir. 2003) ("The scope of required disclosure should not be so broad as to effectively eliminate any incentive to vindicate [one's] constitutional right[s].").

**C.    *Bivens.***

59.     In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court held that, "violation of [the Fourth Amendment's] command by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct," *id*. at 389, and that a plaintiff "is entitled to recover money damages for any

19

**COMPLAINT**

injuries he has suffered as a result of the agent's violation of the Amendment." *Id.* at 397; *see also Boule v. Egbert*, 980 F.3d 1309, 1315 (9th Cir. 2020) (Plaintiff's "Fourth Amendment claim . . . is a permissible area for *Bivens* claims," and thus "may proceed as a *Bivens* damages claim.")

60.     The Supreme Court has long held that punitive damages may be awarded in a *Bivens* action. *See Carlson v. Green*, 446 U.S. 14, 22 (1980) ("Punitive damages are 'a particular remedial mechanism normally available in the federal courts,' and are especially appropriate to redress the violation by a Government official of a citizen's constitutional rights.") (citation omitted).

## DEFENDANTS UNLAWFULLY SEIZED, SEARCHED AND DEPRIVED PLAINTIFF OF HIS PROPERTY

61.     Defendants' seizure and search of Plaintiff's safe deposit box and continued detention of his property was, and is, unlawful and unconstitutional in the following respects, among others.

62.     *First*, on information and belief, the seizure warrant for Plaintiff's box was invalid because Defendants lacked any probable cause that the contents of the box was contraband or otherwise connected to criminal activity.

63.     *Second*, on information and belief, Defendants knowingly or recklessly made materially false and misleading statements to the Magistrate Judge who issued the seizure warrant by either falsely stating that the Government had probable cause to believe that the contents of Plaintiff's box was contraband or otherwise connected to criminal activity, or by omitting to forthrightly advise the Magistrate Judge that the Government lacked such probable cause as to Plaintiff's box.

64.     *Third*, Defendants cannot avail themselves of the good faith exception to a facially deficient seizure warrant because the warrant was so lacking in indicia of probable cause with respect to Plaintiff's box and its contents as to render official belief in the existence of such probable cause entirely unreasonable.

65.     *Fourth,* Defendants acted unreasonably in breaking open Plaintiff's box

20
**COMPLAINT**

1   because they lacked probable cause that the contents of the box was contraband or

2   otherwise connected to criminal activity, and by breaking it open, Defendants

3   needlessly subjected its contents to theft and government tampering.

4       66.   *Fifth,* Defendants' purported "inventory search" of Plaintiff's box was

5   unlawful because their seizure of it was invalid in the first place, as entirely lacking in

6   probable cause.

7       67.   *Sixth,* Defendants' purported "inventory search" of Plaintiff's box was

8   also unlawful as it was, in fact, a pretext for conducting an investigatory search, the

9   true purpose of which was to further Defendants' indiscriminate criminal

10   investigation of USPV box holders.

11       68.   *Seventh,* Defendants' purported "inventory search" of Plaintiff's box was

12   also unlawful because it was not required by or conducted pursuant to established and

13   standardized agency policies and procedures.

14       69.   *Eighth*, Defendants impermissibly conditioned the return of Plaintiff's

15   property on subjecting himself to criminal investigation, in violation of his privilege

16   against self-incrimination.

17       70.   *Ninth,* since Defendants completed inventorying the contents of

18   Plaintiff's box on or before March 26, 2021, Defendants have deprived Plaintiff of

19   the use, benefit and enjoyment of his property without due process by failing to

20   promptly establish and implement a legitimate process for the immediate return of his

21   property, or even for verifying that Plaintiff is the owner of that property.

22   **FIRST CAUSE OF ACTION**

23   **(For Return of Property Pursuant to 41(g))**

24   **(Against Defendants United States, Wilkison and Koons Johnson)**

25       71.   Plaintiff repeats and realleges paragraphs 1 through 70 of this Complaint

26   as if fully alleged herein.

27       72.   Federal Rule of Criminal Procedure 41(g) provides that, "[a] person

28   aggrieved by an unlawful search and seizure of property or by the deprivation of

**COMPLAINT**

483965.1

1   property may move for the property's return . . . ."

2       73.     Plaintiff is a "person aggrieved" within the meaning of Rule 41(g)

3   because, as described more fully above:

4           (a)     Defendants unlawfully seized his safe deposit box at USPV and its

5   contents, in violation of his Fourth Amendment rights;

6           (b)     Defendants unlawfully searched that box and its contents, in

7   further violation of his Fourth Amendment rights;

8           (c)     Defendants have unlawfully deprived (and continue to deprive)

9   Plaintiff of the use, benefit and enjoyment of his property, in violation of his Fifth

10  Amendment due process rights; and

11          (d)     Defendants have unlawfully deprived (and continue to deprive)

12  Plaintiff of the use, benefit and enjoyment of his property by conditioning the return

13  of his property on his subjecting himself to criminal investigation, in violation of his

14  Fifth Amendment privilege against self-incrimination.

15      74.     Because Defendants' conduct as described herein constituted an

16  unlawful seizure of Plaintiff's safe deposit box and its contents, an unlawful search of

17  his box and its contents and an unlawful deprivation of Plaintiff's property without

18  due process and in violation of his privilege against self-incrimination, Plaintiff is

19  entitled to the return of his property under Rule 41(g).

20                          **SECOND CAUSE OF ACTION**

21              **(For Damages Pursuant to *Bivens, 403 U.S. 388 (1971)*)**

22              **(Against Koons Johnson individually and DOES 1-10)**

23      75.     Plaintiff repeats and realleges paragraphs 1 through 74 of this Complaint

24  as if fully alleged herein.

25      76.     Under the Fourth Amendment, Plaintiff's safe deposit box and its

26  contents may not be seized and searched without probable cause.

27      77.     Under the Fifth Amendment, Plaintiff may not be deprived of the use,

28  benefit and enjoyment of his property without due process of law.

78.     Under the Fifth Amendment, Plaintiff may not be deprived of the use, benefit and enjoyment of his property by having the return of his property conditioned on his waiver of his privilege against self-incrimination.

79.     Defendants Koons Johnson and DOES 1-10, as agents of the United States acting under color of authority, violated Plaintiff's Fourth Amendment rights by seizing his safe deposit box and its contents without probable cause.

80.     Defendants Koons Johnson and DOES 1-10, as agents of the United States acting under color of authority, violated Plaintiff's Fourth Amendment rights by searching his safe deposit box without probable cause.

81.     Defendants Koons Johnson and DOES 1-10, as agents of the United States acting under color of authority, also violated Plaintiff's Fifth Amendment rights by depriving Plaintiff of the use, benefit and enjoyment of the property he was storing in his safe deposit box without due process of law.

82.     Defendants Koons Johnson and DOES 1-10, as agents of the United States acting under color of authority, also violated Plaintiff's Fifth Amendment rights by impermissibly conditioning the return of Plaintiff's property on his waiver of his privilege against self-incrimination.

83.     Because Defendants Koons Johnson's and DOES 1-10's conduct as described herein constituted an unlawful seizure of Plaintiff's safe deposit box and its contents, an unlawful search of his box and its contents and an unlawful deprivation of Plaintiff's property without due process and in violation of his privilege against self-incrimination, Plaintiff is entitled to damages under *Bivens*, 403 U.S. 388 (1971), and its progeny, including, but not limited to, punitive and exemplary damages.

## THIRD CAUSE OF ACTION

### (Declaratory Relief)

### (Against All Defendants)

84.     Plaintiff repeats and realleges paragraphs 1 through 83 of this Complaint as if fully alleged herein.

23

**COMPLAINT**

85.     As described above, Plaintiff contends that Defendants have unlawfully seized his property, in violation of the Fourth Amendment; have unlawfully searched his property, in violation of the Fourth Amendment; and are unlawfully depriving him of the use, benefit and enjoyment of his property without due process and in violation of his privilege against self-incrimination, in violation of the Fifth Amendment.

86.     Defendants contend that their seizure, search and continued and indefinite detention of Plaintiff's property is reasonable and lawful, and therefore Plaintiff is not entitled to relief.

87.     Accordingly, a judicial declaration is necessary and appropriate at this time and under these circumstances, so that Plaintiff may ascertain his right to regain possession of his personal property that Defendants have seized and are continuing to detain, and to do so without having to subject himself to criminal investigation.

### FOURTH CAUSE OF ACTION

### (For Order Disclosing Warrant and

### Property Receipt Pursuant to Rule of 41(f))

### (Against Defendants United States, Wilkison and Koons Johnson)

88.     Plaintiff repeats and realleges paragraphs 1 through 87 of this Complaint as if fully alleged herein.

89.     Federal Rule of Criminal Procedure 41(f)(1)(C) provides, in relevant part, that, "[t]he officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises the property was taken . . . ."

90.     The Government has taken property from Plaintiff, namely, his safe deposit box at USPV and its contents.  Accordingly, pursuant to Rule 41(f), Plaintiff is entitled to receive a copy of any warrant by which the Government seized and/or searched his box and its contents and any receipt for the taking of that property.

//

483965.1

91.     On information and belief, the Government did not leave copies of the warrant and property receipt at the USPV facility or made them otherwise accessible to box holders or their counsel.  In fact, Defendants have refused to provide a copy of the warrant by which they seized and searched the USPV safe deposit boxes and their contents, unless and until box holders, including Plaintiff, identify themselves to Defendants, so that Defendants may criminally investigate them.

92.     Accordingly, Defendants should be ordered to provide Plaintiff's counsel with a copy of the warrant and the property receipt, without requiring Plaintiff to identify himself to Defendants as a condition precedent to obtaining copies of those documents.

## **PRAYER FOR RELIEF**

Plaintiff prays for judgment against Defendants as follows:

A.     For an order requiring Defendants to immediately return all property seized from Plaintiff's Box No. 2300 at USPV, without first requiring Plaintiff to disclose his identity and/or contact information to Defendants.

B.     For damages against Defendants Koons Johnson individually and DOES 1-10 in an amount to be determined at trial, but at least for the value of the property taken.

C.     For punitive and exemplary damages against Defendants Koons Johnson individually and DOES 1-10.

D.     For a declaration that Defendants' conduct as described in this Complaint has violated Plaintiff's rights under the Fourth and Fifth Amendments to the United States Constitution.

E.     For an order requiring Defendants to immediately provide Plaintiff's counsel with a copy of the warrant and property receipt, without requiring Plaintiff to first disclose his identity and/or contact information to Defendants.

//

//

483965.1

F.      For costs and reasonable attorney's fees pursuant to 28 U.S.C. § 2412.

G.      For such other and further relief as the Court deems just and proper.

DATED: April 19, 2021                    **ISAACS | FRIEDBERG LLP**


_____
Jeffrey B. Isaacs, Esq.
Jerome H. Friedberg, Esq.
*Attorneys for Plaintiff Louis Loe*

**COMPLAINT**

483965.1

## **DEMAND FOR JURY TRIAL**

Plaintiff Louis Loe hereby demands a jury trial on all issues properly triable to a jury pursuant to Federal Rule of Civil Procedure 38.

DATED:  April 19, 2021                          **ISAACS | FRIEDBERG LLP**

Jeffrey B. Isaacs, Esq.
Jerome H. Friedberg, Esq.
*Attorneys for Plaintiff Louis Loe*

27
**COMPLAINT**