BRIAN M. BOYNTON
Acting Assistant Attorney General, Civil Division
C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch, Civil Division
RICHARD MONTAGUE
Senior Trial Counsel, Torts Branch, Civil Division
JOSEPH A. GONZALEZ
Trial Attorney, Torts Branch, Civil Division
        U.S. DEPARTMENT OF JUSTICE
        Ben Franklin Station
        P.O. Box 7146
        Washington, D.C. 20044-7146
        (202) 598-3888 (phone)
        joseph.a.gonzalez@usdoj.gov

Attorneys for Defendant
KRISTI KOONS JOHNSON in her individual capacity

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| LOUIS LOE,<br>          Plaintiff,<br><br>          v.<br><br>UNITED STATES OF AMERICA, ET AL.,<br>          Defendants. | Case No. 2:21-cv-03348-RGK-MAR<br><br>**Defendant Kristi Koons Johnson's (In Her Individual Capacity Only) Notice Of Motion And Motion To Dismiss The Complaint; Memorandum Of Points And Authorities And Declaration Of Joseph A. Gonzalez; [Proposed] Order Granting Motion Lodged Under Separate Cover**<br><br>Date:     August 23, 2021<br>Time:     9:00 a.m.<br>Courtroom: 850, the Honorable<br>          R. Gary Klausner |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on August 23, 2021 at 9:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable R. Gary Klausner, United States District Court, Courtroom 850, Royal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, California 90012, defendant Kristi Koons Johnson (in her individual capacity only) will and hereby does move, under to Federal Rule of Civil Procedure 12(b)(6), to dismiss the complaint for failure to state a claim upon which relief can be granted. This Motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on June 14, 2021 (*see* Gonzalez Decl. ¶ 2), and is made on the grounds that the Complaint fails to state a claim upon which relief can be granted.

This motion is based upon this notice of motion and motion; the attached memorandum of points and authorities and declaration of Joseph A. Gonzalez; the proposed order granting the motion (lodged under separate cover); all pleadings and papers on file in this action; such other and further matters as may be presented at any hearing on this Motion; and matters of which the Court may take notice.


Dated: July 2, 2021                Respectfully submitted,

                                   BRIAN M. BOYNTON
                                   Acting Assistant Attorney General, Civil Division

                                   C. SALVATORE D'ALESSIO, JR.
                                   Acting Director, Torts Branch, Civil Division

                                   RICHARD MONTAGUE
                                   Senior Trial Counsel, Torts Branch, Civil Division

                                   /s/ *Joseph A. Gonzalez*
                                   JOSEPH A. GONZALEZ
                                   Trial Attorney, Torts Branch, Civil Division
                                   U.S. DEPARTMENT OF JUSTICE
                                   Ben Franklin Station

P.O. Box 7146
Washington, D.C. 20044-7146
(202) 598-3888 (phone)
(202) 616-4314 (fax)
joseph.a.gonzalez@usdoj.gov

Attorneys for Defendant KRISTI KOONS
JOHNSON in her individual capacity

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Table of Contents**

INTRODUCTION ........................................................................................ 1

BACKGROUND ........................................................................................ 1

STANDARD OF REVIEW ......................................................................... 3

ARGUMENT ............................................................................................. 4

    I.     Plaintiff's *Bivens* claims against Assistant Director Johnson fail because they arise in a new context and special factors counsel hesitation. ....................................................................................... 4

        A.     Plaintiff's *Bivens* claims present a new context. ............................. 5

        B.     Special factors counsel against a *Bivens* remedy in this new context. ....................................................................................... 7

               1.     Plaintiff has an alternative procedure for relief that counsels against recognizing a new *Bivens* action. ................. 8

               2.     *Bivens* precludes holding Assistant Director Johnson responsible for the acts of subordinates and the formulation of policy. ............................................................. 10

               3.     Plaintiff's *Bivens* action would cause disruptive intrusion into the Executive Branch. ..................................................... 11

               4.     Existing legislation suggests that the absence of a monetary remedy against individuals under the circumstance alleged is more than inadvertent. ...................... 13

    II.    Assistant Director Johnson is entitled to qualified immunity. ................... 13

        A.     Plaintiff fails to allege that Assistant Director Johnson was personally involved in the alleged actions that were unconstitutional. .................................................................. 14

        B.     Assistant Director Johnson did not violate Plaintiff's clearly established rights. .................................................................. 15

               1.     It is not clearly established that the warrant was invalid. ........ 16

i

2.   It is not clearly established that the inventory search was unconstitutional.......................................................................17

3.   The property claims process did not violate Plaintiff's clearly established rights under the Fifth Amendment...........19

CONCLUSION .............................................................................................20

# Table of Authorities

## Cases

*Ahmed v. Weyker,*
   984 F.3d 564 (8th Cir. 2020) ........................................................................7

*Alexander v. Sandoval,*
   532 U.S. 275 (2001) .....................................................................................4

*Annappareddy v. Pascale,*
   996 F.3d 120 (4th Cir. 2021) ........................................................................7

*Ashcroft v. al-Kidd,*
   563 U.S. 731 (2011) ........................................................................13, 14, 18

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................14, 15, 17

*Barren v. Harrington,*
   152 F.3d 1193 (9th Cir. 1998) ....................................................................14

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) .....................................................................................4

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
   403 U.S. 388 (1971) .............................................................................5, 6, 7

*Caltex Plastics, Inc. v. Lockheed Martin Corp.,*
   824 F.3d 1156 (9th Cir. 2016) ......................................................................3

*Cantu v. Moody,*
   933 F.3d 414 (5th Cir. 2019) ...................................................................7, 12

*Carlson v. Green,*
   446 U.S. 14 (1980) .......................................................................................5

*Chavez v. Martinez,*
   538 U.S. 760 (2003) ...................................................................................20

iii

*Colorado v. Bertine*,
 479 U.S. 367 (1987) ................................................................ 18

*Dakota v. Opperman*,
 428 U.S. 364 (1976) ................................................................ 18

*Davis v. Billington*,
 681 F.3d 377 (D.C. Cir. 2012) ................................................. 9

*Davis v. Passman*,
 442 U.S. 228 (1979) .................................................................. 5

*District of Columbia v. Wesby*,
 138 S. Ct. 577 (2018) ............................................................. 16

*Farah v. Weyker*,
 926 F.3d 492 (8th Cir. 2019) ................................. 5, 7, 11, 13

*Fazaga v. Fed. Bureau of Investigation*,
 965 F.3d 1015 (9th Cir. 2020) ................................................. 4

*Florida v. Wells*,
 495 U.S. 1 (1990) ............................................................ 18, 19

*Francis v. Miligan*,
 530 F. App'x 138 (3d Cir. 2013) ........................................... 10

*Franks v. Delaware*,
 438 U.S. 154 (1978) .......................................................... 11, 17

*Galbraith v. Cty. of Santa Clara*,
 307 F.3d 1119 (9th Cir. 2002) ............................................... 17

*Gayler v. NDOC-High Desert State Prison*,
 No. 217CV01492RFBCWH, 2018 WL 3114523 (D. Nev. June 25, 2018) ................. 15

*Harlow v. Fitzgerald*,
 457 U.S. 800 (1982) ............................................................... 14

iv

*Hernandez v. Mesa*,
  140 S. Ct. 735 (2020) ................................................................4, 8, 9

*Hudson v. Palmer*,
  468 U.S. 517 (1984) ...................................................................... 19

*J. M. M. v. Cty. of Los Angeles*,
  No. LACV1406529JAKFFMX, 2016 WL 11002595 (C.D. Cal. Oct. 3, 2016) ........... 15

*Kisela v. Hughes*,
  138 S. Ct. 1148 (2018) .................................................................. 16

*Lanuza v. Love*,
  899 F.3d 1019 (9th Cir. 2018) .................................................... 10, 12

*Leyland v. Edwards*,
  797 F. Supp. 2d 7 (D.D.C. 2011) ...................................................... 8

*Libretti v. Woodson*,
  600 F. App'x 367 (6th Cir. 2015) .................................................... 17

*Loumiet v. United States*,
  948 F.3d 376 (D.C. Cir. 2020) ......................................................... 6

*Magluta v. Samples*,
  256 F.3d 1282 (11th Cir. 2001) ...................................................... 15

*Marcilis v. Twp. of Redford*,
  693 F.3d 589 (6th Cir. 2012) ......................................................... 15

*Mullenix v. Luna*,
  577 U.S. 7 (2015) ......................................................................... 16

*Myers v. Brooks*,
  No. 2:18-CV-01043-RAJ, 2019 WL 4392501 (W.D. Wash. Sept. 13, 2019) ........ 19, 20

*Ramsden v. United States*,
  2 F.3d 322 (9th Cir. 1993) .............................................................. 8

*Rankin v. United States,*
  556 F. App'x 305 (5th Cir. 2014).................................................................9

*Seismic Reservoir 2020, Inc. v. Paulsson,*
  785 F.3d 330 (9th Cir. 2015) ......................................................................4

*Shapiro v. Goldman,*
  No. 14 CIV. 10119 (NRB), 2016 WL 4371741 (S.D.N.Y. Aug. 15, 2016) ...............15

*Starr v. Baca,*
  652 F.3d 1202 (9th Cir. 2011) ...................................................................14

*Stoot v. City of Everett,*
  582 F.3d 910 (9th Cir. 2009) .....................................................................20

*Terrell v. Brewer,*
  935 F.2d 1015 (9th Cir. 1991) ...................................................................14

*United States v. Bowhay,*
  992 F.2d 229 (9th Cir. 1993) .....................................................................18

*United States v. Chung,*
  553 F. App'x 690 (9th Cir. 2014)................................................................17

*United States v. Gaston,*
  740 F. App'x 576 (9th Cir. 2018)................................................................18

*United States v. Lopez,*
  547 F.3d 364 (2d Cir. 2008) ......................................................................19

*United States v. SDI Future Health, Inc.,*
  568 F.3d 684 (9th Cir. 2009) .....................................................................16

*United States v. Verdugo-Urquidez,*
  494 U.S. 259 (1990) .................................................................................20

*Vega v. United States,*
  881 F.3d 1146 (9th Cir. 2018) .....................................................................8

*Von Saher v. Norton Simon Museum of Art at Pasadena,*
    592 F.3d 954 (9th Cir. 2010) ........................................................................4

*W. Radio Servs. Co. v. U.S. Forest Serv.,*
    578 F.3d 1116 (9th Cir. 2009) ......................................................................9

*Warren v. Fox Family Worldwide, Inc.,*
    328 F.3d 1136 (9th Cir. 2003) ......................................................................4

*White v. Pauly,*
    137 S. Ct. 548 (2017) ..................................................................................16

*Williams v. O'Donnell,*
    No. 3:19-CV-00418-BR, 2020 WL 6686416 (D. Or. Nov. 12, 2020) ...........9

*Wilson v. Layne,*
    526 U.S. 603 (1999) ....................................................................................20

*Wong v. United States,*
    373 F.3d 952 (9th Cir. 2004) ......................................................................15

*Ziglar v. Abbasi,*
    137 S. Ct. 1843 (2017) .........................................................................passim

**Statutes**

18 U.S.C.A. § 983 ..............................................................................................13

## MEMORANDUM OF POINTS AND AUTHORITIES

## <u>INTRODUCTION</u>

This case arises out of an open criminal investigation into U.S. Private Vaults, Inc. (USPV), a company that anonymously leases safe deposit boxes to unknown individuals. Plaintiff alleges in his Count II *Bivens* claim that the head of the FBI's LA field office, Assistant Director Kristi Koons Johnson, violated his constitutional rights when the government seized his safe deposit box pursuant to a seizure warrant issued in the investigation. The Court should dismiss this claim and Assistant Director Johnson from the case for two reasons.

First, Plaintiff's theories of recovery arise in a new context that implicates classic reasons for rejecting the creation of a new *Bivens* remedy. These include the likelihood that the claim (i) is improper given the existence of an alternative remedy, (ii) would impermissibly hold Assistant Director Johnson for policy decisions, and (iii) would cause disruptive intrusion into the Executive branch. Second, Assistant Director Johnson is entitled to qualified immunity because Plaintiff's scant factual allegations fail to support an inference of personal involvement, but instead exclusively focus on her supervisory status. The unique circumstances of this case also demonstrate an entitlement to qualified immunity. No controlling authority or robust consensus of persuasive authority establishes that any of the actions alleged in these specific circumstances amounts to a violation of a clearly established right.

## <u>BACKGROUND</u>

USPV operates a safe deposit box business in a Beverly Hills strip-mall. Compl. ¶¶ 23-24. Unlike typical safety deposit boxes located in a bank, USPV "does not use [] personal identifying information to identify box holders." *Id*. ¶ 27(a). Instead, "USPV identifies box holders by encrypted biometric information in the form of an iris scan … and/or biometric hand geometry scan[.]" *Id*. ¶ 27(a)-(b). This allows box holders to remain completely anonymous. *See id*. ¶ 13. Plaintiff, who allegedly leases box no.

2300, filed this lawsuit anonymously using the pseudonym Louis Loe. *See id*. ¶ 14. His safe deposit box contains "sealed envelopes" holding money. Compl. ¶ 30.

In March 2021, a grand jury indicted USPV for conspiracy to launder money, to distribute controlled substances, and to structure transactions to avoid reporting requirements. Brown Decl. ¶ 2 and Ex. A.[1] The indictment states that USPV's business is predicated on "attract[ing] customers in possession of proceeds from criminal offenses[.]" *Id*. USPV allegedly did so by "touting the anonymity of the safety deposit rentals" and "boasting that, unlike banks, its anonymous safety deposit box rentals did not require customer information that 'can be easily accessed by government agencies (such as the IRS)[.]'" *Id*.

Thereafter the government obtained a sealed seizure warrant for, among other things "[t]he nests of safety deposit boxes and keys" located at USPV. Brown Decl. ¶ 4 and Ex. B. The warrant did "not authorize a criminal search or seizure of the contents of the safety deposit boxes." *Id*. Rather, it mandated that "agents shall follow their written inventory policies to protect their agencies and the contents of the boxes," and directed agents to "inspect the contents of the boxes in an effort to identify their owners[.]" *Id*. Beginning on March 22, 2021, the government executed the warrant and seized all boxes at the site. Compl. ¶¶ 32, 36. The next day AUSA Andrew Brown allegedly told an attorney for another box holder that the government would inspect and inventory every box but refrain from reading notebooks or thumb drives found in a boxes. *Id*. ¶ 36. He also allegedly told the attorney that the government "assumes that all USPV box holders are engaged in illegal activity" and "that if a box holder identifies himself" he will be subject to investigation to ensure that he came by the box contents lawfully. *Id*.

As of March 26, 2021 the FBI posted on USPV's shuttered front door a sign directing box owners to an FBI website to make a claim for their property. *Id*. ¶ 38. The website instructs a claimant to provide basic contact information—name and number—

---

[1]  AUSA Andrew Brown is the prosecutor assigned to investigate USPV declaration is attached to the motion to dismiss filed by the U.S. ECF No. 27-7.

so that an "FBI Agent [can] contact [the claimant] for additional details." *Id.* ¶ 39. Despite this process, Plaintiff alleges that "[g]overnment representatives" have stated that there are no "standardized policies, procedures, or process for returning the contents of safe deposit boxes to their owners." *Id.* ¶ 41(b). Plaintiff further alleges that the website is "nothing more than a subterfuge for obtaining the identities and contact information of USPV box holders" so that it can investigate them. *Id.* ¶ 41. Plaintiff did not utilize this process. However, in June 2021, after the government initiated the administrative forfeiture process for the boxes, Plaintiff filed a formal claim and provided their name. *See* Special Agent Jessie Murray Decl. ¶¶ 2-3 at ECF 27-5.

On April 19, 2021, Plaintiff filed a four count complaint against the United States, Acting U.S. Attorney Tracy L. Wilkison (official capacity), FBI Assistant Director in Charge Kristi Koons Johnson (official and individual capacity), and DOES 1-10 federal law enforcement officers. In Count II, Plaintiff brings a *Bivens* claim against Assistant Director Johnson and DOES 1-10 in their individual capacities. He alleges that they violated the Fourth Amendment by seizing and searching his safe deposit box without probable cause. *Id.* ¶¶ 79-80. Plaintiff also alleges that they violated the Fifth Amendment by continuing to hold his envelopes of money and by conditioning the return of the envelopes upon waiving his right against self-incrimination. *Id.* ¶¶ 81-82.

Plaintiff makes no factual allegation that Assistant Director Johnson personally participated in, supervised, or even observed any of these alleged violations. Instead, he alleges only that she is in charge of the FBI's LA field office, and, as such she "has authority over the policies and procedures implemented by, and the actions of, FBI agents assigned" to the LA field office. *Id.* ¶ 17. As set forth in more detail below, Plaintiff has failed to state a claim against Assistant Director Johnson.

## **STANDARD OF REVIEW**

Courts should grant a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss when a complaint fails to allege a cognizable legal theory or sufficient factual support for a legal theory. *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159

3

(9th Cir. 2016); *see Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015) (internal quotes and citation omitted). Thus, a complaint must set forth "enough facts to state a claim for relief that is plausible on its face" to defeat the motion. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). But although courts accept as true the well-pleaded material factual allegations, courts do not accept as true conclusory allegations, unwarranted factual deductions, unreasonable inferences or legal characterizations. *Id*. at 555; *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). In so doing, courts may also consider documents attached to or mentioned in a complaint and matters subject to judicial notice without converting the motion into a summary judgment motion. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010).

## ARGUMENT

### I.   Plaintiff's *Bivens* claims against Assistant Director Johnson fail because they arise in a new context and special factors counsel hesitation.

*Bivens* remedies are the product of an "*ancien regime*" where the Supreme Court "would imply causes of action" not present in the text of a law. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017). In the 40 years since then the Court has reversed course and "consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). Now if a law "itself does not display an intent to create a private remedy, then a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Abbasi*, 137 S. Ct. at 1856 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001)) (internal quotations removed). As a result, "the availability of *Bivens* actions for new claims and contexts" is now "severely restricted." *Fazaga v. Fed. Bureau of Investigation*, 965 F.3d 1015, 1055 (9th Cir. 2020), *cert. granted sub nom. FBI v. Fazaga*, No. 20-828, 2021 WL 2301971 (U.S. June 7, 2021) (citing *Abbasi*, 137 S. Ct. at 1856-57).

4

A plaintiff now only has two narrow paths to pursuing a *Bivens* action. If a plaintiff establishes that their claim qualifies as one of "the three *Bivens* claims the Court has approved in the past" then the *Bivens* claim may proceed (subject to other defenses). *Abbasi*, 137 S. Ct. at 1856. Alternatively, if the claim arises in a new context, a plaintiff must establish that there are no "special factors [that] counsel[] hesitation" before a court will imply a new cause of action. *Id*. at 1857. Plaintiff fails to establish a *Bivens* claim through either path.

### A.   Plaintiff's *Bivens* claims present a new context.

Whether a claim presents a new context depends on whether the case is "different in a meaningful way from previous *Bivens* cases decided by th[e] [Supreme] Court." *Id*. at 1860. This requires a comparison with the only three cases in which the Supreme Court has previously recognized a *Bivens* remedy: *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); *Davis v. Passman*, 442 U.S. 228 (1979); and *Carlson v. Green*, 446 U.S. 14 (1980). Here, "[t]he one that comes closest [to this case]is *Bivens* itself," and thus it stands as the focal point of any comparison to this case.[2] *See Farah v. Weyker*, 926 F.3d 492, 498 (8th Cir. 2019) (declining to perform a comparison to *Davis* or *Carlson* because "*Bivens* itself" was the most similar to the case at issue). But "coming closest" is still a far cry from "exactly mirror[ing] the facts and legal issues[.]" *Id*. Even a case with "significant parallels to one of the [Supreme] Court's [three] previous *Bivens* cases," or a case presenting just a "modest extension" of one of them, "is still an extension" into a new context. *Abbasi*, 137 S. Ct. at 1864; *see id.* at 1860 (listing seven non-exhaustive factors).

Plaintiff's case against Assistant Director Johnson directly implicates several of the meaningful differences set forth by the Supreme Court and thus establishes that Plaintiff's claims present a new context for multiple reasons. One difference is the "rank

---

[2]  *Davis and Carlson* involved, respectively, "a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma." *Abbasi*, 137 S. Ct. at 1860.

of the officers involved." *Id. Bivens* concerned line-level officers operating in the field, not a high-level executive, let alone an assistant director allegedly responsible for "the policies and procedures … and the actions of[] FBI agents assigned to the Los Angeles Field Office." Compl. ¶ 17. This casts Assistant Director Johnson as an entirely new category of defendant, which is dispositive. *See Loumiet v. United States*, 948 F.3d 376, 382 (D.C. Cir. 2020) (observing that a "'new context' is present whenever the plaintiff seeks damages from a 'new category of defendants'" and finding that executive officers in the comptroller office were a new category) (quoting *Abbasi*, 137 S. Ct. at 1860).

This distinction also illustrates why the original purpose of *Bivens*—"to deter the *officer*" from committing unconstitutional conduct—cannot be satisfied here. *Abbasi*, 137 S. Ct. at 1860. In *Bivens* the line-level officers arrested the plaintiff, "manacled [him] in front of his wife and children," and then "searched [his] apartment from stem to stern" without a warrant. 403 U.S. at 389. By contrast, here, there is no allegation that Assistant Director Johnson personally applied for the warrant, performed the search, or devised the property claims procedure. Thus, unlike in *Bivens*, nowhere does Plaintiff allege the kind of direct boots-on-the-ground personal involvement by Assistant Director Johnson that is a necessary component of any *Bivens* claim. This shows that even though "*Bivens* is not designed to hold officers responsible for acts of their subordinates," Plaintiff seeks to do just that. *Abbasi*, 137 S. Ct. at 1860.

Plaintiff's focus on a high-level supervisor removed from the locus of action also exposes yet another meaningful difference—the type of injury. Unlike in *Bivens*, where the plaintiff was personally subjected to a warrantless search, seizure, and arrest that resulted in "humiliation, embarrassment, and mental suffering," 403 U.S. at 389-90, here, Plaintiff was never personally seized or arrested. Rather, his alleged Fourth Amendment injury is confined to a property interest in a safe-deposit box that was located in a strip-mall. *See* Compl. ¶¶ 3, 4. Plaintiff's Fifth Amendment claims fare even worse. The alleged infringement on the right against self-incrimination and the due

process claim regarding the continued seizure of the Plaintiff's box are fundamentally different than the injuries and context alleged in *Bivens*, *Carson*, or *Davis*.

But it is not just the injury that establishes a new context in this case. So too does the mechanism of injury. *Bivens* concerned a warrantless search from "stern to stem[.]" 403 U.S. at 389. Here, conversely, the claims focus on a warrant, which was allegedly invalid for a variety of reasons. *See Annappareddy v. Pascale*, 996 F.3d 120, 135 (4th Cir. 2021) (finding new context because "*Bivens* involved [] the Fourth Amendment right to be free of unreasonable warrantless *searches* and seizures; [whereas] this case, by contrast, involves searches and a seizure conducted *with* a warrant") (emphasis original). This difference not only establishes a new context by itself, but also reveals another meaningful difference from *Bivens*— attenuation between the defendant and the ultimate injury absent from *Bivens*

For example, in *Ahmed v. Weyker*, 984 F.3d 564 (8th Cir. 2020) the plaintiff alleged that an officer knowingly drafted a sworn affidavit that contained "fabricated facts" and lacked probable cause. *Id*. at 566. The Court held that this was enough to establish a new context. It reasoned that the steps between constructing the affidavit and executing the warrant involved "independent legal actors" and thus the "direct causal chain [present in *Bivens*] is missing." *Id.* at 569 (citation and internal quotations removed). *See also Annappareddy*, 996 F.3d at 135; *Cantu v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019). The same holds true here. Plaintiff alleges that unspecified Defendants, working with prosecutors, "made materially false and misleading statements to the Magistrate Judge who issued the seizure warrant[.]" Compl. ¶¶ 35, 63. Thus, the chain of causation involved both prosecutors and the Magistrate judge that approved the warrant. "This indirect mechanism of injury bears little resemblance to the straightforward claims from *Bivens*."  *Farah*, 926 F.3d at 499.

## B.  Special factors counsel against a *Bivens* remedy in this new context.

The creation of a new *Bivens* remedy is a rare thing. Indeed, "for almost 40 years, [the Supreme Court has] consistently rebuffed requests to add to the claims allowed

under *Bivens*." *Mesa*, 140 S. Ct. at 743. This remains the status quo because the Supreme Court's "precedents now instruct [that] the Legislature is in the better position to consider if the public interest would be served by imposing a new substantive legal liability." *Abbasi*, 137 S. Ct. at 1857 (internal citations and quotations omitted). The Supreme Court urges "caution" for this reason, holding that the mere presence of a "special factor counselling hesitation" forecloses the creation of *Bivens* remedy. *Id*. That is a case-specific inquiry. But if "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy[.]" *Id*. at 1858. Plaintiff's allegations here implicate textbook "sound reasons" to hesitate and for the Court to "refrain from creating" the *Bivens* remedies Plaintiff requests. *Id.*

1.  Plaintiff has an alternative procedure for relief that counsels against recognizing a new *Bivens* action.

In *Abbasi*, the Supreme Court held that "the existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." *Id*. at 1865. Such "'[a]lternative remedial structures' can take many forms, including administrative, statutory, equitable, and state law remedies." *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018). In Count I, Plaintiff seeks the return of his property under Federal Rule of Criminal Procedure Rule 41(g), which as an equitable procedure, falls within the "other form[s] of equitable relief" category set forth in *Abbasi*. *See Ramsden v. United States*, 2 F.3d 322, 324 (9th Cir. 1993) ("District courts have the power to entertain motions to return property seized by the government when there are no criminal proceedings pending against the movant."). Thus, the principal relief Plaintiff seeks (property return) is capable of redress under Rule 41(g)'s alternative remedial structure. *See Leyland v. Edwards*, 797 F. Supp. 2d 7, 11 (D.D.C. 2011) (Holding that the

8

plaintiff's *Bivens* claim for the return of his property was "barred due to Rule 41(g) providing an adequate, comprehensive procedural and remedial scheme.").[3]

This holds true even though the government has commenced administrative forfeiture proceedings as to Plaintiff's property that invalidate his Rule 41(g) claim. *See* Gov't. Mot. to Dismiss at pp. 7-11. A "scheme's failure to provide a remedy to a particular plaintiff for the particular claim … does not make the scheme any less comprehensive for purposes of determining whether it is a special factor that precludes the creation of a *Bivens* remedy." *Davis v. Billington*, 681 F.3d 377, 387 (D.C. Cir. 2012) (citation and quotations omitted). Thus, Rule 41(g)'s existence as a remedial scheme to address the type of injury Plaintiff alleges is enough to counsel hesitation, regardless of whether he actually can succeed under his particular circumstances. *Cf. Hernandez*, 140 S. Ct. at 750 n.12 ("Indeed, in *Abbasi* we explained that existence of alternative remedies was merely a further reason not to create *Bivens* liability.") (citation omitted).

But even if that were not the case, the civil forfeiture proceeding provides yet another alternative remedial structure. *See Williams v. O'Donnell*, No. 3:19-CV-00418-BR, 2020 WL 6686416, at *6 (D. Or. Nov. 12, 2020). ("Although the Ninth Circuit has not addressed the issue, other circuit courts have refused to recognize a *Bivens* claim related to administrative forfeitures of property[.]"). It does so because "Congress has created an alternative, existing process for protecting the [injured party's] interest" in property under the Civil Asset Forfeiture Reform Act (CAFRA) of 2000 (18 U.S.C.A. § 983 (West)). *Id*.; *see Rankin v. United States*, 556 F. App'x 305, 311 (5th Cir. 2014)

---

[3]  The fact that monetary damages are not contemplated under Rule 41(g) does not make it any less of an adequate "alternative remedy" under the *Bivens* analysis. In *W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116 (9th Cir. 2009), the Ninth Circuit concluded that "remedial schemes lacking such features may be adequate alternatives" that counsel against a *Bivens* remedy. *Id*. at 1123. It reasoned that "the design of the [statute at issue] raises the inference that Congress 'expected the Judiciary to stay its *Bivens* hand[.]" *Id*. (citation omitted). This case is no different. The text of Rule 41(g) makes clear that it is designed to deal with the circumstance Plaintiff claims to find himself— "[a] person aggrieved by an unlawful search and seizure[.]"

("Because CAFRA provides a comprehensive scheme for protecting property interests, no *Bivens* claim is available."). Thus, CAFRA provides yet another alternative remedial structure that also counsels hesitation.

> 2.  *Bivens* precludes holding Assistant Director Johnson responsible for the acts of subordinates and the formulation of policy.

Two other related special factors also counsel hesitation in this case: Whether the *Bivens* claim seeks to alter policy and the rank of the officer. *Abbasi*, 137 S. Ct. at 1860; *see Lanuza v. Love*, 899 F.3d 1019, 1028 (9th Cir. 2018) ("special factors include: the rank of the officer involved [and] whether *Bivens* is being used as a vehicle to alter an entity's policy"). Both rest on the principle that the purpose of "*Bivens* is to deter the officer" for their own discrete acts. *Abbasi*, 137 S. Ct. at 1860. An action that seeks to hold a supervisor "responsible for acts of their subordinates" violates this axiom. *Id*. So too does an action against an executive-level supervisor that seeks to hold the executive responsible for a particular policy.

Plaintiff's claims against Assistant Director Johnson implicate both reasons for hesitation. The invalid warrant theory seeks to hold her liable for a warrant she is not alleged to have procured. Similarly, Plaintiff makes no factually specific allegation that Assistant Director Johnson was involved with inventorying Plaintiff's box or developing the inventory procedure. All of this conduct was allegedly performed by unidentified John Doe officers that work at the FBI office that Assistant Director Johnson oversees. *See* Compl. ¶ 4 (Alleging that the USAO, "the FBI and DOES 1-10 unlawfully seized and then broke open and searched Plaintiff's safe deposit box and its contents, in violation of Plaintiff's Fourth Amendment rights."). Thus, Plaintiff's Fourth Amendment claims are a textbook attempt to hold a supervisor "responsible for acts of their subordinates[.]" *Abbasi*, 137 S. Ct. at 1860.

Plaintiff's Fifth Amendment claims directly challenge policy. Plaintiff asserts that "the Government has no established and standardized policies, procedures, or process" for claiming property and that what does exist violates the right against self-

incrimination. *See* Compl. ¶¶ 41(b), 69. Although styled as an absence of policy, this functions no less as an attempt "to alter an entity's policy" because it seeks to force the FBI to conform to a revised policy Plaintiff deems appropriate. This would "require inquiry and discovery into the whole course of discussions and deliberations that led to the policies and governmental act being challenged." *Abbasi*, 137 S. Ct. at 1860. Here that could range from discussions regarding how the boxes are inventoried to how the FBI's current procedures fulfill its goal to seize criminal proceeds and return non-criminal property. If recognized, Plaintiff's claim would risk discouraging Assistant Director Johnson or "to be more precise, future officials like" her, from the "proper discharge" of their duties. *Id*. This counsels against recognizing Plaintiff's Fifth Amendment claim.

> 3.    Plaintiff's *Bivens* action would cause disruptive intrusion into the Executive Branch.

Plaintiff takes issue with multiple steps taken in a large criminal investigation and prosecution into a complex money laundering scheme. He complains that the warrant, the search of his box, the procedure for claiming box contents, and the retention of box contents, were all unconstitutional. *See* Compl. ¶¶ 61-70. But the inherent factual complexity of each theory risks "burdening and interfering with the executive branch's investigative and prosecutorial functions." *Farah*, 926 F.3d at 500. The Fourth Circuit (*Annappareddy*), the Fifth Circuit (*Cantu*), and the Eighth Circuit (*Weyker* & *Ahmed*) all recognize that this is an "intrusive" interference into "sensitive functions of the Executive Branch" that courts must avoid. *Abbasi*, 137 S. Ct. at 1861.

Plaintiff's contention that the warrant was defective guarantees intrusion into the Executive. To prevail on the claim, Plaintiff must show that unknown law enforcement officials (1) deliberately or recklessly (2) made *material* misstatements or omissions in the warrant (3) without which there would be no probable case. *See generally, Franks v. Delaware*, 438 U.S. 154 (1978). This necessarily "invites a wide-ranging inquiry into the evidence available to investigators" that is the province of the Executive. *Farah*, 926

F.3d at 500. Questions ranging from evidence collection techniques to the reliability of confidential informants are just a few of the considerations involved.

The complexity of the case magnifies this inquiry and thus also the intrusiveness that counsels hesitation. The Government has alleged that USPV "was a criminal business that conspired with its criminal clients to distribute drugs, launder money, and structure transactions to avoid currency reporting requirements, among other offenses." Compl. ¶ 13. The suspected scheme involved numerous actors and entities executing a plan sophisticated enough to skirt federal banking laws. *See id.*; *see also* Brown Decl. ¶ 2 and Ex. A. Just as in *Cantu*, where the fact that the case involved a "multi-jurisdictional investigation into transnational organized crime" counseled hesitation, so too here does the expansiveness of the USPV investigation counsel hesitation. 933 F.3d at 424.

*Lanuza*, in which the plaintiff sued an ICE attorney for forging an immigration form that resulted in his deportation, provides a useful comparison. 899 F.3d at 1022-23. The Ninth Circuit did not find any special factors counseling hesitation in that case because the *Bivens* action was premised on simple and "undisputed" facts: an attorney, working alone, "intentionally submitted forged documents[.]" *Id*. at 1033. This made the case "particularly straightforward" and limited "to the only remaining question … of damages" for which "courts have substantial experience." *Id*. Questions present in this case, such as "whether the evidence was falsified and whether it was submitted willfully," were absent from *Lanuza*. *Id*. "[T]he only remaining question" there was "the amount of damages," for which "courts have substantial experience." This case, by contrast, lacks such simplicity because it necessarily requires delving into investigative complexities that *Lanuza* did not involve.

Plaintiff's related claim that the inventory search allegedly occurred in the absence of an established inventory policy also would require delving into an assessment of the practices at issue and to what extent they were standardized. *See id.* ¶¶ 66, 67. This too constitutes an intrusion into law enforcement operations that reflect choices about how to safely and efficiently inventory property, and so too counsels hesitation. Plaintiff's Fifth

12

Amendment claim regarding the retrieval of box contents by owners is vulnerable to the same line of reasoning. *See id.* ¶¶ 68, 69. Examining a process that balances returning the contents of hundreds of boxes against the need to verify that the recipient is an owner and not involved in criminal activity requires diving into a complicated executive function.

    4.    <u>Existing legislation suggests that the absence of a monetary remedy against individuals under the circumstance alleged is more than inadvertent.</u>

Finally, the absence of a remedy against federal officers under these circumstances does not mean that one should be authorized here. Rather, "Congress' 'silence might be more than inadvertent.'" *Abbasi*, 137 S. Ct. at 1862 (citation omitted). In *Farah*, which concerned falsified evidence by an investigator, the Eighth Circuit explained this inference in the context of statutes intended to compensate wrongly convicted defendants. *See Farah,* 926 F.3d at 502 (citing to the Hyde Amendment for baseless prosecutions, and 28 U.S.C. 1495 and 28 U.S.C. 2513 for unjust convictions). Such statutes could cut against creating a cause of action for defendants aggrieved by improper investigations, but not convicted. *Id.* It reasoned "that Congress has expressly provided a damages remedy for some victims of this particular type of injury, but not for others, suggests that it considered the issue and made a deliberate choice" not to compensate those others. *Id.* That reasoning applies in this case as well. "Congress's failure to provide a damages remedy" for those claiming damage from criminal investigations but who are not convicted "might be more than mere oversight, and its silence might be more than inadvertent." *Abbasi*, 137 S. Ct. at 1862. Accordingly, because "Congress might doubt the efficacy or necessity of a damages remedy" in this case, this Court should "refrain from creating the remedy." *Id.* at 1858.

**II.**    <u>**Assistant Director Johnson is entitled to qualified immunity.**</u>

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). This "protects all but the plainly incompetent or those who

knowingly violate the law." *Id.* (citation omitted). It does so by insulating government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As set forth below, Assistant Director Johnson is entitled to qualified immunity because: (1) Plaintiff has failed to allege that she was personally involved with any of the allegedly unconstitutional conduct and (2) it is not clearly established under the specific circumstances alleged that Plaintiff's constitutional rights were violated.

A.     **Plaintiff fails to allege that Assistant Director Johnson was personally involved in the alleged actions that were unconstitutional.**

"[V]icarious liability is inapplicable to *Bivens*[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991) ("We join other circuits in holding that *respondeat superior* is inapplicable to *Bivens* actions."). Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). These principles prohibit liability premised solely on a defendant's status as a supervisor. *Iqbal*, 556 U.S. at 677 (noting that "the term 'supervisory liability' is a misnomer" because under *Bivens* "masters do not answer for the torts of their servants"). At a minimum, a plaintiff must allege a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).

Plaintiff fails to allege a sufficient causal connection between Assistant Director Johnson and the alleged violations. Instead, he engages in a classic group pleading tactic by alleging in conclusory fashion that "Defendants Koons Johnson and DOES 1-10 … violated Plaintiff's Fourth Amendment rights" and "Fifth Amendment rights" by performing every tortious act alleged. *See* Compl. ¶¶ 79-82. This amounts to nothing more than generic allegations attributing wrongdoing to an undifferentiated group of potentially eleven defendants. And so it "fails to identify what role, if any, each

14

individual defendant had in" the alleged violation and thus fails to satisfy the personal involvement requirement. *Wong v. United States*, 373 F.3d 952, 966 (9th Cir. 2004).[4]

Plaintiff also embraces a vicarious liability theory by alleging that Assistant Director Johnson "has authority over the policies and procedures implemented by, and the actions of, FBI agents assigned to the Los Angeles Field Office." Compl. ¶ 17. District courts in the Ninth Circuit hold that such bare assertions of authority over policy are incapable of plausibly alleging personal involvement.[5] Likewise, bare assertions that a supervisor created or implemented specific policies also fall short.[6] Thus, Plaintiff fails to plausibly allege Assistant Director Johnson's personal involvement via his policy allegations.

**B.    Assistant Director Johnson did not violate Plaintiff's clearly established rights.**

---

[4]    *See also, e.g.*, *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596-97 (6th Cir. 2012) ("categorical references to 'Defendants'" fail to "allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right"); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (Dismissing complaint "replete with allegations that 'the defendants' engaged in certain conduct, [that made] no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act[.])

[5]    *See Gayler v. NDOC-High Desert State Prison*, No. 217CV01492RFBCWH, 2018 WL 3114523, at *5 (D. Nev. June 25, 2018) ("When a plaintiff is attempting to rely on a policy to establish a defendant's liability … [he must] plead facts sufficient to show that there is a policy, what the policy is, and what role the defendant played in designing, adopting, and implementing the policy."); *J. M. M. v. Cty. of Los Angeles*, No. LACV1406529JAKFFMX, 2016 WL 11002595, at *25 (C.D. Cal. Oct. 3, 2016).

[6]    *See, e.g., Iqbal*, 556 U.S. at 680–81 (allegation that the Attorney General was "the principal architect of this invidious policy" was a "bare assertion"); *Shapiro v. Goldman*, No. 14 CIV. 10119 (NRB), 2016 WL 4371741, at *17 (S.D.N.Y. Aug. 15, 2016), *aff'd*, 696 F. App'x 532 (2d Cir. 2017), (claim that an FBI Director "implemented an 'official policy' surrendering law enforcement functions" was no more than a "bare assertion that a policy exists, and the conclusion that [a defendant] was responsible for it").

15

"To be clearly established, a legal principle must be settled law, and it must clearly prohibit the officer's conduct in the *particular circumstances* before him[.]" *District of Columbia v. Wesby*, 138 S. Ct. 577, 581 (2018) (emphasis added). "Such specificity is especially important in the Fourth Amendment context[.]" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam). It ensures that courts do not define the right at a "high level of generality" and therefore hold an officer liable without "fair notice that her conduct was unlawful[.]" *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam). Thus, to determine whether an officer's conduct violates clearly established law, the formulation of the conduct "must be particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam) (citation omitted).

1.   It is not clearly established that the warrant was invalid.

As already explained, Plaintiff has not sufficiently alleged Assistant Director Johnsons' involvement in any alleged constitutional violation, and that is dispositive for qualified-immunity purposes. Nonetheless the facts of this case also do not clearly establish that the warrant lacked probable cause under settled law. The warrant directly identifies the "nest of security boxes" as subject to seizure and explains that the boxes are "evidence and instrumentalities of USPV's criminality." Brown Decl. ¶ 4 and Ex. B; *see United States v. SDI Future Health, Inc.*, 568 F.3d 684, 703 (9th Cir. 2009). The government also allegedly explained that "USPV was a criminal business that conspired with its criminal clients to distribute drugs, launder money, and structure transactions to avoid currency reporting requirements, among other offenses." Compl. ¶ 42. And the USPV indictment further provided specific instances of not only how the criminal scheme worked, but also how the boxes were integral to the scheme by serving as a place to store and launder the proceeds of illegal conduct. Brown Decl. ¶ 2 and Ex. A. Under these facts, no settled law clearly establishes an absence of probable cause. Cases assessing the validity of warrants for safe-deposit boxes support this conclusion,

16

especially when, as in this case, the available evidence indicates that the safe deposit boxes are being used in criminal schemes.[7]

The fact that Plaintiff's identity was, and remains, unknown does not change this conclusion. The same holds true for the allegation that Plaintiff's box was one of hundreds and his assertion that no evidence connects his specific box to a criminal scheme. *See* Compl. ¶¶ 28, 29. If anything, these allegations support probable cause and highlight the uniqueness of the circumstances under the clearly established analysis. USPV used sophisticated technology, including iris and hand-shape scans, to conceal the identities of box owners and disassociate them from criminal schemes. *Id.* ¶ 27. Plaintiff utilized this technology to remain anonymous and disassociate himself from his box. *See id.* Thus, Plaintiff's alleged disassociation from the scheme shows his knowing use of the quixotic procedures also utilized by criminal actors to make his box indistinguishable from them. Under these unique facts Plaintiff cannot identify a body of settled case law which establishes that the seizure of Plaintiff's box was unlawful.[8]

2.     It is not clearly established that the inventory search was unconstitutional.

---

[7]     *See United States v. Chung*, 553 F. App'x 690, 693 (9th Cir. 2014) (holding that a magistrate judge had a substantial basis for finding probable cause to seize safe deposit box given DEA agent's representation that "loansharking conspiracies will often hide their records and paraphernalia at their homes and in safe deposit boxes"); *Libretti v. Woodson*, 600 F. App'x 367, 372 (6th Cir. 2015) (granting qualified immunity on claim that warrant to search safe deposit box lacked probable cause because agent averred that it was common for "drug traffickers to store drug proceeds in safe deposit boxes" and the box had been accessed recently).

[8]     Plaintiff also alleges that the warrant was tainted by misstatements and omissions. This requires alleging "that the investigator made deliberately false statements or recklessly disregarded the truth in the affidavit and that the falsifications were material to the finding of probable cause." *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002).  He cannot meet the clearly established element with respect to this claim because he fails to allege these elements.  There are no factual allegations explaining what was false or omitted, how any misstatement or omission was deliberate or reckless, or the materiality effect. *See Iqbal*, 556 U.S. at 663; *Franks*, 438 U.S. at 171.

17

The inventory search alleged in this case did not violate clearly established law. The government, recognizing its "responsib[ility] for the property taken into their custody," opened and cataloged the contents of the seized safe deposit boxes to protect against claims of theft, damage and "any danger …that may have been posed by the property." *Colorado v. Bertine*, 479 U.S. 367, 373 (1987); *see Dakota v. Opperman*, 428 U.S. 364, 371 (1976) ("[I]t is reasonable to search the container to itemize the property to be held by the police.") (citation omitted). Critically, this alleged process occurred pursuant to "standardized criteria or established routine," *Florida v. Wells*, 495 U.S. 1, 4 (1990), that involved itemizing every box, yet also prohibited reading the contents of notebooks or thumb drives, Compl. ¶ 36. *See United States v. Gaston*, 740 F. App'x 576, 577 (9th Cir. 2018) (Finding that "routine practice of opening locked containers if they can be readily opened during an inventory search" qualified as standardized practice and therefore validated inventory search.) While this conformity to inventory search standards necessarily precludes Plaintiff from plausibly alleging that the search violated clearly established law, adding to the analysis the unique circumstances alleged here underscores the point. No "controlling authority" or "robust consensus of … persuasive authority" establishes that the government's inventorying of hundreds of anonymously held safe-deposit boxes, intentionally made anonymous by design and via sophisticated technology, violated the Fourth Amendment. *al-Kidd*, 563 U.S. at 741.

Plaintiff's unadorned allegation that the search was in fact a "pretext for conducting an investigatory search" cannot save his claim. In *United States v. Bowhay*, 992 F.2d 229 (9th Cir. 1993), the plaintiff made a similar argument when an officer admitted that he "viewed [a] search as both an investigative and as an inventory search[.]" *Id.* at 231. However, the court still held that "the presence of an investigative motive [did] not invalidate the inventory search." *Id.* It reasoned that because "the department's policy was to search everything[,] the officer had no discretion" and thus his motive was beside the point. *Id.* This case is no different. Plaintiff alleges that the inventory procedure required opening all boxes seized and thus motive is irrelevant.

18

More to the point, it is clearly established that motive is irrelevant under these circumstances. *See United States v. Lopez*, 547 F.3d 364, 372 (2d Cir. 2008) ("[T]he Supreme Court has not required an absence of expectation of finding criminal evidence as a prerequisite to a lawful inventory search. … [M]otivation [] cannot reasonably disqualify an inventory search that is performed under standardized procedures for legitimate custodial purposes.") (citations omitted).

> 3. The property claims process did not violate Plaintiff's clearly established rights under the Fifth Amendment.

Plaintiff fails to allege the violation of a clearly established procedural Due Process right because he does not allege the absence of a "meaningful post deprivation remedy" for recovering the contents of his box. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[A]n unauthorized intentional deprivation of property by a [government] employee does not constitute a violation … of the Due Process Clause … if a meaningful post deprivation remedy for the loss is available."). Instead, he alleges that less than a week after the seizure the government did in fact provide a post deprivation remedy by creating a claims process for recovering his property. *See* Compl. ¶¶ 38-40. It set up a website that instructed claimants "[t]o make a claim for property stored at [USPV] … [by] provid[ing] the following [contact] information" so that an "FBI agent [could] contact [them] with additional details." *See id.* ¶ 39. Plaintiff's refusal to use this process and his assertion that his property was wrongfully seized does not make this any less of a meaningful remedy. In *Myers v. Brooks*, No. 2:18-CV-01043-RAJ, 2019 WL 4392501 (W.D. Wash. Sept. 13, 2019), *aff'd*, 845 F. App'x 630 (9th Cir. 2021), the plaintiff made similar complaints when his shipping containers were seized and subject to a forfeiture proceeding. *Id.* at *4. The Court rejected them:

> The important inquiry is not whether Plaintiff took advantage of the post-deprivation remedy, but whether the state offered such a remedy. Here, even if Defendants wrongly seized Plaintiff's 'shipping containers,' no liability would ensue if the state offered a meaningful post-deprivation remedy. It is

> undisputed that the City served Plaintiff with a Notice of Seizure and
> Intended Forfeiture, which advised him of his right to a hearing[.]

*Id.* The same reasoning applies here. It is undisputed that the government provided a claim process and has now initiated a forfeiture process in which Plaintiff has made a claim. No Supreme Court decision, Ninth Circuit decision, or consensus of persuasive authority, *Wilson v. Layne*, 526 U.S. 603, 617 (1999), clearly establishes that these were constitutionally inadequate procedures in the specific circumstances alleged here.

Plaintiff's related claim that the property recovery procedure violates his privilege against self-incrimination also fails to allege a clearly-established violation. Plaintiff fails to appreciate that as "a fundamental trial right of criminal defendants," *United States v. Verdugo-Urquidez*, 494 U.S. 259, 264 (1990), violation of the right against self-incrimination "at the very least requires the initiation of legal proceedings," *Chavez v. Martinez*, 538 U.S. 760, 766 (2003) (plurality per Thomas, J.). *See Stoot v. City of Everett*, 582 F.3d 910, 925 (9th Cir. 2009) (Use of a coerced statement violates the right against self-incrimination "when it has been relied upon to file formal charges against the declarant, to determine judicially that the prosecution may proceed, and to determine pretrial custody status."). The absence of such proceedings preclude the finding of a violation even though "conduct by law enforcement officials prior to trial may ultimately impair that right[.]" *Id.* As a result, the Supreme Court has explicitly held that statements elicited during the "criminal investigatory process" do not violate the right in the absence of criminal proceedings. *Id.* Plaintiff's claim that his right was violated by "subjecting himself to criminal investigation by following the Government's phony claims procedure," Compl. ¶ 36, cannot withstand this authority under the clearly established analysis. No binding authority or persuasive consensus establishes that the claims procedure rises to a violation of Plaintiff's right against self-incrimination.

## CONCLUSION

For the foregoing reasons, Assistant Director Johnson's motion to dismiss should be granted.

20

Dated: July 2, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General, Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch, Civil Division

RICHARD MONTAGUE
Senior Trial Counsel, Torts Branch, Civil Division

/s/ *Joseph A. Gonzalez*
JOSEPH A. GONZALEZ
Trial Attorney, Torts Branch, Civil Division
U.S. DEPARTMENT OF JUSTICE
Ben Franklin Station
P.O. Box 7146
Washington, D.C. 20044-7146
(202) 598-3888 (phone)
(202) 616-4314 (fax)
joseph.a.gonzalez@usdoj.gov

Attorneys for Defendant KRISTI KOONS
JOHNSON in her individual capacity

21