Jeffrey B. Isaacs (SBN 117104)
Jerome H. Friedberg (SBN 125663)
William Wargo (SBN 189987)
**ISAACS | FRIEDBERG LLP**
555 South Flower Street, Suite 4250
Los Angeles, California 90071
Phone:      (213) 929-5550
Facsimile:   (213) 955-5794
Email:      *jisaacs@ifcounsel.com*
            *jfriedberg@ifcounsel.com*
            *wwargo@ifcounsel.com*

*Attorneys for Plaintiff Louis Loe*

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LOUIS LOE,** | Case No. 2:21-cv-03348-RGK-MAR |
| Plaintiff, | **SECOND AMENDED COMPLAINT FOR:** |
| vs. | |
| **UNITED STATES OF AMERICA; TRACY L. WILKISON,** in her official capacity only; **KRISTI KOONS JOHNSON,** in her official and individual capacities; **JUSTIN PALMERTON,** in his individual capacity only; **KATHRYN E. BAILEY DRESS,** in her individual capacity only; **DEZMOND BEVERLY,** in his individual capacity only; **JESSIE MURRAY,** in her individual capacity only; **LYNNE K. ZELLHART,** in her individual capacity only and **DOE UNIDENTIFIED FEDERAL LAW ENFORCEMENT AGENTS 1-10,** in their individual capacities, | **(1) RETURN OF PROPERTY;** **(2) DAMAGES PURSUANT TO** *BIVENS V. SIX UNKNOWN NAMED AGENTS OF THE FEDERAL BUREAU OF NARCOTICS*, **403 U.S. 388 (1971);** **(3) DECLARATORY RELIEF; AND** **(4) ORDER REQUIRING DISCLOSURE OF INVENTORY.** **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff Louis Loe alleges as follows:

## INTRODUCTION

1.     Plaintiff brings this action pseudonymously as Louis Loe against Defendants United States of America ("**United States**"); Acting United States Attorney for the Central District of California, Tracy L. Wilkison ("**Wilkison**"), in her official capacity only; Assistant Director in Charge of the Los Angeles Field Office of the Federal Bureau of Investigation ("**FBI**"), Kristi Koons Johnson ("**Koons Johnson**"), in her official and individual capacities; FBI Special Agent Justin Palmerton ("**Palmerton**"), in his individual capacity; FBI Special Agent Kathryn E. Baily Dress ("**Bailey Dress**"), in her individual capacity; Federal Law Enforcement Agent Dezmond Beverly ("**Beverly**"), in his individual capacity; FBI Supervisory Special Agent Jessie Murray ("**Murray**"), in her individual capacity; FBI Special Agent Lynne E. Zellhart ("**Zellhart**"); and DOE Unidentified Federal Law Enforcement Agents 1 through 10 ("**DOES 1-10**"), in their individual capacities (collectively, "**Defendants**" or the "**government**").[1]

2.     Plaintiff seeks redress for the government's unlawful and unconstitutional seizure, search and retention of Plaintiff's property in violation of Plaintiff's Fourth and Fifth Amendment rights.

3.     Plaintiff stored valuable personal property in safe deposit Box No. 2300 that he leased at U.S. Private Vaults, Inc. ("**USPV**") in Beverly Hills, California, none of which is contraband or otherwise connected to criminal activity.

4.     As described more fully below, on or about March 22, 2021, Defendants unlawfully seized, broke open and then searched Plaintiff's safe deposit box and its contents, in violation of Plaintiff's Fourth Amendment rights. Thereafter, Defendants unlawfully deprived Plaintiff of the use, benefit and enjoyment of his property, and are continuing to deprive him of the use, benefit and

[1] This complaint uses the male pronoun only as a grammatical convenience consistent with the reference to Louis Loe. Plaintiff makes no allegation as to his or her gender.

2

**SECOND AMENDED COMPLAINT**

1  enjoyment of his property, in violation of his Fourth and Fifth Amendment rights,

2  including, but not limited to, by conditioning the return of the contents of his safe

3  deposit box on him disclosing his identity to the government, so that the government

4  can criminally investigate him, in violation of his Fifth Amendment rights to due

5  process and against self-incrimination, and by failing to provide sufficient notice of

6  the factual and legal grounds on which the government purports to continue to

7  detain his property.

8  <center>**JURISDICTION, AUTHORITY AND VENUE.**</center>

9       5.     This Court has jurisdiction over this action pursuant to 28 U.S.C.

10  section 1331, which declares that, "[t]he district courts shall have original

11  jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the

12  United States," and pursuant to Article III of the United States Constitution, in that

13  the United States is a party to this action and the action involves questions of federal

14  constitutional and statutory law.

15       6.     This Court has the authority to order Defendants to return Plaintiff's

16  personal property pursuant to Federal Rule of Criminal Procedure 41(g)

17  ("**Rule 41(g)**"), even in the absence of a criminal proceeding, as it was the subject of

18  an unlawful seizure, an unlawful search and an otherwise unlawful deprivation of

19  property. *See Ramsden v. United States*, 2 F.3d 322, 324 (9th Cir. 1993);

20  *United States v. Martinson*, 809 F.2d 1364, 1366-67 (9th Cir. 1987).

21       7.     This Court also has the inherent equitable power to order the return of

22  Plaintiff's personal property separate and apart from Rule 41(g). *See Otonye v.*

23  *United States*, 903 F. Supp. 357, 360 (E.D.N.Y. 1995).

24       8.     This Court has the authority to award damages against the law

25  enforcement agents who engaged in the unlawful seizure and search of Plaintiff's

26  property, and continuing deprivation of his property rights without due process of

27  law, pursuant to the United States Supreme Court's decision in *Bivens v.*

28  *Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388

<center>3</center>
<center>**SECOND AMENDED COMPLAINT**</center>

(1971) ("***Bivens***"), and its progeny.

9.     This Court has the authority to grant the declaratory relief sought herein pursuant to the Declaratory Judgment Act, 28 U.S.C. section 2201, which provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration," section 2202 and Federal Rule of Civil Procedure 57.

10.    This Court has the authority to order the government to disclose to Plaintiff's counsel a copy of any so-called inventory of the contents of his safe deposit box, pursuant to Federal Rule of Criminal Procedure 41(f) ("**Rule 41(f)**"). *See In re Searches and Seizures*, 2008 WL 5411772, at *3 (E.D. Cal. Dec. 19, 2008) (collecting cases).

11.    Venue is proper in this district pursuant to 28 U.S.C. sections 1391(b)(1), (2) and (3) and (e)(1) because Defendants include officers and employees of the United States and its agencies, and, on information and belief, they reside in this district; because a substantial part of the events and/or omissions giving rise to the claims alleged herein occurred in this district; and because a substantial part of the property that is the subject of this action is situated in this district.

## <u>RELATED CASES.</u>

12.    This case is related to the following civil cases pending in this district before United States District Judge Gary R. Klausner:

(a)    *John Doe v. United States of America, et al.*, Case No. 2:21-cv-02803, filed on March 31, 2021 ("**Case No. 02803**");

(b)    *Richard Roe v. United States of America, et al.*, Case No. 2:21-cv-02919, filed on April 5, 2021;

(c)    *Michael Moe v. United States of America, et al.*, Case No. 2:21-cv-02990, filed on April 6, 2021;

4

**SECOND AMENDED COMPLAINT**

1     (d)   *Charles Coe v. United States of America, et al.*,

2 Case No. 2:21-cv-03019, filed on April 7, 2021 ("**Case No. 03019**");

3     (e)   *DOES 1-6 v. United States of America, at al.*,

4 Case No. 2:21-cv-03254, filed on April 15, 2021 ("**Case No. 03254**")

5     (f)   *Mitchell Magee v. United States of America, et al.*,

6 Case No. 2:21-cv-03298, filed on April 16, 2021;

7     (g)   *Search and Seizure of Box No. 8309 at U.S. Private Vaults v.*

8 *United States of America*, Case No. 2:21-cv-03554, filed on April 26, 2021

9 ("**Case No. 03554**");

10     (h)   *John Joe v. United States of America, et al.*,

11 Case No. 2:21-cv-04366, filed on May 25, 2021; and

12     (i)   *Paul Snitko et al. v. United States of America, et al.*,

13 Case No. 2:21-cv-04405, filed on May 27, 2021 ("**Case No. 04405**").

14    13.   This case is related to the above civil cases pursuant to Local

15 Rule 83-1.3, in that: (a) they all arise from the same or closely related transactions,

16 happenings and events; (b) they all call for the determination of the same or

17 substantially related or similar questions of law and fact; and (c) because they all

18 name the United States as a defendant and seek some of the same relief, they would

19 entail substantial duplication of effort if heard by different judges.

20          **<u>PARTIES.</u>**

21 **A.   Plaintiff.**

22    14.   Plaintiff Louis Loe is, and at all relevant times was, an individual over

23 the age of 18 and residing in Los Angeles County, California.

24    15.   Defendants have publicly stated that "USPV was a criminal business";

25 that it "conspired with its criminal clients to distribute drugs, launder money, and

26 structure transactions to avoid currency reporting requirements"; that these were

27 "among [the] other offenses" USPV and its clients committed; and that "the

28 majority of box holders are criminals . . . ."  Defendants have also expressly stated

5

**SECOND AMENDED COMPLAINT**

1  their intention to criminally investigate any USPV box holder whose identity they

2  can determine, and are currently actively conducting criminal investigations.

3       16.    Plaintiff is a professional who conducts business in and around Los

4  Angeles.  Because of the government's statements about USPV box holders, such as

5  that the "majority of [USPV] box holders are criminals," Plaintiff would be subject

6  to significant injury, harassment, ridicule and personal embarrassment if his name

7  was publicly disclosed as an USPV box holder.

8       17.    Plaintiff therefore brings this action pseudonymously, to protect

9  himself from the risk of unfounded criminal investigation and prosecution arising

10  from the government's unlawful seizure and search of his property, and from injury,

11  harassment, embarrassment and retaliation based merely on the fact that he is a

12  USPV box holder.  *See Does I-XXII v. Advanced Textile Corp.*, 214 F.3d 1058,

13  1067-68 (9th Cir. 2000) ("In this circuit, we allow parties to use pseudonyms in the

14  'unusual case' which nondisclosure of the party's identity 'is necessary . . . to

15  protect a person from harassment, injury, ridicule or personal embarrassment.'")

16  (quoting *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981)).   In Case No.

17  03109, an action also brought by a USPV box holder proceeding under a

18  pseudonym, in an order dated August 16, 2021, the Court held that "Plaintiff's

19  asserted need for anonymity outweighs any prejudice to the Government and the

20  public's interest in knowing Plaintiff's identity at this time."

21       18.    Furthermore, the government is aware of Plaintiff's identity, as a result

22  of the administrative forfeiture proceeding described below.

23  **B.    Defendants.**

24       19.    Defendant United States of America is, and at all relevant times was,

25  the United States, its departments, agencies and entities, including those responsible

26  for the Fourth and Fifth Amendment violations alleged in this action.

27       20.    Defendant Wilkison is, and at all relevant times was, the Acting

28  United States Attorney for the Central District of California (the "**U.S. Attorney**").

6

**SECOND AMENDED COMPLAINT**

1    The U.S. Attorney has authority over all policies and practices of the United States
2    Attorney's Office for the Central District of California ("**USAO**"), and all actions
3    taken by Assistant United States Attorneys for the Central District of California.
4    Defendant Wilkison is sued in her official capacity only.

5         21.    Defendant Koons Johnson is, and at all relevant times was, the
6    Assistant Director in Charge of the FBI's Los Angeles Field Office (the "**Assistant**
7    **Director**").  The Assistant Director has authority over the policies and procedures
8    implemented by, and the actions of, FBI agents assigned to the Los Angeles Field
9    Office.  Defendant Koons Johnson is sued in her official and individual capacities.
10   The search and seizure of USPV was a large-scale operation, involving dozens of
11   FBI and other federal law enforcement agents.  On information and belief, such a
12   significant mobilization of federal law enforcement agents, including FBI agents, in
13   the Los Angeles metropolitan area could only have occurred with Koons Johnson's
14   knowing participation in, and/or approval or ratification of the operational plan for
15   the seizure of the USPV safe deposit boxes, including the decision to seize and
16   break open all of the USPV boxes, and rifle through their contents, despite the
17   complete absence of probable cause to do so.

18        22.    Defendant Palmerton is, and at all relevant times was, a Special Agent
19   of the FBI in, and acting at the direction of, the FBI's Los Angeles Field Office.
20   Defendant Palmerton is sued in his individual capacity.  In Case No. 03254,
21   Defendant Palmerton submitted a Declaration, dated April 16, 2021, stating that, "I
22   personally participated in the inventorying of the contents of the safety deposit
23   boxes at U.S. Private Vaults."

24        23.    Defendant Bailey Dress is, and at all relevant times was, a Special
25   Agent of the FBI in, and acting at the direction of, the FBI's Los Angeles Field
26   Office.  Defendant Baily Dress is sued in her individual capacity.  In Case
27   No. 02803, Defendant Baily Dress submitted a Declaration, dated April 2, 2021,
28   stating that, "I personally participated in the inventorying of the contents of the

7

**SECOND AMENDED COMPLAINT**

496241.1

1    safety deposit boxes at U.S. Private Vaults."

2        24.    Defendant Beverly is, and at all relevant times was, a Federal Law

3    Enforcement Agent, based in the Los Angeles metropolitan area, and acting at the

4    direction of the FBI's Los Angeles Field Office.  Defendant Beverly is sued in his

5    individual capacity.  Defendant Beverly personally participated in the inventorying

6    of the contents of the safety deposit boxes at USPV.

7        25.    Defendant Murray is, and at relevant times was, a Supervisory Special

8    Agent of the FBI in, and acting at the direction of, the FBI's Los Angeles Field

9    Office.  Defendant Murry is sued in her individual capacity.  Defendant Murray has

10   personally participated in the continued detention of Plaintiff's property by the

11   government.

12       26.    Defendant Zellhart is, and at relevant times was, a Special Agent of the

13   FBI in, and acting at the direction of, the FBI's Los Angeles Field Office.

14   Defendant Zellhart is sued in her individual capacity.  Defendant Zellhart signed an

15   affidavit under penalty of perjury that was submitted in support of the search and

16   seizure warrants for USPV (the "**Affidavit**").  The Affidavit was false and

17   misleading for the reasons discussed below.  Plaintiff is informed and believes that

18   all of these false and misleading statements were made by Defendant Zellhart

19   knowingly or with reckless disregard for their truth or falsity.

20       27.    Plaintiff is unaware of the true names and capacities of those

21   Defendants sued as DOES 1-10, and therefore sues those Defendants using their

22   fictitious names.  On information and belief, each such Defendant is a federal law

23   enforcement agent who supervised, participated in, or otherwise aided and assisted

24   the unlawful seizure and search of Plaintiff's safe deposit box and the government's

25   continued deprivation of its contents, and is jointly and severally responsible and

26   liable for the damage and harm caused Plaintiff.  Plaintiff will amend this pleading

27   to allege the true names and capacities of DOES 1-10 when they have been

28   ascertained.

**SECOND AMENDED COMPLAINT**

**STATEMENT OF FACTS.**

**A.     U.S. Private Vaults, Inc.**

28.     USPV has operated a facility offering private safe deposit boxes for rent to the public at 9182 West Olympic Boulevard in Beverly Hills for the past decade.  There is nothing secretive or inherently illegal about the business: USPV was a member of the Beverly Hills Chamber of Commerce; and it advertised by prominent store front signage and on-line through a website that provided detailed information about the services it offered, including videos of customers accessing their safe deposit boxes.  *See* https://www.usprivatevaults.com.

29.     USPV housed several hundred safe deposit boxes of varying sizes, each secured by its own key.  The safe deposit boxes were physically grouped into separate clusters of connected individual safe deposit boxes called "nests."  USPV leased these boxes to the public under yearly leases and provided security and insurance for their contents.  Many of USPV's customers live in the vicinity and used its services because it was conveniently located, and/or because local banks did not have safe deposit boxes available for lease.

30.     Notably, USPV did not keep a key to any rented box, which meant that the only person with the ability to open the box was the box holder or his or her authorized designee.  *See* https://www.usprivatevaults.com/uspv-vs-bank-safe-deposit-box.

31.     According to USPV's website:

- USPV had been operating in Beverly Hills since 2011.
- USPV provided several advantages that were unavailable with bank safety deposit boxes:
  - All USPV boxes were insured; banks do not offer insurance for their boxes.
  - USPV did not hold keys to their clients' boxes; banks do keep a key.

9

**SECOND AMENDED COMPLAINT**

1        o        USPV was not subject to federal banking rules that could
2                 mandate "bank holidays" or a suspension of withdrawals
3                 in case of an economic crisis.
4        o        Accessing a box at USPV took much less time than at a
5                 bank, advertising "In & out access in 5 minutes."
6        o        USPV boxes were not subject to probate lock out upon the
7                 death of the box owner.
8        o        USPV offered a wider selection of box sizes than do
9                 banks.
10   •   Security at USPV was handled by ADT (a publicly traded
11       security company with over $5 billion in revenue, which operates
12       "the largest network of security professionals in the United
13       States").
14   https://investor.adt.com/press-releases/press-release-details/2021/ADT-Reports-
15   Fourth-Quarter-and-Full-Year-2020-Results/default.aspx.

**B.    Plaintiff is a USPV Box Holder.**

32.    Plaintiff leased safe deposit Box No. 2300 at USPV.  Plaintiff possesses the only two keys to the box and has maintained control over the box since commencement of the lease.

33.    Plaintiff was current on his lease payments at the time his box was seized.  He has an expectation of privacy in the interior of the box and its contents.

34.    Plaintiff leased a box at USPV for the sake of convenience.

35.    Plaintiff is not an owner, officer, director, manager, supervisor, employee, or representative of USPV, and is not associated with or a customer of the Gold Business that is co-located with or adjacent to USPV.  He was not aware of any criminal activity occurring at or connected to USPV, and would not have leased a box, or continued to lease a box, at USPV if he had become aware of any such activity.

**SECOND AMENDED COMPLAINT**

496241.1

36.     Plaintiff's box contained sealed envelopes holding currency belonging to Plaintiff.  The currency is Plaintiff's savings and for emergency purposes; it is not contraband, or the proceeds or evidence of illegal activity.

37.     Plaintiff's property was in his safe deposit box when the government seized control of USPV and all of the other safe deposit boxes at USPV on or about March 22, 2021.  Plaintiff has been unable to enter the USPV facility or access his box and its contents since the commencement of the government's search on the morning of March 22, 2021.

**C.     The Government Seizes and Searches All USPV Safe Deposit Boxes and Their Contents, Including Plaintiff's.**

38.     On or about March 9, 2021, the USAO sought and obtained a sealed indictment of USPV.  The charging allegations in the indictment were very narrowly drawn.  The indictment did not name any individual defendants and did not contain any specific allegations of wrongdoing by USPV's customers.

39.     Beginning early in the morning on Monday, March 22, 2021, agents of the United States, including DOES 1-10, executed a seizure warrant (the "seizure warrant") at USPV.

40.     The seizure warrant stated that, "[t]he items to be seized are the following pieces of business equipment," including "the nests of safety deposit boxes and keys," without any limit or reference to particular safe deposit boxes or descriptions of particular nests.

41.     The seizure warrant further stated that:

> ***This warrant does not authorize a criminal search or seizure of the contents of the safety deposit boxes.***  In seizing the nests of boxes, agents shall follow their written inventory policies to protect their agencies and the contents of the boxes. Also in accordance with their written policies, agents shall inspect the contents of the boxes in an effort to identify their

11

**SECOND AMENDED COMPLAINT**

1  owners in order to notify them so that they can claim their

2  property.  (emphasis added.)

3      42.    In executing the seizure warrant, the agents closed the parking lot and

4  the USPV facility to the public and to box holders.  *See* "Federal Investigation

5  Takes Over Beverly Hills Strip Mall," *Beverly Hills Courier* (Mar. 25, 2021),

6  available at https://beverlyhillscourier.com/2021/03/25/federal-investigation-takes-

7  over-beverly-hills-strip-mall/ ("The strip mall at the intersection of West Olympic

8  Boulevard and South Palm Drive is hardly something to gawk at—upscale by strip

9  mall standards, but still a strip mall.  But since March 22, dozens of local and

10  federal agents have taken over the lot.").

11      43.    Once the government had seized USPV, its agents, including

12  Defendants Palmerton, Baily Dress, Beverly and DOES 1-10, proceeded to break

13  into every safe deposit box at the facility, including Plaintiff's, and emptied each

14  box of its contents.  They rifled through the contents of these boxes and inspected all

15  the contents of the boxes.  They continued these inspections for each box even after

16  they discovered information sufficient to identify the box holder.

17      44.    In addition, on information and belief, the government deliberately

18  disabled the biometric data reader through which box holders gained access to the

19  vault area in which their boxes were located, so that Plaintiff and other box holders

20  could not later anonymously establish their ownership of the contents of their boxes.

21      45.    The search of the USPV safe deposit boxes, including that of Plaintiff,

22  was not an inventory search.  If the government had been conducting a lawful

23  inventory search to prevent loss and accusations of theft, there would have been no

24  reason to forcibly open USPV's locked safe deposit boxes that were otherwise

25  impervious to tampering.

26      46.    On Tuesday, March 23, 2021, when the agents were still present at

27  USPV, counsel for the box holder in the Case No. 02803 visited the site and

28  attempted to speak with an agent to learn whether there was a warrant for his

**SECOND AMENDED COMPLAINT**

clients' safe deposit boxes, and, if so, to obtain a copy of the warrant pursuant to the Federal Rules of Criminal Procedure.  A police officer guarding the perimeter carried counsel's message inside to the agents and returned with a message that no agents would come out to speak with counsel, but that counsel could call a telephone number that the agents provided.  The number provided was the FBI's general Los Angeles number.  Counsel left a voicemail message at that number, but his call was never returned.

47.     Counsel subsequently learned that Assistant United States Attorney ("**AUSA**") Andrew Brown was handling the matter.  That same day, another attorney for the box holder in Case No. 02803 contacted AUSA Brown to attempt (a) to determine whether his clients' safe deposit boxes had been searched; (b) to determine whether his clients' property had been seized; and (c) in the event either had occurred, to obtain a copy of the warrant pursuant to the Federal Rules.

48.     During the ensuing conversation, AUSA Brown told the attorney the following:

- The government is seizing all safe deposit boxes at the site, even though the boxes are separately leased by numerous unknown individuals;

- The government will inspect and inventory the contents of every box and use that information to try to identify every box's owner(s);

- The government will not read the contents of notebooks or thumb drives that they find in the boxes;

- A search and seizure warrant was served on the owners or management of USPV, but AUSA Brown declined to disclose either the names of the persons served or their counsel;

- The government will not provide the seizure warrant to a USPV box holder unless and until the box holder identifies himself or

**SECOND AMENDED COMPLAINT**

496241.1

herself to the government;

- If a box holder identifies himself or herself, the government will commence an investigation of the holder to determine whether he or she came by the contents of his or her box legally, and the box holder will be required to establish his or her claim to lawful ownership of the property contained in the box; and

- The government assumes that all USPV box holders are engaged in illegal activity, even though the government does not know the identity of the box holders or the contents of their boxes.

49.  Accordingly, as confirmed by AUSA Brown, it was the government's plan all along to subject every USPV box holder to criminal investigation by doing the following:

(a)  Each safe deposit box holder would be required to disclose his or her identity to the government to make a claim for the return of the contents of their box.

(b)  Once provided with the box holder's identity, the government would conduct a criminal investigation into that person based upon AUSA Brown's belief that anybody who utilized the safe deposit boxes at USPV was a criminal engaged in felonious activity.

(c)  The government would also refuse to return property found in a safe deposit box to its owner unless the box holder explained to the government how they had obtained that property and could prove to the government that it was not related to criminal activity.

**D.  The Government's Phony Claims Process.**

50.  As of March 26, 2021, the USPV location was closed and a sign − a true and correct depiction of which is pictured below − was affixed to the front door directing safe deposit box holders to use the web link *forms.fbi.gov/uspvclaims* to "initiate a claim for your US Private Vaults box":

14

**SECOND AMENDED COMPLAINT**



51.     The form located at forms.fbi.gov/uspvclaims – a true and correct depiction of which is pictured below – stated: "To make a claim for property stored at U.S. Private Vaults in Beverly Hills, California, please provide the following information.  An FBI agent will contact you for additional details."  The form required the box holder to enter his or her first name, last name and contact number for submission:

**SECOND AMENDED COMPLAINT**

496241.1

52.    The form also required the person submitting it to acknowledge that, "it is a federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning the facts on this form as applicable under the provisions of Title 18, United States Code, Section 1001, et seq."

53.    On information and belief, the government's website and form were nothing more than a subterfuge for obtaining the identities and contact information of USPV box holders, in furtherance of the government's plan to criminally investigate all USPV box holders, as confirmed by the following facts, among others:

        (a)    The form did not ask, or even allow, a box holder to list his or her box number, and thus it could not possibly aid the government in returning the contents of particular safe deposit boxes to their owners;

        (b)    Government representatives have admitted to persons who have completed and submitted forms that the FBI had no established or standardized policies, procedures, or process for returning the contents of safe deposit boxes to their owners; and

        (c)    Since at the time the government had not initiated forfeiture proceedings against the contents of the vast majority of safe deposit boxes, including Plaintiff's, there was no legal basis for requiring box holders to submit "claims" to obtain return of their property.

54.    On information and belief, attorneys representing several different USPV box holders have proposed to AUSA Brown that he use a special master or a government staffed filter team to return property seized from the safe deposit boxes at USPV, to allow the government to return property to box holders without them having to reveal their identities to investigators or prosecutors.  AUSA Brown rejected these proposals out of hand.

**E.    The Government's Public Statements and Admissions.**

55.    In an April 2, 2021 public filing in Case No. 02803, the USAO made

**SECOND AMENDED COMPLAINT**

the following relevant statements, among others, concerning the seizure and search of the USPV safe deposit boxes, which necessarily included Plaintiff's box:

(a)     "USPV was a criminal business that conspired with its criminal clients to distribute drugs, launder money, and structure transactions to avoid currency reporting requirements, among other offenses."

(b)     "[T]he majority of box holders are criminals . . . ."

(c)     "The government obtained a sealed criminal seizure warrant for, among other things, the nests of safety deposit boxes located at USPV."

(d)     "During the week of March 22 through 26, federal agents executed the seizure warrant and removed the contents of safety deposit boxes, inventorying their contents in the process . . . ."

(e)     "The inventory was completed on site."

(f)     "Agents left USPV on March 26, 2021."

(g)     "[A]ll the inventory searches were completed by March 26, 2021."

56.     In an April 16, 2021 public filing in Case No. 03254, the USAO made the following additional statements, among others, concerning the seizure and search of the USPV safe deposit boxes, which necessarily included Plaintiff's box:

(a)     "[F]ar from using anonymity to protect the powerless . . . plaintiffs hope to use it to protect rich criminals from the consequences of their crimes, and to keep their ill-gotten gains."

(b)     "The government seized the nests of safety deposit boxes because there was overwhelming evidence that USPV was a criminal enterprise that conspired with its criminal clients to distribute drugs, launder money, and structure transactions to avoid currency reporting requirements, among other offenses."

(c)     "[T]he majority of the box holders are criminals who used USPV's anonymity to hide their ill-gotten wealth … ."

57.     These statements confirm that, at least in Plaintiff's case, the

17

**SECOND AMENDED COMPLAINT**

496241.1

government had no probable cause to seize, search and retain the contents of Plaintiff's safe deposit box, and did so based only on the entirely false and fictitious assumption that Plaintiff was a criminal engaged in felonious criminal activity merely because he leased a safe deposit box at USPV.

**F.      The Government's Unconstitutional and Invalid Administrative Forfeiture Proceedings.**

58.    On or about May 20, 2021, the FBI initiated an administrative forfeiture proceeding (the "**AFP**") by issuing a "Notice of Seizure of Property and Initiation of Administrative Forfeiture Proceedings," which attached a list of assets seized from USPV safe deposit boxes that the government sought to forfeit (together, the "**FBI Notice**").

59.    On or about May 20, 2021, the FBI also sent individualized notices of the AFP to certain USPV box holders the government had identified from documents contained in those box holders' safety deposit boxes.

60.    The FBI Notice included a description of the content's of Plaintiff's box.

61.    The FBI Notice stated no "facts" for why the property was the subject of the AFP, stating only: "The asset(s) referenced in this notice letter were seized on March 22, 2021 by the FBI at U.S. Private Vaults in Beverly Hills, California."

62.    As "Forfeiture Authority" for the AFP, the FBI Notice stated only, "[t]he forfeiture of this property has been initiated pursuant to 18 USC 981(a)(1)(C) and the following additional federal laws: 19 U.S.C. §§ 1602-1619, 18 U.S.C. § 983 and 28 C.F.R. Parts 8 and 9."

63.    The FBI Notice states that, "**TO CONTEST THE FORFEITURE OF THIS PROPERTY IN UNITED STATES DISTRICT COURT YOU MUST FILE A CLAIM**."  According to the FBI Notice, the "claim should be filed online or by mailing it via the U.S. Postal Service or a Commercial Delivery Service to the FBI."  Pursuant to the Individual Notice, if a "claim" was not filed by June 24, 2021,

18

**SECOND AMENDED COMPLAINT**

1    it "may result in the property being forfeited to the United States."

2        64.    The FBI Notice was sent to USPV, which posted it on its website.

3        65.    On or about June 9, 2021, in Case No. 03254, the Court issued an

4    Order (the ("**June 9, 2021 Order**") ruling that:

5            The Government cites no federal statute, regulation, or procedural rule

6            that requires claimants in an administrative forfeiture proceeding to

7            identify themselves by their legal names, nor is the Court aware of any

8            such legal authority.

9        66.    Notwithstanding this ruling, the government has publicly asserted that

10   to be considered valid, any claim contesting the AFP must be filed under the

11   claimant's "true name."  By way of example, in a filing in Case No. 03254, the

12   government stated that under its interpretation of the "Code of Federal Regulations,"

13   no claimant is "permitted to proceed anonymously"; instead, all claimants "must

14   identify themselves" by using their "true names" when making a claim.

15       67.    On or about June 16, 2021, Plaintiff filed a Declaration and Claim (the

16   "**Declaration**") with the FBI to avoid having the government declaring his property

17   forfeit without further process.  In his Declaration, Plaintiff made clear:

18           I am only using my true name (instead of a pseudonym) and

19           identifying my USPV box number and its contents because the

20           government has publicly declared that if I do not, it will deem

21           my claim defective and proceed to forfeit my property without

22           further process.

23   **G.    The Court's Finding and Rulings that the Government's Forfeiture**

24   **Process is Unconstitutional.**

25       *1.    The Court's June 22, 2021 Order.*

26       68.    In Case No. 04405, the plaintiffs were all USPV box holders whose

27   property was subject to the AFP.  They moved for a temporary restraining order

28   ("**TRO**") enjoining the "government from forfeiting property based on notices that

19

**SECOND AMENDED COMPLAINT**

1    do not identify the factual and legal basis for the forfeiture."

2        69.    On or about June 22, 2021, the Court granted the plaintiffs' application

3    for a TRO in that case (the "**June 22, 2021 Order**").  The Court concluded that the

4    FBI Notice, and individualized notices of forfeiture the government had sent to

5    certain USPV box holders, are deficient and unconstitutional as violating the

6    claimants' right to due process of law.

7        70.    In particular, the Court ruled that:

8            •    "[Under *Gete v. I.N.S.*, 121 F.3d 1285, 1297 (9th Cir.

9                 1997), and as affirmed in *Al Haramain Islamic Found., Inc.*

10                *v. U.S. Dep't of Treasury*, 686 F.3d 965 (9th Cir. 2012), in a

11                forfeiture proceeding,] 'the Due Process Clause required the

12                [government] to disclose the factual bases for seizure[]' and

13                'the specific statutory provision allegedly violated.'"

14           •    "Here, the FBI Notice and the individualized notices

15                comply with neither of the Due Process requirements set

16                forth in *Gete* and affirmed in *Al Haramain*."

17           •    "With respect to the factual basis for the seizure of

18                Plaintiffs' property from USPV, the individualized notices

19                state: 'The asset(s) referenced in this notice letter were

20                seized on March 22, 2021 by the FBI at U.S. Private Vaults

21                in Beverly Hills, California[.]' . . .  This notice, put bluntly,

22                provides no factual basis for the seizure of Plaintiffs'

23                property whatsoever."

24           •    "The notices fare little better as to *Gete*'s second Due

25                Process requirement.  In *Gete*, the court held that to satisfy

26                the Due Process rights of known property owners in the

27                forfeiture context, the Government must provide 'notice of

28                the specific statutory provision' that supports the

20

**SECOND AMENDED COMPLAINT**

496241.1

Government's forfeiture proceeding," [such that here] "[t]the notices . . . fall woefully short of the Government's duty to provide the 'specific statutory provision allegedly violated.'"

- "This forfeiture, if conducted in a manner that violates the Due Process clause, would by definition deprive Plaintiffs of their constitutional right to due process of law" [and] "[t]hus, at this juncture Plaintiff has carried its burden as to the likelihood of irreparable harm [arising from the government's inadequate notices]."

71.    On or about June 25, 2021, Plaintiff's counsel sent to the government, by FedEx and U.S. Mail, a "Demand for Immediate Return of Property" (the "**Demand**") on behalf of Plaintiff.  The Demand notified the government of the June 22, 2021 Order, and requested that the government immediately return Plaintiff's property because, for the reasons stated in the June 22, 2021 Order, the FBI's continued retention of Plaintiff's property was (and is) without cause and a violation of his due process rights.

72.    Thus far, the government has not responded to either Plaintiff's Declaration or Demand.

**2.    *The Court's July 23, 2021 Order.***

73.    In Case No. 04405, on or about July 23, 2021, the Court granted, in part, the plaintiffs' motion for preliminary injunction (the "**July 23, 2021 Order**"). Specifically, in regard to plaintiff Joseph Ruiz (the only plaintiff in the case those property the government was still holding), the Court found that the government failed to provide any adequate justification for holding on to his property.  The Court found that, "[m]erely stating that the Government has initiated forfeiture proceedings against [Ruiz's] property does not offer any insight into how the Government's continued retention of the $57,000 complies with the dictates of the

21

**SECOND AMENDED COMPLAINT**

1    Fourth Amendment."

2        74.    In the July 23, 2021 Order the Court found that, "[i]t is well established

3    that the deprivation of constitutional rights unquestionably constitutes irreparable

4    injury."  Accordingly, because the government had neither returned Mr. Ruiz's

5    property, "nor provided an adequate justification for the prolonged seizure [since

6    March 22, 2021]," the Court held that Mr. Ruiz "will therefore likely continue to

7    suffer injury to his Fourth Amendment rights for the foreseeable future if an

8    injunction does not issue."

9    **H.    The Government's False And Misleading Affidavit.**

10       75.    Just recently, on or about August 5, 2021, the government unsealed in

11   full the Affidavit that it filed to support of the search and seizure warrants for USPV

12   (a single affidavit was submitted in support of both warrants).  The Affidavit was

13   was relied upon by the Magistrate Judge in issuing the search and seizure warrants.

14   The Affidavit was sworn to by Defendant Zellhart under penalty of perjury.

15       *1.    The Affidavit Provided No Probable Cause for the*

16            *Search and Seizure of Plaintiff's USPV Box.*

17       76.    The Affidavit provided no probable cause whatsoever to seize and

18   search Plaintiff's USPV box.

19       77.    In fact, despite being over 90-pages in length, the Affidavit made no

20   reference to Plaintiff, his USPV box, the contents of his USPV box, or the nest of

21   safe deposit boxes that included his box.  Nor did the Affidavit provide any

22   information whatsoever about any particular box or nests of boxes at USPV.

23       *2.    The Affidavit Was Materially False and Misleading Regarding the*

24            *Government's True Plan with Respect to Plaintiff's USPV Box.*

25       78.    The Affidavit was materially false and misleading in that it did not

26   disclose that the government's true plan all along was to seize and search Plaintiff's

27   USPV box (and those of hundreds of other USPV customers) without any probable

28   cause, and then use the fruits of that unlawful seizure and search to conduct a

22

**SECOND AMENDED COMPLAINT**

1    criminal investigation of Plaintiff (and other USPV customers).

2        79.    Nor did the Affidavit anywhere disclose that the government had no

3    plan or intent to return Plaintiff's property (or that of hundreds of other USPV

4    customers), and that instead of returning Plaintiff's property (despite knowing his

5    name and address as a result of the search of his box), the government planned and

6    intended to initiate administrative forfeiture proceedings against his property (and

7    that of hundreds of other USPV customers), without any cognizable legal or factual

8    basis for doing so.

9        80.    Rather, the Affidavit falsely and misleadingly stated that:

10            The warrants authorize the seizure of the nests of the boxes

11            themselves, ***not their contents***.  By seizing the nests of safety

12            deposit boxes, the government will necessarily end up with

13            custody of what is inside those boxes initially.  ***Agents will***

14            ***follow their written inventory policies to protect their***

15            ***agencies from claims of theft or damage to the content of the***

16            ***boxes, and to ensure that no hazardous items are***

17            ***unknowingly stored in a dangerous manner***.  (emphasis

18            added).

19        81.    The Affidavit also falsely and misleadingly stated that:

20            Agents will ***attempt to notify the lawful owners of the***

21            ***property stored in the boxes how to claim their property***, such

22            as by posting that information on the internet or at USPV

23            itself, or by contacting the owners directly.  In order to notify

24            the owners directly, agents will, in accordance with their

25            policies regarding an unknown person's property, look for

26            contract information or something which identifies the owner,

27            (USPV recommends that box renters include their or their

28            designees' telephone numbers on a note in a box in the event

23

**SECOND AMENDED COMPLAINT**

1   that UPSV removes the contents for nonpayment of rental

2   fees.)  (emphasis added).

3   82.   The Affidavit further falsely and misleadingly stated that:

4   The FBI policy regarding taking custody of an unknown

5   person's property provides, in part, that agents "inspect the

6   property as necessary to identify the owner and preserve the

7   property for safe keeping."   The inspection "***should extend no***

8   ***further than necessary to determine ownership***."  (emphasis

9   added).

10   83.   Further, the Affidavit nowhere purports to explain why a receivership,

11   a temporary restraining order, or some other legal mechanism would not be

12   sufficient to preserve the property of USPV's customers without the need for a

13   pretextual inventory search.

14   84.   In short, the Affidavit created the false and misleading impression that

15   the government needed to search Plaintiff's USPV box (and that of hundreds of

16   other USPV customers) to be able to inventory Plaintiff's property and return it to

17   him, when, in fact, it was always the government's plan and intent to use the search

18   as a pretext to criminally investigate Plaintiff (and hundreds of other USPV

19   customers) and seek to administratively forfeit his property (and that of hundreds of

20   other USPV customers) without a legitimate legal or factual basis for doing so.

21   ***3.***   ***The Affidavit was False and Misleading in Numerous Other***

22   ***Material Respects.***

23   85.   The Affidavit was false and misleading in numerous other material

24   respects.

25   86.   *First*, the Affidavit did not inform the Magistrate Judge that USPV has

26   been operating in Beverly Hills since 2011; that it was a member of the Beverly

27   Hills Chamber of Commerce; or that there was nothing clandestine about it as it

28   advertises by prominent store front signage and on the Internet.  Likewise, nowhere

24

**SECOND AMENDED COMPLAINT**

in the Affidavit did the government disclose that USPV has hundreds of customers with respect to whom the government had no cause whatsoever to believe that they were engaged in any criminal activity or were concealing contraband at USPV.

87.     *Second*, throughout the Affidavit the government falsely and misleadingly suggested that Plaintiff and hundreds of USPV customers are engaged in criminal conduct of a serious nature, omitting the material fact that USPV's customers include retirees, professionals and other entirely law-abiding citizens who, like Plaintiff, stored their property at UPSV for the sake of convenience and security.

88.     *Third*, the Affidavit falsely and misleadingly stated that USPV's "business is designed to appeal to criminals for customers," omitting the material fact that the government had no factual basis or other cause to believe that Plaintiff (or hundreds of other USPV customers) was a criminal or engaged in criminal activity of any sort.

89.     *Fourth*, the Affidavit falsely and misleadingly stated that, "USPV also launder for its customers cash that is purported to be drug proceeds by converting it into precious metals or wire transfers," omitting the material fact that the government had no factual basis or other cause to believe that Plaintiff's cash (or the cash of hundreds of other USPV customers) was "drug proceeds." Nor did the government disclose that Plaintiff never had USPV convert any of his money into "precious metals or wire transfers."

90.     *Fifth*, the Affidavit falsely and misleadingly stated that, "[b]y using its customers' criminal proceeds to maintain its own anonymous facility for the storage of criminal proceeds, USPV engages in money laundering," omitting the material fact that the government had no factual basis or other cause to believe that Plaintiff's property (or that of hundreds of other USPV customers) was "criminal proceeds."

91.     *Sixth*, the Affidavit falsely and misleadingly stated that, "[b]y providing and promoting total anonymity, USPV caters to and attracts criminals who seek to

**SECOND AMENDED COMPLAINT**

496241.1

keep their identities and the source of their cash beyond the reach of banks, regulators, the IRS and law enforcement," omitting the material fact that the government had no factual basis or other cause to believe that Plaintiff was a criminal or ever sought to place his identity or the source of his property "beyond the reach" of any appropriate government authority.

92.     *Seventh*, the Affidavit falsely and misleadingly stated that USPV "know[s] that their customers are using the vault for criminal purposes, such as storing illegal proceeds," omitting the material fact that USPV did not and could not know that Plaintiff (and hundreds of other USPV customers) were "using the vault for criminal purposes" because Plaintiff (or those hundreds of customers) was not a criminal, was not storing "illegal proceeds" and was not using USPV for any criminal purpose.

93.     *Eighth*, the Affidavit falsely and misleadingly stated that, "traditional banks and financial institutions . . .  provide safe deposit boxes . . . in a manner which does not cater to and attract criminals," creating the false impression that Plaintiff (and other USPV customers) utilized USPV for criminal purposes, omitting the material facts that many traditional banks no longer provide safe deposit boxes (or do not in convenient locations), and that, on information and belief, at least one prominent traditional bank recommended that individuals needing a safe deposit box utilize UPSV.

94.     *Ninth*, the Affidavit falsely and misleadingly stated that, "USPV Principals Help Its Customers Evade Law Enforcement," omitting the material fact that USPV's principals are unknown to Plaintiff and that they have never assisted him (or hundreds of other USPV customers) to "evade law enforcement."

95.     *Tenth*, the Affidavit falsely and misleadingly stated that, "there is no reason for non-criminal clients to use USPV," and that it would be "irrational" for "non-criminal customer to choose USPV," omitting the material facts that the government had no factual basis or other cause to believe that Plaintiff (or hundreds

**SECOND AMENDED COMPLAINT**

of other USPV customers) was a criminal, and that there were many rational reasons for law abiding citizens to choose USPV, including its location, security features, hours of operation, insurance and the lack of other convenient safe deposit box facilities.

> ### 4. The Affidavit's False and Misleading Statements and Omissions of Material were Made Knowingly or with Reckless Disregard for Their Truth or Falsity.

96.    Plaintiff is informed and believes that all of the materially false and misleading statements in the Affidavit, and all of the omissions of material fact from the Affidavit, were made deliberately or with reckless disregard for their truth or falsity.

## G.    Plaintiff Is Suffering Ongoing Harm.

97.    Notwithstanding his filing of the Declaration and the issuance of the June 22, 2021 Order, Plaintiff's property that he was storing in his safe deposit box remains in the government's custody and control, and Plaintiff continues to be deprived of any use, benefit, enjoyment, or access to that property.  Meanwhile, Plaintiff has no means to recover possession of that property because the government has no established and standardized policies, procedures, or processes for promptly returning Plaintiff's property to him, and instead has commenced an unconstitutional, unlawful and invalid AFP against his property to further unlawfully delay return of his property.

## GOVERNING LEGAL PRINCIPLES

## A.    Relevant Search and Seizure Law.

98.    The Fourth Amendment to the United States Constitution provides that, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and

27
**SECOND AMENDED COMPLAINT**

1    particularly describing the place to be searched, and the persons or things to be

2    seized."  U.S. Const., amend IV.

3         ***1.      The Probable Cause Requirement.***

4         99.    The confiscation, detention, inspection and/or cataloguing of the

5    contents of a safe deposit box containing private property is a search and seizure for

6    purposes of the Fourth Amendment.  *See, e.g., United States v. Chadwick*, 433 U.S.

7    1, 11 (1977) ("By placing personal effects inside a double-locked footlocker,

8    respondents manifested an expectation that the contents would remain free from

9    public examination."), *abrogated on other grounds by California v. Acevedo*,

10   500 U.S. 565 (1991); *United States v. Spilotro*, 800 F.2d 959, 962 (9th Cir. 1986)

11   ("We begin by noting that there is no question that defendant Blasko has standing to

12   challenge the search of his home, person, and safe deposit box."); *United States v.*

13   *Wetselaar*, 2013 WL 8206582, *10 (D. Nev. Dec. 31, 2013) ("[A]s renters of those

14   boxes, Defendants had a reasonable expectation of privacy in the contents, which

15   include the space inside the box and the inner metal liner itself.").

16        100.   The Supreme Court has made clear that a warrant must describe the

17   places to be searched and the items to be seized with particularity and supported by

18   probable cause specific to those places and items:

19              The Warrant Clause of the Fourth Amendment categorically

20              prohibits the issuance of any warrant except one "particularly

21              describing the place to be searched and the persons or things

22              to be seized."  The manifest purpose of this particularity

23              requirement was to prevent general searches.  By limiting the

24              authorization to search to the specific areas and things for

25              which there is probable cause to search, the requirement

26              ensures that the search will be carefully tailored to its

27              justifications, and will not take on the character of the

28              wide-ranging exploratory searches the Framers intended to

28

**SECOND AMENDED COMPLAINT**

1    prohibit.  Thus, the scope of a lawful search is "defined by the
2    object of the search and the places in which there is probable
3    cause to believe that it may be found.  Just as probable cause
4    to believe that a stolen lawnmower may be found in a garage
5    will not support a warrant to search an upstairs bedroom,
6    probable cause to believe that undocumented aliens are being
7    transported in a van will not justify a warrantless search of a
8    suitcase."

9    *Maryland v. Garrison*, 480 U.S. 79, 84 (1987) (quoting *United States v. Ross*,

10   456 U.S. 798, 824 (1982)); *accord United States v. SDI Future Health, Inc.,* 568

11   F.3d 684, 702-703 (9th Cir. 2009) ("A warrant must not only give clear instructions

12   to a search team, it must also give legal, that is, not overbroad, instructions.  Under

13   the Fourth Amendment, this means that there [must] be probable cause to seize the

14   particular thing[s] named in the warrant.  [P]robable cause means a fair probability

15   that contraband or evidence of a crime will be found in a particular place, based on

16   the totality of circumstances.") (citations and quotation marks omitted).

17        101.   Consequently, the search of a place or the seizure of an item pursuant

18   to an overbroad warrant for which there is no specific probable cause is invalid.  *See*

19   *United States v. Know,* 58 F.3d 423, 427 (9th Cir. 1995) ("The warrant authorized

20   the seizure of virtually every document and computer file at HK Video . . . . [T]he

21   warrant contained no limitations on which documents within each category could be

22   seized or suggested how they related to specific criminal activity.  By failing to

23   describe with any particularity the items to be seized, the warrant is

24   indistinguishable from the general warrants repeatedly held by this court to be

25   unconstitutional.").

26        102.   Moreover, probable cause in the warrant context requires more than

27   "mere suspicion" that the place to be searched or the item to be seized is connected

28   to criminal activity; it requires an "evidentiary nexus" to the alleged criminal

29

**SECOND AMENDED COMPLAINT**

activity.  *United States v. Wanless*, 882 F.2d 1459, 1466 (9th Cir. 1989) ("Even if the evidence here would . . . justify the . . . suspicion that there were illegal substances . . . [m]ere suspicion does not rise to the level of probable cause.") (internal quotations omitted); *United States v. Schultz*, 14 F.3d 1093, 1097-98 (6th Cir. 1994) ("While an officer's 'training and experience' may be considered in determining probable cause, it cannot substitute for the lack of evidentiary nexus . . . between the safe deposit boxes and any criminal activity.  Officer Ideker did not have anything more than a guess that contraband or evidence of a crime would be found in the boxes, and therefore the . . . warrant should not have been issued.").

**2.      *The Government Cannot Deliberately or Recklessly Mislead the Issuing Magistrate Judge.***

103.   It is also well established that a warrant based upon deliberately or recklessly false or misleading information material to the issue of probable cause is invalid, in whole or in part.  As the Supreme Court has decreed:

> [W]hen the Fourth Amendment demands a factual showing sufficient to comprise "probable cause," the obvious assumption is that there will be a *truthful showing*.  This does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily.  But surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true.  It is established law, that a warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter.  If an

30

**SECOND AMENDED COMPLAINT**

1    informant's tip is the source of information, the affidavit must

2    recite some of the underlying circumstances from which the

3    informant concluded that relevant evidence might be

4    discovered, and some of the underlying circumstances from

5    which the officer concluded that the informant, whose identity

6    need not be disclosed, . . . was "credible" or his information

7    "reliable."  Because it is the magistrate who must determine

8    independently whether there is probable cause, it would be an

9    unthinkable imposition upon his authority if a warrant

10   affidavit, revealed after the fact to contain a deliberately or

11   reckless false statement, were to stand beyond impeachment."

12   *Franks v. Delaware*, 438 U.S. 154, 164-65 (1984) (citations and internal quotations

13   omitted, emphasis in original); *see also United States v. Perkins*, 850 F.3d 23009,

14   1123 (9th Cir. 2017) ("We hold that the district court clearly erred in finding that

15   Agent Ensley did not omit relevant information with at least a reckless disregard for

16   whether the omissions would render the warrant application misleading.  Had the

17   omitted information been included, the application would not have supported

18   probable cause.  We, therefore, reverse the district court's denial of the motion to

19   suppress evidence obtained pursuant to the search warrant, and vacate Perkins'

20   conviction.").

21       104.  The "good faith" exception to a legally insufficient search or seizure

22   warrant, recognized by the Supreme Court in *United States v. Leon*, 468 U.S. 897

23   (1984), does not apply where the warrant is "so lacking in indicia of probable cause

24   as to render official belief in its existence entirely unreasonable."  *Id.* at 923; *see*

25   *also United States. v. Underwood*, 725 F.3d 1076, 1085-86 (9th Cir. 2013) ("An

26   affidavit is so lacking in indicia of probable cause, or bare bones, when it fails to

27   provide a colorable argument for probable cause.  A colorable argument is made

28   when 'thoughtful and competent judges' could disagree that probable cause does not

31

**SECOND AMENDED COMPLAINT**

1    exist.  Here . . . the affidavit submitted . . . in support of the state search warrant . . .

2    was so deficient as to render official belief in its existence entirely unreasonable.")

3    (citations omitted).

4         *3.    Inventory Versus Investigatory Searches.*

5         105.   The Supreme Court has held that "the opening of containers found

6    during inventory searches is based on the principle that an inventory search must not

7    be a ruse for a general rummaging in order to discover incriminating evidence"; that

8    "inventory searches should be designed to produce an inventory"; and that

9    "individual police officer[s] must not be allowed so much latitude that inventory

10   searches are turned into a purposeful and general means of discovering evidence of

11   crime." *Florida v. Wells*, 495 U.S. 1, 4-5 (1990) (internal quotations omitted).

12        106.   For an inventory search to be valid, it must be required by and

13   conducted in accordance with established and standardized policies and procedures.

14   *See United States v. Bulacan,* 156 F.3d 963, 970 (9th Cir. 1998) ("discretion when

15   conducting an inventory" must be "exercised according to standard criteria and on

16   the basis of something other than suspicion of evidence of criminal activity")

17   (quoting *Wells*, 495 U.S. at 3-4); *United States v. Johnson*, 936 F.2d 1082, 1084 (9th

18   Cir. 1991) ("[A]n inventory search is unconstitutional unless it is conducted both (a)

19   pursuant to an established inventory-search policy . . . and (b) in accordance with

20   the official procedures of the relevant [law enforcement agency]".).

21        107.   The purpose of an inventory search, according to the Supreme Court,

22   must be limited to "the protection of the owner's property while it remains in police

23   custody; the protection of the police against claims or disputes over lost or stolen

24   property; and the protection of the police from potential danger." *South Dakota v.*

25   *Opperman*, 428 U.S. 364, 368 (1976) (citations omitted).

26        108.   Thus, "[a]n inventory search will not be sustained where the court

27   believed that the officers were searching for incriminating evidence of other

28   offenses." *United States v. Feldman*, 788 F.2d 544, 553 (9th Cir. 1986); *see also*

**SECOND AMENDED COMPLAINT**

1  *United States v. Johnson*, 889 F.3d 1120, 1125 (9th Cir. 2018) (holding that

2  inventory searches "must be non-investigative").

3      109.   In the course of an inventory search, government agents are not

4  permitted to read written documents, as they may contain information that goes well

5  beyond the allowed limited scope of an inventory search.  *See United States v.*

6  *Khoury*, 901 F.2d 948, 959 (11th Cir. 1990) (reading diary during inventory search

7  was a Fourth Amendment violation; the government agent was only allowed to flip

8  through the diary to see if any separate document or object was stuck between its

9  pages); *see also United States v. Santos*, 961 F. Supp. 71, 73–74 (S.D.N.Y.1997)

10  (finding that reading all written material among defendant's possessions during

11  inventory search was an "affirmative, investigatory act" in violation of the Fourth

12  Amendment).

13  **B.    Relevant Fifth Amendment Due Process Law.**

14      110.   The Due Process Clause of the Fifth Amendment to the United States

15  Constitution provides that, "[n]o person shall be . . . deprived of life, liberty, or

16  property, without due process of law."  U.S. Const., amend. V.

17      111.   The government's continued retention of seized property – even if

18  initially lawful – raises the issue of procedural due process.  *See Case v. Eslinger*,

19  555 F.3d 1317, 1330 (11th Cir. 2009) ("A complaint of continued retention of

20  legally seized property raises an issue of procedural due process. . ."); *see also*

21  *Al Haramain Islamic Foundation*, 686 F.3d at 980 ("[T]he Constitution does require

22  that the government take reasonable measures to ensure basic fairness to the private

23  party and that the government follow procedures reasonably designed to protect

24  against erroneous deprivation of the private party's interests."); *Lewis v. City of*

25  *Culver City*, 2018 WL 1406609, *2 (C.D. Cal. Mar. 19, 2018) ("[T]he continued

26  retention of legally seized property would raise an issue of procedural due

27  process . . . ."); *Lena Sutton* v. *Leesburg, Alabama,* 2021 WL 1264244, *13

28  (N.D. Ala. Apr. 6, 2021) ("[T]he continued retention of legally seized property. . .

33

**SECOND AMENDED COMPLAINT**

1 raises an issue of procedural due process.").

2      112.   Procedural due process includes the right to "sufficient notice

3 concerning the factual and legal bases for" deprivation of property rights. *Gete*, 121

4 F.3d at 1297.  Thus, where the government has seized property, it must provide

5 notice of "the exact reasons for the seizure, as well as the particular statutory

6 provisions and regulations" at issue. *Id*. at 1297.

7      113.   It is a matter of well established constitutional jurisprudence that the

8 government may not require a person to waive his Fifth Amendment privilege

9 against self-incrimination in order to vindicate his Fourth Amendment right against

10 unreasonable searches and seizures.  *See Simmons v. United States*, 390 U.S. 377,

11 394 (1968) (where defendant "was obliged either to give up what he believed, with

12 advice of counsel, a valid Fourth Amendment claim or, in legal effect, to waive his

13 Fifth Amendment against self-incrimination," Court found "it intolerable that one

14 constitutional right should have to be surrendered in order to assert another");

15 *Bittaker v. Woodford*, 331 F.3d 715, 724 (9th Cir. 2003) ("The scope of required

16 disclosure should not be so broad as to effectively eliminate any incentive to

17 vindicate [one's] constitutional right[s]."); *Gates v. City of Chicago*, 623 F.3d 389,

18 441 (7th Cir. 2010) ("[T]he City[s]. . . .procedure improperly places on the arrestee

19 the burden of proof to establish that he had a lawful right to the property. . . .  [S]uch

20 a burden [improperly] impos[es] a criminal sanction in the absence of criminal

21 conduct.").

22 **C.      *Bivens*.**

23      114.   In *Bivens v. Six Unknown Named Agents of the Federal Bureau of*

24 *Narcotics*, 403 U.S. 388 (1971), the Supreme Court held that, "violation of [the

25 Fourth Amendment's] command by a federal agent acting under color of his

26 authority gives rise to a cause of action for damages consequent upon his

27 unconstitutional conduct," *id*. at 389, and that a plaintiff "is entitled to recover

28 money damages for any injuries he has suffered as a result of the agent's violation

34
**SECOND AMENDED COMPLAINT**

496241.1

1    of the Amendment." *Id.* at 397; *see also Boule v. Egbert*, 980 F.3d 1309, 1315

2    (9th Cir. 2020) (Plaintiff's "Fourth Amendment claim . . . is a permissible area for

3    *Bivens* claims," and thus "may proceed as a *Bivens* damages claim.")

4         115.   In *Bivens*, the plaintiff alleged that federal agents had engaged in an

5    unreasonable search of his apartment.  403 U.S. 389-90.  In holding that the plaintiff

6    could bring a damages action against the federal agents who engaged in the

7    unreasonable search, the Supreme Court held that:

8              [T]he Fourth Amendment operates as a limitation upon the

9              exercise of federal power . . . [I]t guarantees to citizens of the

10             United States the absolute right to be free from unreasonable

11             searches and seizures carried out by virtue of federal authority.

12             And where federally protect rights have been invaded it has

13             been the rule from the beginning that courts will be alert to

14             adjust their remedies so as to grant the necessary relief.

15   *Bivens*, 403 U.S. at 392 (internal quotation omitted).

16        116.   Furthermore, the Supreme Court has long held that punitive damages

17   may be awarded in a *Bivens* action.  *See Carlson v. Green*, 446 U.S. 14, 22 (1980)

18   ("Punitive damages are 'a particular remedial mechanism normally available in the

19   federal courts,' and are especially appropriate to redress the violation by a

20   government official of a citizen's constitutional rights.") (citation omitted).

21                     **DEFENDANTS UNLAWFULLY SEIZED,**

22       **SEARCHED AND DEPRIVED PLAINTIFF OF HIS PROPERTY**

23        117.   Defendants' seizure and search of Plaintiff's safe deposit box and

24   continued detention of his property was (and is) unconstitutional and unlawful in the

25   following respects, among others.

26        118.   *First*, the seizure warrant for Plaintiff's box was invalid because

27   Defendants lacked any probable cause that the contents of the box was contraband

28   or otherwise connected to criminal activity.  That Defendants lacked probable cause

**SECOND AMENDED COMPLAINT**

is manifest on the face of the seizure warrant, which expressly stated, "[t]his warrant does not authorize a criminal search or seizure of the contents of the safety deposit boxes." It is also evident from the unsealed portion of the supporting Affidavit, which expressly stated that, "[t]he warrants authorize seizure of the nest of boxes themselves, _not_ their contents." (emphasis in original).

119.   *Second*, Defendants knowingly or recklessly made materially false and misleading statements to the Magistrate Judge who issued the search and seizure warrants by falsely implying that the government had probable cause to believe that Plaintiff's box, or the nest of safe deposit boxes in which Plaintiff's box was included, contained contraband or was otherwise connected to criminal activity, and by falsely advising the Magistrate Judge that the government's purpose in searching Plaintiff's box was to return his property to him, when, in fact, it was to criminally investigate him and then seek to administratively forfeit his property without any legal or factual basis for doing so.

120.   *Third*, Defendants cannot avail themselves of the good faith exception to a facially deficient seizure warrant because the warrants were so lacking in indicia of probable cause with respect to Plaintiff's box and its contents as to render official belief in the existence of such probable cause entirely unreasonable. Indeed, the warrants expressly stated that they did not authorize the search or seizure of any box, including Plaintiff's, for purposes of criminal investigation.

121.   *Fourth,* Defendants acted unreasonably in breaking open Plaintiff's box because they lacked probable cause that the contents of the box were contraband or otherwise connected to criminal activity, and by breaking it open, Defendants needlessly subjected its contents to theft and government tampering.

122.   *Fifth,* Defendants' purported "inventory search" of Plaintiff's box was unlawful because their seizure of the box and its contents was invalid in the first place, as entirely lacking in probable cause.

123.   *Sixth,* Defendants' purported "inventory search" of Plaintiff's box was

36

**SECOND AMENDED COMPLAINT**

also unlawful as it was, in fact, a pretext for conducting an investigatory search, the true purpose of which was to further Defendants' indiscriminate criminal investigation of USPV box holders.

124.   *Seventh,* Defendants' purported "inventory search" of Plaintiff's box was also unlawful because it was not required by or conducted pursuant to established and standardized agency policies and procedures.  If the government had been conducting a proper inventory search—intended to prevent loss and accusations of theft—there would have been no reason to forcibly open USPV's locked safe deposit boxes that were otherwise impervious to tampering.

125.   *Eighth,* since Defendants completed inventorying the contents of Plaintiff's box on or about March 22, 2021, Defendants have deprived Plaintiff of the use, benefit and enjoyment of his property without due process by failing to promptly establish and implement a legitimate process for the immediate return of his property.

126.   *Ninth,* Defendants' AFP is unconstitutional and invalid because the government has failed to provide Plaintiff adequate notice of the factual and legal grounds on which it seeks to forfeit Plaintiff's property.

127.   *Tenth*, Defendants impermissibly conditioned the return of Plaintiff's property on Plaintiff subjecting himself to criminal investigation, in violation of his privilege against self-incrimination, and impermissibly compelled Plaintiff to disclose his true name in the AFP by threatening to deem his claim invalid and declare his property forfeited without further process if he did not.

## FIRST CAUSE OF ACTION

### (For Return of Property

### (Against Defendants United States, Wilkison and Koons Johnson)

128.   Plaintiff repeats and realleges paragraphs 1 through 127 of this Complaint as if fully alleged herein.

129.   Federal Rule of Criminal Procedure 41(g) provides that, "[a] person

37

496241.1

1    aggrieved by an unlawful search and seizure of property or by the deprivation of
2    property may move for the property's return . . . ."

3        130.   In addition, the Court has inherent authority to order the return of
4    property unlawfully seized and retained by the government.

5        131.   Plaintiff is a "person aggrieved" within the meaning of Rule 41(g)
6    because, as described more fully above:

7            (a)   Defendants unlawfully seized his safe deposit box at USPV and
8    its contents, in violation of his Fourth Amendment rights;

9            (b)   Defendants unlawfully searched that box and its contents, in
10   further violation of his Fourth Amendment rights; and

11           (c)   Defendants have unlawfully continued to detain his property
12   without cause and have deprived him of the use, benefit and enjoyment of that
13   property, in violation of his Fifth Amendment due process rights.

14       132.   Because Defendants' conduct as described herein constituted an
15   unlawful seizure of Plaintiff's safe deposit box and its contents, an unlawful search
16   of his box and its contents and an unlawful deprivation of Plaintiff's property
17   without due process, Plaintiff is entitled to the return of his property under
18   Rule 41(g) and as an exercise of the Court's inherent authority.

19                    **SECOND CAUSE OF ACTION**
20            **(For Damages Pursuant to *Bivens, 403 U.S. 388 (1971)*)**
21            **(Against Koons Johnson, Palmerton, Baily Dress,**
22            **Beverly, Murray, Zellhart and DOES 1-10 individually)**

23       133.   Plaintiff repeats and realleges paragraphs 1 through 132 of this
24   Complaint as if fully alleged herein.

25       134.   Under the Fourth Amendment, Plaintiff's safe deposit box and its
26   contents may not be seized and searched without probable cause or based upon false
27   and misleading statements to the issuing Magistrate Judge.

28       135.   Under the Fifth Amendment, Plaintiff may not be deprived of the use,

**SECOND AMENDED COMPLAINT**
496241.1

1  benefit and enjoyment of his property without due process of law.

2      136.   The government has improperly withheld information about the seizure

3  and search of Plaintiff's safety deposit box at USPV to, among other reasons,

4  obscure, conceal and coverup the culpability of federal agents, including

5  Defendants, for the violations of Plaintiff's Fourth and Fifth Amendment rights,

6  including, without limitation, by refusing for months to unseal all but a small

7  portion of the Affidavit filed in support of the search and seizure warrants, and by

8  still failing to produce any inventories of Plaintiff's property conducted and/or

9  prepared by the government, including any video recordings purportedly showing

10  government agents inventorying the contents of Plaintiff's box.

11     137.   Defendants Koons Johnson, Palmerton, Bailey Dress, Beverly, Zellhart

12  and DOES 1-10, as agents of the United States acting under color of authority,

13  violated Plaintiff's Fourth Amendment rights by seizing his safe deposit box and its

14  contents without probable cause and based upon false and misleading statements to

15  the Magistrate Judge who issued the search and seizure warrant.

16     138.   Defendants Koons Johnson, Palmerton, Bailey Dress, Beverly, Zellhart

17  and DOES 1-10, as agents of the United States acting under color of authority,

18  further violated Plaintiff's Fourth Amendment rights by searching his safe deposit

19  box without probable cause.

20     139.   Defendants Koons Johnson, Palmerton, Bailey Dress, Beverly, Murray,

21  Zellhart and DOES 1-10, as agents of the United States acting under color of

22  authority, also violated Plaintiff's Fifth Amendment rights by depriving Plaintiff of

23  the use, benefit and enjoyment of the property he was storing in his safe deposit box

24  without due process of law.

25     140.   Because the conduct of Defendants Koons Johnson, Palmerton, Bailey

26  Dress, Beverly, Murray, Zellhart and DOES 1-10 as described herein constituted an

27  unlawful seizure of Plaintiff's safe deposit box and its contents, an unlawful search

28  of his box and its contents, and an unlawful deprivation of Plaintiff's property

**SECOND AMENDED COMPLAINT**

1   without due process, Plaintiff is entitled to damages under *Bivens*, 403 U.S. 388

2   (1971), and its progeny, including, but not limited to, exemplary and punitive

3   damages.

4                      **THIRD CAUSE OF ACTION**

5                         **(Declaratory Relief)**

6                        **(Against All Defendants)**

7        141.   Plaintiff repeats and realleges paragraphs 1 through 140 of this

8   Complaint as if fully alleged herein.

9        142.   As described above, Plaintiff contends that Defendants have unlawfully

10  seized his property in violation of the Fourth Amendment; have unlawfully searched

11  his property in violation of the Fourth Amendment; and are unlawfully depriving

12  him of the use, benefit and enjoyment of his property without due process in

13  violation of the Fifth Amendment.

14       143.   Defendants contend that their seizure, search and continued and

15  indefinite detention of Plaintiff's property is constitutional, and therefore Plaintiff is

16  not entitled to relief.

17       144.   Accordingly, a judicial declaration is necessary and appropriate at this

18  time and under these circumstances, so that Plaintiff may ascertain his right to

19  regain possession of his personal property that Defendants have seized and are

20  continuing to detain, and to do so without having to subject himself to criminal

21  investigation.

22                     **FOURTH CAUSE OF ACTION**

23                       **(For Order Disclosing Inventory**

24                        **Pursuant to Rule 41(f))**

25      **(Against Defendants United States, Wilkison and Koons Johnson)**

26       145.   Plaintiff repeats and realleges paragraphs 1 through 145 of this

27  Complaint as if fully alleged herein.

28

                      **SECOND AMENDED COMPLAINT**
496241.1

146.   Federal Rule of Criminal Procedure 41(f)(1)(D) provides, in relevant part, that, "[t]he judge must, on request, give a copy of the inventory to the person from whom, or from whose premises, the property was taken and to the applicant for the warrant."

147.   The government has taken property from Plaintiff, namely, his safe deposit box at USPV and its contents.  The government, however, has not provided Plaintiff with the inventory of his property that was the product of Defendants' purported inventory search of Plaintiff's safe deposit box.  Accordingly, pursuant to Rule 41(f), Plaintiff is entitled to receive any inventories of his property conducted and/or prepared by the government, including, without limitation, any video-recordings of Defendants inventorying the contents of Plaintiff's box.

148.   Accordingly, Defendants should be ordered to provide Plaintiff's counsel with a copy of any inventory of Plaintiff's property.

**PRAYER FOR RELIEF**

Plaintiff prays for judgment against Defendants as follows:

A.    For an order requiring Defendants to immediately return all property seized from Plaintiff's Box No. 2300 at USPV.

B.    For damages against Defendants Koons Johnson, Palmerton, Bailey Dress, Beverly, Murray, Zellhart and DOES 1-10, individually, in an amount to be determined at trial, but at least for the value of the property taken.

C.    For exemplary and punitive damages against Defendants Koons Johnson, Palmerton, Bailey Dress, Beverly, Murray, Zellhart and DOES 1-10, individually.

D.    For a declaration that Defendants' conduct as described in this Second Amended Complaint has violated Plaintiff's rights under the Fourth and Fifth Amendments to the United States Constitution.

E.    For an order requiring Defendants to immediately provide Plaintiff's counsel with a copy of any inventory of Plaintiff's property, including any video

41
**SECOND AMENDED COMPLAINT**

496241.1

recording of the purported inventorying of the contents of Plaintiff's safe deposit box.

      F.     For costs and reasonable attorney's fees pursuant to 28 U.S.C. § 2412.

      G.    For such other and further relief as the Court deems just and proper.

DATED: August 23, 2021       **ISAACS | FRIEDBERG LLP**

Jeffrey B. Isaacs, Esq.
Jerome H. Friedberg, Esq.
William A. Wargo, Esq.

*Attorneys for Plaintiff Louis Loe*

---

42
**SECOND AMENDED COMPLAINT**

496241.1

1

## **DEMAND FOR JURY TRIAL**

Plaintiff Louis Loe hereby demands a jury trial on all issues properly triable to a jury pursuant to Federal Rule of Civil Procedure 38.

DATED:  August 23, 2021                **ISAACS | FRIEDBERG LLP**

Jeffrey B. Isaacs, Esq.
Jerome H. Friedberg, Esq.
William A. Wargo, Esq.

*Attorneys for Plaintiff Louis Loe*

43
**SECOND AMENDED COMPLAINT**

496241.1