1   BRIAN M. BOYNTON
2   Acting Assistant Attorney General, Civil Division
    C. SALVATORE D'ALESSIO, JR.
3   Acting Director, Torts Branch, Civil Division
4   RICHARD MONTAGUE
    Senior Trial Counsel, Torts Branch, Civil Division
5   JOSEPH A. GONZALEZ
6   Trial Attorney, Torts Branch, Civil Division
          U.S. DEPARTMENT OF JUSTICE
7         Ben Franklin Station
8         P.O. Box 7146
          Washington, D.C. 20044-7146
9         (202) 598-3888 (phone)
10        joseph.a.gonzalez@usdoj.gov

11  Attorneys for Defendant
12  KRISTI KOONS JOHNSON in her individual capacity

13              UNITED STATES DISTRICT COURT
14        FOR THE CENTRAL DISTRICT OF CALIFORNIA
                    WESTERN DIVISION
15

16  | LOUIS LOE, | Case No. 2:21-cv-03348-RGK-MAR |
|          Plaintiff, | |
| | **Defendant Kristi Koons Johnson's (In** |
| v. | **Her Individual Capacity Only) Notice Of** |
| | **Motion And Motion To Dismiss The** |
| UNITED STATES OF AMERICA, ET | **Second Amended Complaint;** |
| AL., | **Memorandum Of Points And Authorities** |
|          Defendants. | **And Declaration Of Joseph A. Gonzalez;** |
| | **[Proposed] Order Granting Motion** |
| | **Lodged Under Separate Cover** |

                Date:    October 18, 2021
                Time:    9:00 a.m.
                Courtroom: 850, the Honorable
                      R. Gary Klausner

# NOTICE OF MOTION

PLEASE TAKE NOTICE that on October 18, 2021 at 9:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable R. Gary Klausner, United States District Court, Courtroom 850, Royal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, California 90012, defendant Kristi Koons Johnson (in her individual capacity only) will and hereby does move, under to Federal Rule of Civil Procedure 12(b)(6), to dismiss the complaint for failure to state a claim upon which relief can be granted. This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on June 14, 2021 (*see* Gonzalez Decl. ¶ 2), and is made on the grounds that the Second Amended Complaint fails to state a claim upon which relief can be granted.

This motion is based upon this notice of motion and motion; the attached memorandum of points and authorities and declaration of Joseph A. Gonzalez; the proposed order granting the motion (lodged under separate cover); all pleadings and papers on file in this action; such other and further matters as may be presented at any hearing on this motion; and matters of which the Court may take notice.

Dated: September 7, 2021                Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General, Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch, Civil Division

RICHARD MONTAGUE
Senior Trial Counsel, Torts Branch, Civil Division

*/s/ Joseph A. Gonzalez*
JOSEPH A. GONZALEZ
Trial Attorney, Torts Branch, Civil Division
U.S. DEPARTMENT OF JUSTICE
Ben Franklin Station

P.O. Box 7146
Washington, D.C. 20044-7146
(202) 598-3888 (phone)
(202) 616-4314 (fax)
joseph.a.gonzalez@usdoj.gov

Attorneys for Defendant KRISTI KOONS
JOHNSON in her individual capacity

1

**Table of Contents**

**INTRODUCTION**................................................................ 1

**BACKGROUND**................................................................. 1

**STANDARD OF REVIEW** ............................................... 3

**ARGUMENT** ..................................................................... 4

    I.     Plaintiff's *Bivens* claims against ADIC Johnson fail because they arise in a new context and special factors counsel hesitation. .................... 4

         A.    Plaintiff's *Bivens* claims present a new context. ............................. 5

         B.    Special factors counsel against a *Bivens* remedy in this new context............................................................................................. 7

             1.    Plaintiff has an alternative procedure for relief that counsels against recognizing a new *Bivens* action. ................ 8

             2.    *Bivens* precludes holding ADIC Johnson responsible for the acts of subordinates and the formulation of policy. .......... 9

             3.    Plaintiff's *Bivens* action would cause disruptive intrusion into the Executive Branch. ....................................................10

             4.    Existing legislation suggests that the absence of a monetary remedy against individuals under the circumstance alleged is more than inadvertent.....................12

    II.    ADIC Johnson is entitled to qualified immunity. .....................................13

         A.    Plaintiff fails to allege that ADIC Johnson was personally involved in the alleged actions that were unconstitutional. .............13

         B.    ADIC Johnson did not violate Plaintiff's clearly established rights. ...............................................................................................15

             1.    It is not clearly established that the warrant was invalid........15

             2.    It is not clearly established that the inventory search was unconstitutional. ..............................................................17

i

3.      The property claims process did not violate Plaintiff's
        clearly established rights under the Fifth Amendment. .........18

**CONCLUSION**..........................................................................................20

# Table of Authorities

**Cases**

*Ahmed v. Weyker,*
    984 F.3d 564 (8th Cir. 2020) ........................................................................... 7

*Alexander v. Sandoval,*
    532 U.S. 275 (2001) ........................................................................................ 4

*Amon Ra v. Cochise Cnty.,*
    442 F. App'x 286 (9th Cir. 2011) .................................................................14

*Annappareddy v. Pascale,*
    996 F.3d 120 (4th Cir. 2021) .......................................................................... 7

*Ashcroft v. al-Kidd,*
    563 U.S. 731 (2011) ............................................................................... 13, 17

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................... 13, 14

*Barren v. Harrington,*
    152 F.3d 1193 (9th Cir. 1998) ......................................................................13

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................................ 4

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
    403 U.S. 388 (1971) ................................................................................ 5, 6, 7

*Calero-Toledo v. Pearson Yacht Leasing Co.,*
    416 U.S. 663 (1974) ......................................................................................19

*Caltex Plastics, Inc. v. Lockheed Martin Corp.,*
    824 F.3d 1156 (9th Cir. 2016) ........................................................................ 4

*Cantu v. Moody,*
    933 F.3d 414 (5th Cir. 2019) .................................................................... 7, 11

*Carlson v. Green,*

446 U.S. 14 (1980) ................................................................ 5

*Chavez v. Martinez*,

538 U.S. 760 (2003) ............................................................. 20

*City of W. Covina v. Perkins*,

525 U.S. 234 (1999) ............................................................. 18

*Colorado v. Bertine*,

479 U.S. 367 (1987) ............................................................. 17

*Davis v. Billington*,

681 F.3d 377 (D.C. Cir. 2012) ............................................ 8, 9

*Davis v. Passman*,

442 U.S. 228 (1979) .............................................................. 5

*District of Columbia v. Wesby*,

138 S. Ct. 577 (2018) .......................................................... 15

*Farah v. Weyker*,

926 F.3d 492 (8th Cir. 2019) ...................................... 5, 7, 11, 12

*Fazaga v. Fed. Bureau of Investigation*,

965 F.3d 1015 (9th Cir. 2020) ............................................... 4

*FBI v. Fazaga*,

No. 20-828, 2021 WL 2301971 (U.S. June 7, 2021) .................. 5

*Florida v. Wells*,

495 U.S. 1 (1990) ................................................................ 17

*Franks v. Delaware*,

438 U.S. 154 (1978) ............................................................. 11

*Gerstein v. Pugh*,

420 U.S. 103 (1975) ............................................................. 18

*Harlow v. Fitzgerald*,

457 U.S. 800 (1982) ............................................................. 13

*Hernandez v. Mesa*,
  140 S. Ct. 735 (2020) ................................................................. 4, 7, 8

*Hudson v. Palmer*,
  468 U.S. 517 (1984) ......................................................................... 18

*Kisela v. Hughes*,
  138 S. Ct. 1148 (2018) ..................................................................... 15

*Lanuza v. Love*,
  899 F.3d 1019 (9th Cir. 2018) ................................................ 9, 11, 12

*Leyland v. Edwards*,
  797 F. Supp. 2d 7 (D.D.C. 2011) ....................................................... 8

*Libretti v. Woodson*,
  600 F. App'x 367 (6th Cir. 2015) ...................................................... 16

*Loumiet v. United States*,
  948 F.3d 376 (D.C. Cir. 2020) ............................................................ 5

*Mitchell v. Forsyth*,
  472 U.S. 511 (1985) ......................................................................... 19

*Mullenix v. Luna*,
  577 U.S. 7 (2015) ............................................................................. 15

*Myers v. Brooks*,
  No. 2:18-CV-01043-RAJ, 2019 WL 4392501 (W.D. Wash. Sept. 13, 2019) ............. 19

*Perkins v. City of W. Covina*,
  113 F.3d 1004 (9th Cir. 1997) ........................................................... 18

*Quintero Perez v. United States*,
  2021 WL 3612108 (9th Cir. Aug. 16, 2021) ..................................... 5, 9

*Ramsden v. United States*,
  2 F.3d 322 (9th Cir. 1993) ................................................................. 8

*Rankin v. United States*,

556 F. App'x 305 (5th Cir. 2014) ................................................................. 9

*Seismic Reservoir 2020, Inc. v. Paulsson*,

   785 F.3d 330 (9th Cir. 2015) .................................................................... 4

*Snitko v. United States, et al.*

   2:21-cv-04405-RGK (C.D. Cal.), 2021 WL 3139707 (C.D. Cal. June 22, 2021) ........19

*South Dakota v. Opperman*,

   428 U.S. 364 (1976) ................................................................................17

*Starr v. Baca*,

   652 F.3d 1202 (9th Cir. 2011) ................................................................14

*Stoot v. City of Everett*,

   582 F.3d 910 (9th Cir. 2009) ..................................................................20

*Terrell v. Brewer*,

   935 F.2d 1015 (9th Cir. 1991) ...............................................................13

*United States v. Bowhay*,

   992 F.2d 229 (9th Cir. 1993) ..................................................................18

*United States v. Chung*,

   553 F. App'x 690 (9th Cir. 2014) ...........................................................16

*United States v. Gaston*,

   740 F. App'x 576 (9th Cir. 2018) ...........................................................17

*United States v. Lopez*,

   547 F.3d 364 (2d Cir. 2008) ..................................................................18

*United States v. SDI Future Health, Inc.*,

   568 F.3d 684 (9th Cir. 2009) ..................................................................16

*United States v. Verdugo-Urquidez*,

   494 U.S. 259 (1990) ................................................................................20

*Vega v. United States*,

   881 F.3d 1146 (9th Cir. 2018) ................................................................. 8

*Warren v. Fox Family Worldwide, Inc.*,

   328 F.3d 1136 (9th Cir. 2003) ............................................................................. 4

*White v. Pauly*,

   137 S. Ct. 548 (2017) ........................................................................................15

*Williams v. O'Donnell*,

   No. 3:19-CV-00418-BR, 2020 WL 6686416 (D. Or. Nov. 12, 2020) ......................... 9

*Wilson v. Layne*,

   526 U.S. 603 (1999) ..........................................................................................19

*Wong v. United States*,

   373 F.3d 952 (9th Cir. 2004) ............................................................................15

*Ziglar v. Abbasi*,

   137 S. Ct. 1843 (2017) .................................................................................passim

**Statutes**

18 U.S.C. § 983 ...................................................................................................... 9

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ................................................................. 3

Federal Rule of Criminal Procedure Rule 41(g) .............................................. 8, 18, 19

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This case arises out of a criminal investigation into U.S. Private Vaults, Inc. (USPV), a company that anonymously leases safe deposit boxes. Plaintiff alleges in his Count II *Bivens* claim that the head of the FBI's LA field office, Assistant Director in Charge Kristi Koons Johnson (ADIC Johnson), violated his constitutional rights when the government seized his safe deposit box pursuant to a seizure warrant issued in the investigation. Plaintiff's claims against ADIC Johnson warrant dismissal for two reasons.

First, Plaintiff's theories of recovery arise in a new context that implicates classic reasons for rejecting the creation of a new *Bivens* remedy. These include: (i) the claim is improper given the existence of an alternative remedy; (ii) it would impermissibly hold ADIC Johnson responsible for policy decisions; (iii) the claim would cause disruptive intrusion into the Executive branch; and (iv) it likely infringes on legislative intent to not provide a remedy. Second, ADIC Johnson is entitled to qualified immunity because Plaintiff's scant factual allegations fail to support an inference of personal involvement, but instead focus on her supervisory status. The unique circumstances of this case also demonstrate an entitlement to qualified immunity. No controlling authority or robust consensus of persuasive authority establishes that any of the actions alleged in these specific circumstances amounts to a violation of a clearly established right.

### BACKGROUND

USPV operates a safe deposit box business in a Beverly Hills strip-mall. *See* Second Amended Complaint (SAC) ¶¶ 28, 42. Unlike typical safety deposit boxes located in a bank, USPV does not use personal identifying information to identify box holders. *See id*. ¶¶ 31, 44. Instead, box holders "anonymously" use a "biometric data reader" which allows them to "gain[] access to the vault area" without anyone ever knowing their identity. *Id*. ¶ 44. Plaintiff, who allegedly leases box no. 2300, filed this

lawsuit anonymously using the pseudonym Louis Loe. *See* ¶¶ 17, 32. His box contains sealed envelopes holding currency. *Id*. ¶ 36.

In March 2021, a grand jury indicted USPV for conspiracy to launder money, to distribute controlled substances, and to structure transactions to avoid reporting requirements. *See* Indictment at 106-7, Case No. 2:21-cr-00106 (C.D. Cal.), ECF No. 61. The indictment states that USPV's business is predicated on "attract[ing] customers in possession of proceeds from criminal offenses[.]" *Id*. at 107. USPV allegedly did so by "touting the anonymity of the safety deposit rentals" and "boasting that, unlike banks, its anonymous safety deposit box rentals did not require customer information that 'can be easily accessed by government agencies (such as the IRS)[.]'" *Id*.

Thereafter the government obtained a seizure warrant for, among other things "[t]he nests of safety deposit boxes and keys" located at USPV. *Id*. at 5. The warrant did "not authorize a criminal search or seizure of the contents of the safety deposit boxes." *Id*. at 5-6. Rather, it mandated that "agents shall follow their written inventory policies to protect their agencies and the contents of the boxes," and directed agents to "inspect the contents of the boxes in an effort to identify their owners[.]" *Id*. at 6. On March 22, 2021, the government executed the warrant and seized all boxes at the site. SAC ¶¶ 39-40.

As of March 26, 2021 the FBI posted on USPV's shuttered front door a sign directing box owners to an FBI website to make a claim for their property. *Id*. ¶ 50. The website instructs a claimant to provide basic contact information—name and number—so that an "FBI Agent [can] contact [the claimant] for additional details." *Id*. ¶ 51. Despite this process, Plaintiff alleges that "[g]overnment representatives" have stated that there are no "standardized policies, procedures, or process for returning the contents of safe deposit boxes to their owners." *Id*. ¶ 53(b). Plaintiff further alleges that the website is "nothing more than a subterfuge for obtaining the identities and contact information of USPV box holders" so that it can investigate them. *Id*. ¶ 54. Plaintiff did not utilize the website claim process. On May 20, 2021, the government initiated

2

administrative forfeiture proceedings regarding the box contents and sent Plaintiff a notice of the proceeding. *Id*. ¶¶ 58-60. The notice explained that failure to file claim by June 24, 2021 for the property may result in forfeiture of the box contents. *Id*. ¶ 63. Plaintiff filed a claim for his property on June 16 and then on June 25 sent the government, through counsel, a "Demand for Immediate Return of Property." *Id*. ¶¶ 67, 71.

On April 19, 2021, Plaintiff filed a four count complaint, which he amended on July 8 and then again on August 24. He names as defendants the United States, Acting U.S. Attorney Tracy L. Wilkison (official capacity), FBI Assistant Director in Charge Kristi Koons Johnson (official and individual capacity), five FBI Special Agents (SAs), and DOES 1-10 federal law enforcement officers. In Count II, Plaintiff brings a *Bivens* claim against ADIC Johnson, the five SAs, and DOES 1-10 in their individual capacities. He alleges that they violated the Fourth Amendment by seizing and searching his safe deposit box without probable cause and by submitting a false affidavit in support of a warrant. *Id*. ¶¶ 137-38. Plaintiff also alleges that they violated the Fifth Amendment by continuing to hold the contents of his box and conditioning the return its contents upon waiving his right against self-incrimination. *Id*. ¶¶ 127, 139.

Plaintiff makes no factual allegation that ADIC Johnson personally participated in, supervised, or even observed any of these alleged violations. Instead, he restricts his allegations to assertions premised on the size of the operation and her "authority over the policies and procedures implemented by, and the actions of, FBI agents assigned" to the LA field office. *Id*. ¶ 21. From this, he surmises "[o]n information and belief," that the plan to "seize and break open all the boxes" could "only have occurred with Koons Johnson's knowing participation in, and/or approval or ratification[.]" *Id*. As set forth in more detail below, Plaintiff has failed to state a claim against ADIC Johnson.

## STANDARD OF REVIEW

Courts should grant a Fed. R. Civ. P. 12(b)(6) motion to dismiss when a complaint fails to allege a cognizable legal theory or sufficient factual support for a legal theory.

3

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016); *see Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015) (internal quotes and citation omitted). Thus, a complaint must set forth "enough facts to state a claim for relief that is plausible on its face" to defeat the motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). But although courts accept as true the well-pleaded material factual allegations, they do not accept as true conclusory allegations, unwarranted factual deductions, unreasonable inferences or legal characterizations. *Id*. at 555; *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

## **ARGUMENT**

### I.   **Plaintiff's *Bivens* claims against ADIC Johnson fail because they arise in a new context and special factors counsel hesitation.**

*Bivens* remedies are the product of what the Supreme Court has called an "*ancien regime*" where it "would imply causes of action" not present in the text of a law. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017). In the 40 years since then the Court has reversed course and "consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). Now if a law "itself does not display an intent to create a private remedy, then a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Abbasi*, 137 S. Ct. at 1856 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001)) (internal quotations removed). As a result, "the availability of *Bivens* actions for new claims and contexts" is now "severely restricted." *Fazaga v. Fed. Bureau of Investigation*, 965 F.3d 1015, 1055 (9th Cir. 2020) (citing *Abbasi*, 137 S. Ct. at 1856-57), *cert. granted sub nom. FBI v. Fazaga*, No. 20-828, 2021 WL 2301971 (U.S. June 7, 2021). A plaintiff now only has two narrow paths to pursuing a *Bivens* action. If a plaintiff establishes that their claim qualifies as one of "the three *Bivens* claims the Court has approved in the past" then the *Bivens* claim may proceed (subject to other defenses). *Abbasi*, 137 S. Ct. at 1856. Alternatively, if the claim arises in a new context, a plaintiff must establish that there are no "special factors [that]

4

counsel[] hesitation" before a court will imply a new cause of action. *Id*. at 1857. Plaintiff fails to establish a *Bivens* claim through either path.

### A.   Plaintiff's *Bivens* claims present a new context.

Whether a claim presents a new context depends on whether the case is "different in a meaningful way from previous *Bivens* cases decided by th[e] [Supreme] Court." *Id*. at 1860. This requires a comparison with the only three cases in which the Supreme Court has previously recognized a *Bivens* remedy: *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); *Davis v. Passman*, 442 U.S. 228 (1979); and *Carlson v. Green*, 446 U.S. 14 (1980). Because search and seizure are primarily at issue "[t]he most analogous Supreme Court case" here "is *Bivens* itself." *Quintero Perez v. United States*, No. 17-56610, 2021 WL 3612108, at *7 (9th Cir. Aug. 16, 2021). *Davis* and *Carlson* are "are clearly dissimilar." *Id*. at *7 n.4. But "coming closest" is still a far cry from "exactly mirror[ing] the facts and legal issues[.]" *Farah v. Weyker*, 926 F.3d 492, 498 (8th Cir. 2019). Even a case with "significant parallels to one of the [Supreme] Court's [three] previous *Bivens* cases," or a case presenting just a "modest extension" of one of them, "is still an extension" into a new context. *Abbasi*, 137 S. Ct. at 1864; *see id*. at 1860 (listing seven non-exhaustive factors).

Plaintiff's case against ADIC Johnson directly implicates several of the meaningful differences set forth by the Supreme Court and thus establishes that Plaintiff's claims present a new context. One difference is the "rank of the officers involved." *Id. Bivens* concerned line-level officers operating in the field, not a high-level supervisor, let alone an assistant director allegedly responsible for "the policies and procedures . . . and the actions of [] FBI agents assigned to the Los Angeles Field Office." SAC ¶ 21. This casts ADIC Johnson as an entirely new category of defendant, which is dispositive. *See Loumiet v. United States*, 948 F.3d 376, 382 (D.C. Cir. 2020) (observing that a "'new context' is present whenever the plaintiff seeks damages from a 'new category of defendants'" and finding that executive officers in the comptroller office were a new category) (quoting *Abbasi*, 137 S. Ct. at 1860).

5

This distinction also illustrates why the original purpose of *Bivens*—"to deter the *officer*" from committing unconstitutional conduct—cannot be satisfied here. *Abbasi*, 137 S. Ct. at 1860. In *Bivens* the line-level officers arrested the plaintiff, "manacled [him] in front of his wife and children," and then "searched [his] apartment from stem to stern" without a warrant. 403 U.S. at 389. By contrast, here, there is no specific allegation that ADIC Johnson personally applied for the warrant, performed the inventory search, or devised the property claims procedure. Instead, Plaintiff makes the factually hollow assertion that she had "knowing participation in, and/or approval or ratification of the operational plan" because it allegedly required a "significant mobilization" of law enforcement. SAC ¶ 21. Thus, unlike in *Bivens*, nowhere does Plaintiff allege any direct boots-on-the-ground personal involvement by ADIC Johnson that is a necessary component of any *Bivens* claim.

Another difference is the rights involved and the type of injury. Unlike in *Bivens*, where the plaintiff was personally subjected to a warrantless search, seizure, and arrest that resulted in "humiliation, embarrassment, and mental suffering," 403 U.S. at 389-90, here, Plaintiff was never personally seized or arrested. Rather, his alleged Fourth Amendment injury is confined to a property interest in a safe-deposit box that was located in a strip-mall. *See* SAC ¶¶ 3, 42. Plaintiff's Fifth Amendment claims fare even worse. The alleged infringement on the right against self-incrimination and the due process claim regarding the continued seizure of the Plaintiff's box are fundamentally different from the rights, injuries, and context alleged in *Bivens*, *Carson*, or *Davis*.

But it is not just the injury that establishes a new context in this case. So too does the mechanism of injury. *Bivens* concerned a warrantless search from "stern to stem[.]" 403 U.S. at 389. Here, conversely, the claims focus on a warrant, which was allegedly invalid for a variety of reasons, and the subsequent property retrieval process. *See Annappareddy v. Pascale*, 996 F.3d 120, 135 (4th Cir. 2021) (finding new context because "*Bivens* involved [] the Fourth Amendment right to be free of unreasonable warrantless *searches* and seizures; [whereas] this case, by contrast, involves searches and

a seizure conducted *with* a warrant") (emphasis original). This difference not only establishes a new context by itself, but also reveals another meaningful difference from *Bivens*— attenuation between the defendant and the ultimate injury absent from *Bivens*.

For example, in *Ahmed v. Weyker*, 984 F.3d 564 (8th Cir. 2020) the plaintiff alleged that an officer knowingly drafted a sworn affidavit that contained "fabricated facts" and lacked probable cause. *Id*. at 566. The court held that this was enough to establish a new context. It reasoned that the steps between constructing the affidavit and executing the warrant involved "independent legal actors" and thus the "direct causal chain [present in *Bivens*] is missing." *Id*. at 569 (citation and internal quotations removed). *See also Cantu v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019). The same holds true here. Plaintiff alleges that Defendants, working with prosecutors, "made materially false and misleading statements to the Magistrate Judge who issued the seizure warrant[.]" SAC ¶ 119. "This indirect mechanism of injury bears little resemblance to the straightforward claims from *Bivens*." *Farah*, 926 F.3d at 499.

**B.    Special factors counsel against a *Bivens* remedy in this new context.**

The creation of a new *Bivens* remedy is a rare thing. Indeed, "for almost 40 years, [the Supreme Court has] consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez*, 140 S. Ct. at 743. This remains the status quo because the Supreme Court's "precedents now instruct [that] the Legislature is in the better position to consider if the public interest would be served by imposing a new substantive legal liability." *Abbasi*, 137 S. Ct. at 1857 (internal citations and quotations omitted). The Supreme Court urges "caution" for this reason, holding that the mere presence of a "special factor counselling hesitation" forecloses the creation of *Bivens* remedy. *Id*. That is a case-specific inquiry. But if "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy[.]" *Id*. at 1858. Plaintiff's allegations here implicate textbook "sound reasons" to hesitate and for the Court to "refrain from creating" the *Bivens* remedies Plaintiff requests. *Id*.

1.   <u>Plaintiff has an alternative procedure for relief that counsels against recognizing a new *Bivens* action.</u>

In *Abbasi*, the Supreme Court held that "the existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." *Id*. at 1865. Such "'[a]lternative remedial structures' can take many forms, including administrative, statutory, equitable, and state law remedies." *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018). In Count I, Plaintiff seeks the return of his property under Federal Rule of Criminal Procedure Rule 41(g), which as an equitable procedure, falls within the "other form[s] of equitable relief" category set forth in *Abbasi*. *See Ramsden v. United States*, 2 F.3d 322, 324 (9th Cir. 1993) ("District courts have the power to entertain motions to return property seized by the government when there are no criminal proceedings pending against the movant."). Thus, the principal relief Plaintiff seeks (property return) is capable of redress under Rule 41(g)'s alternative remedial structure. *See Leyland v. Edwards*, 797 F. Supp. 2d 7, 11 (D.D.C. 2011) (Holding that the plaintiff's *Bivens* claim for the return of his property was "barred due to Rule 41(g) providing an adequate, comprehensive procedural and remedial scheme.").

This would hold true even though the government pursued forfeiture proceedings as to Plaintiff's property (as Plaintiff alleged). *See* SAC ¶¶ 58-64. A "scheme's failure to provide a remedy to a particular plaintiff for the particular claim . . . does not make the scheme any less comprehensive for purposes of determining whether it is a special factor that precludes the creation of a *Bivens* remedy." *Davis v. Billington*, 681 F.3d 377, 387 (D.C. Cir. 2012) (citation and quotations omitted). Thus, Rule 41(g)'s existence as a remedial scheme to address the type of injury Plaintiff alleges is enough to counsel hesitation, regardless of whether he actually can succeed under his particular circumstances. *Cf. Hernandez*, 140 S. Ct. at 750 n.12 ("Indeed, in *Abbasi* we explained that existence of alternative remedies was merely a further reason not to create *Bivens* liability.") (citation omitted).

And if forfeiture proceedings were pursued that would provide yet another alternative remedial structure. "Although the Ninth Circuit has not addressed the issue, other circuit courts have refused to recognize a *Bivens* claim related to administrative forfeitures of property[.]" *Williams v. O'Donnell*, No. 3:19-CV-00418-BR, 2020 WL 6686416, at *6 (D. Or. Nov. 12, 2020). "Congress has created an alternative, existing process for protecting the [injured party's] interest" in property under the Civil Asset Forfeiture Reform Act (CAFRA) of 2000 (18 U.S.C. § 983). *Williams*, 2020 WL 6686416, at *6. And "[b]ecause CAFRA provides a comprehensive scheme for protecting property interests, no *Bivens* claim is available." *Rankin v. United States*, 556 F. App'x 305, 311 (5th Cir. 2014). Alleged deficiencies regarding the forfeiture process do not diminish its adequacy as an alternative remedy. *See Davis*, 681 F.3d at 387. Thus, CAFRA provides yet another alternative remedial structure that also counsels hesitation.

> 2.      *Bivens* precludes holding ADIC Johnson responsible for the acts of subordinates and the formulation of policy.

Two other related special factors also counsel hesitation in this case: Whether the *Bivens* claim seeks to alter policy and the rank of the officer. *Abbasi*, 137 S. Ct. at 1860; *see Lanuza v. Love*, 899 F.3d 1019, 1028 (9th Cir. 2018) ("special factors include: the rank of the officer involved [and] whether *Bivens* is being used as a vehicle to alter an entity's policy"). Both special factors reflect that the purpose of "*Bivens* is to deter the officer" for her own discrete acts. *Abbasi*, 137 S. Ct. at 1860. An action that seeks to hold a supervisor "responsible for acts of their subordinates" violates this axiom. *Id*. So too does an action against an executive-level supervisor that seeks to hold the executive responsible for a particular policy. *Quintero Perez*, 2021 WL 3612108, at *8.

Plaintiff's claims against ADIC Johnson implicate both reasons for hesitation. The invalid warrant theory seeks to hold her liable for a warrant she is not alleged to have procured or executed. *See* SAC ¶ 26 ("Plaintiff is informed and believes that all of these false and misleading statements [in the warrant] were made by Defendant Zellhart"). Similarly, Plaintiff makes no factually-specific allegation that ADIC Johnson was

personally involved with inventorying Plaintiff's box or developing the inventory procedure. *See id.* ¶ 44 ("Defendants Palmerton, Baily Dress, Beverly and DOES 1-10, proceeded to break into every safe deposit box at the facility . . . [and] rifled through the contents of these boxes[.]"). All of this conduct was allegedly performed by officers that work at the FBI office that ADIC Johnson oversees. Thus, Plaintiff's Fourth Amendment claims are a textbook attempt to hold a supervisor "responsible for acts of their subordinates[.]" *Abbasi*, 137 S. Ct. at 1860.

Plaintiff's Fifth Amendment claims directly challenge policy. Plaintiff asserts that the FBI has "no established and standardized policies, procedures, or process" for claiming property and that what does exist violates the right against self-incrimination. *See* SAC ¶ 53(b). Although styled as an absence of policy, this functions no less as an attempt "to alter an entity's policy" because it seeks to force the FBI to conform to a revised policy Plaintiff deems appropriate. This would "require inquiry and discovery into the whole course of discussions and deliberations that led to the policies and governmental act being challenged." *Abbasi*, 137 S. Ct. at 1860. Here that could range from discussions regarding how the boxes are inventoried to how the FBI's current procedures fulfill its goal to seize criminal proceeds and return non-criminal property. If recognized, Plaintiff's claim would risk discouraging ADIC Johnson or "to be more precise, future officials like" her, from the "proper discharge" of their duties. *Id*. This forecloses recognizing Plaintiff's Fifth Amendment claim.

3.   Plaintiff's *Bivens* action would cause disruptive intrusion into the Executive Branch.

Plaintiff takes issue with multiple steps taken in a large criminal investigation and prosecution into a complex money laundering scheme. He complains that the warrant, the search of his box, the procedure for claiming box contents, and the retention of box contents, were all unconstitutional. *See* SAC ¶¶ 118-127. But the inherent factual complexity of each theory risks "burdening and interfering with the executive branch's investigative and prosecutorial functions." *Farah*, 926 F.3d at 500. The Fourth Circuit

(*Annappareddy*), the Fifth Circuit (*Cantu*), and the Eighth Circuit (*Weyker* & *Ahmed*) all recognize that this is an "intrusive" interference into "sensitive functions of the Executive Branch" that courts must avoid. *Abbasi*, 137 S. Ct. at 1861.

Plaintiff's contention that the warrant was defective guarantees intrusion. To prevail on the claim, Plaintiff must show that law enforcement officials (1) deliberately or recklessly (2) made *material* misstatements or omissions in the warrant (3) without which there would be no probable case. *See generally, Franks v. Delaware*, 438 U.S. 154 (1978). This necessarily "invites a wide-ranging inquiry into the evidence available to investigators" that is the province of the Executive. *Farah*, 926 F.3d at 500. Plaintiff concedes as much, as he alleges that the affidavit contains multiple categories of "false[] and misleading[]" information. *See* SAC ¶¶ 78-95. These range from broad questions regarding evidence collection techniques to the narrow issue of whether USPV knew its customers were engaged in illegal activity.

The complexity of the case magnifies this inquiry and thus also the intrusiveness that counsels hesitation. The Government has alleged that USPV "was a criminal business that conspired with its criminal clients to distribute drugs, launder money, and structure transactions to avoid currency reporting requirements." SAC ¶ 15. The suspected scheme involved numerous actors and entities executing a plan sophisticated enough to skirt federal banking laws. *See id.*; *see also* Indictment at 106-7. Just as in *Cantu*, where the fact that the case involved a "multi-jurisdictional investigation into transnational organized crime" counseled hesitation, so too here does the expansiveness of the USPV investigation counsel hesitation. 933 F.3d at 424.

*Lanuza*, in which the plaintiff sued an ICE attorney for forging an immigration form that resulted in his deportation, provides a useful comparison. 899 F.3d at 1022-23. The Ninth Circuit did not find any special factors counseling hesitation in that case because the *Bivens* action was premised on simple and "undisputed" facts: an attorney, working alone, "intentionally submitted forged documents[.]" *Id*. at 1033. This made the case "particularly straightforward" and limited "to the only remaining question . . . of

damages" for which "courts have substantial experience." *Id*. Questions present in this case, such as "whether the evidence was falsified and whether it was submitted willfully," were absent from *Lanuza*. *Id*. "[T]he only remaining question" there was "the amount of damages," for which "courts have substantial experience." *Id*. This case, by contrast, lacks such simplicity because it necessarily requires delving into investigative complexities that *Lanuza* did not involve.

Plaintiff's related claim that the inventory search allegedly occurred in the absence of an established inventory policy also would require delving into an assessment of the practices at issue and to what extent they were standardized. *See* SAC ¶¶ 53(b), 80-82. This too constitutes an intrusion into law enforcement operations that reflect choices about how to securely and efficiently inventory property, and so too counsels hesitation. Plaintiff's Fifth Amendment claim regarding the cataloging and retrieval of box contents by owners is subject to the same principle. *See id.* ¶¶ 50-52.  Forcing the government to "explain why a receivership, a temporary restraining order, or some other legal mechanism would not be [a] sufficient" alternative would require examining a complicated executive function that balances competing interests. *Id.* ¶ 83.

4.   <u>Existing legislation suggests that the absence of a monetary remedy against individuals under the circumstance alleged is more than inadvertent.</u>

Finally, the absence of a damages remedy against federal officers under these circumstances does not mean that one should be authorized here. Rather, "Congress' 'silence might be more than inadvertent.'" *Abbasi*, 137 S. Ct. at 1862 (citation omitted). In *Farah*, which concerned allegations that an investigator falsified evidence, the Eighth Circuit explained this inference in the context of statutes intended to compensate wrongly convicted defendants. *See Farah*, 926 F.3d at 502 (citing to the Hyde Amendment for baseless prosecutions, and 28 U.S.C. § 1495 and 28 U.S.C. § 2513 for unjust convictions). Such statutes cut against creating a cause of action for defendants aggrieved by improper investigations, but not convicted. *Id*. It reasoned "that Congress has expressly provided a damages remedy for some victims of this particular type of

injury, but not for others, suggests that it considered the issue and made a deliberate choice" not to compensate those others. *Id*. That reasoning applies in this case as well. "Congress's failure to provide a damages remedy" for those claiming damage from criminal investigations but who are not convicted "might be more than mere oversight, and its silence might be more than inadvertent." *Abbasi*, 137 S. Ct. at 1862. Accordingly, because "Congress might doubt the efficacy or necessity of a damages remedy" in this case, this Court should "refrain from creating the remedy." *Id*. at 1858.

## II.   ADIC Johnson is entitled to qualified immunity.

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). This "protects all but the plainly incompetent or those who knowingly violate the law." *Id*. (citation omitted). It does so by insulating government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As set forth below, ADIC Johnson is entitled to qualified immunity because: (1) Plaintiff has failed to allege that she was personally involved with any of the allegedly unconstitutional conduct and (2) it is not clearly established under the specific circumstances alleged that Plaintiff's constitutional rights were violated.

### A.   Plaintiff fails to allege that ADIC Johnson was personally involved in the alleged actions that were unconstitutional.

"[V]icarious liability is inapplicable to *Bivens*[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991) ("We join other circuits in holding that *respondeat superior* is inapplicable to *Bivens* actions."). Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). These principles prohibit liability premised solely on a defendant's status as a supervisor. *Iqbal*, 556 U.S. at 677

(noting that "the term 'supervisory liability' is a misnomer" because under *Bivens* "masters do not answer for the torts of their servants"). At a minimum, a plaintiff must allege a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).

Plaintiff fails to allege a sufficient causal connection between ADIC Johnson and the alleged violations. Instead, he embraces a vicarious liability theory by alleging that ADIC Johnson "has authority over the policies and procedures implemented by, and the actions of, FBI agents assigned to the Los Angeles Field Office." SAC ¶ 21. Such bare assertions of authority over policy are incapable of plausibly alleging personal involvement in a violation. Likewise, bare assertions that a supervisor created or implemented specific policies also fall short because such statements fail to explain how the supervisor participated in those acts. *See Iqbal*, 556 U.S. at 680–81 (allegation that the Attorney General was "the principal architect of this invidious policy" was a "bare assertion").

Plaintiff's attempts to manufacture ADIC Johnson's actual participation in the acts alleged also lack the requisite well-pleaded factual support. He asserts that "such a significant mobilization of federal law enforcement agents . . . could only have occurred with Koons Johnson's knowing participation in, and/or approval or ratification of the operational plan[.]" SAC ¶ 21. But, as with the policy allegation, this assertion does not contain a well-pleaded factual allegation that shows her participation, approval, or knowledge. *See Amon Ra v. Cochise Cnty.*, 442 F. App'x 286, 288 (9th Cir. 2011) (Plaintiff "alleged that the County must have known and acquiesced in the investigation given its length and scope, but that allegation, standing alone, is not sufficient."). Plaintiff simply invites the Court to make an inference based solely on the alleged scope of the operation. This is functionally no different than the "principal architect" of the policy allegation that *Iqbal* rejected for being "conclusory," though not necessarily "fanciful." *Iqbal*, 556 U.S. at 680-81. It is the complete lack of a well-pleaded

participation allegation, not the improbability of the inference derived from a different allegation, which dooms it. *Id.*

Finally, Plaintiff attempts to establish participation by resorting to a classic group pleading tactic. He alleges in conclusory fashion that ADIC Johnson, the five new special agent defendants, and DOES 1-10 violated Plaintiff's Fourth Amendment rights (except for SA Murray) and Fifth Amendment rights by performing every tortious act alleged. *See* SAC ¶¶ 137-140. This amounts to nothing more than generic allegations attributing wrongdoing to an undifferentiated group of potentially sixteen defendants. Such allegations "fail[] to identify what role, if any, each individual defendant had in" the alleged violation and thus fail to satisfy the personal involvement requirement. *Wong v. United States*, 373 F.3d 952, 966 (9th Cir. 2004). The fact that elsewhere in the complaint Plaintiff does allege involvement with respect to the five special agents, SAC ¶¶ 22-26, but neglects to do so with ADIC Johnson, highlights this failing.

**B.   ADIC Johnson did not violate Plaintiff's clearly established rights.**

"To be clearly established, a legal principle must be settled law, and it must clearly prohibit the officer's conduct in the *particular circumstances* before him[.]" *District of Columbia v. Wesby*, 138 S. Ct. 577, 581 (2018) (emphasis added). "Such specificity is especially important in the Fourth Amendment context[.]" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam). It ensures that courts do not define the right at a "high level of generality" and therefore hold an officer liable without "fair notice that her conduct was unlawful[.]" *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam). Thus, to determine whether an officer's conduct violates clearly established law, the formulation of the conduct "must be particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam) (citation omitted).

1.   <u>It is not clearly established that the warrant was invalid.</u>

As already explained, Plaintiff has not sufficiently alleged ADIC Johnson's involvement in any alleged constitutional violation, and that is dispositive for qualified-immunity purposes. Nonetheless the facts of this case also do not clearly establish that

the warrant lacked probable cause under settled law. The warrant directly identifies the "nest of safety deposit boxes" as subject to seizure and explains that the boxes are "evidence and instrumentalities of USPV's criminality." Case No. 2:21-cr-00106 (C.D. Cal.), ECF 61 at 97; *see United States v. SDI Future Health, Inc.*, 568 F.3d 684, 703 (9th Cir. 2009). The government also allegedly explained that "USPV was a criminal business that conspired with its criminal clients to distribute drugs, launder money, and structure transactions to avoid currency reporting requirements, among other offenses." SAC ¶ 55(a). And the warrant further provided specific instances of not only how the criminal scheme worked, but also how the boxes were integral to the scheme. Under these facts, no settled law clearly establishes an absence of probable cause.

Cases assessing the validity of warrants for safe-deposit boxes support this conclusion, especially when, as in this case, the available evidence indicates that the safe deposit boxes are being used in criminal schemes. For example, *United States v. Chung*, 553 F. App'x 690 (9th Cir. 2014) held that a magistrate judge had a substantial basis for finding probable cause to seize a safe deposit box given a DEA agent's explanation that "loansharking conspiracies will often hide their records and paraphernalia at their homes and in safe deposit boxes." *Id*. at 693; *see Libretti v. Woodson*, 600 F. App'x 367, 372 (6th Cir. 2015) (granting agent qualified immunity for claim that his warrant lacked probable case because he explained that it was common for "drug traffickers to store drug proceeds in safe deposit boxes" and the box had been accessed recently).

That Plaintiff's identity was unknown and that some UPSV customers may not be criminals does not change this conclusion. *See id*. ¶¶ 86-87, 95. The same holds true for the assertion that the affidavit "omitted" that no evidence connects Plaintiff or his specific box to a criminal scheme or suggests that his specific box concealed contraband. *See id*. ¶¶ 88-92. If anything, these allegations support probable cause and highlight the uniqueness of the circumstances under the clearly established analysis. USPV used sophisticated technology, including a biometric data reader, to conceal the identities of box owners and disassociate them from criminal schemes. *Id*. ¶ 44. Plaintiff intentionally

16

utilized this technology to remain anonymous and disassociate himself from his box. *See id.* This shows Plaintiff's knowing use of the quixotic procedures also utilized by criminal actors to make him and his box functionally indistinguishable from them. Under these unique facts Plaintiff cannot identify a body of settled case law which establishes that the affidavit's "omission" of evidence unique to Plaintiff was unlawful or showed clear lack of probable cause for the warrant's issuance.

       2.   <u>It is not clearly established that the inventory search was unconstitutional.</u>

      The inventory search alleged in this case also did not violate clearly established law. The government, recognizing its "responsib[ility] for the property taken into [its] custody," opened and cataloged the contents of the seized safe deposit boxes to protect against claims of theft, damage and "any danger . . .that may have been posed by the property." *Colorado v. Bertine*, 479 U.S. 367, 373 (1987); *see South Dakota v. Opperman*, 428 U.S. 364, 371 (1976) ("[I]t is reasonable to search the container to itemize the property to be held by the police.") (citation omitted). Critically, this alleged process occurred pursuant to "standardized criteria or established routine," *Florida v. Wells*, 495 U.S. 1, 4 (1990), that involved itemizing every box, yet also prohibited reading the contents of notebooks or thumb drives, SAC ¶ 48. *See United States v. Gaston*, 740 F. App'x 576, 577 (9th Cir. 2018) (Finding that "routine practice of opening locked containers if they can be readily opened during an inventory search" qualified as standardized practice and therefore validated inventory search.). This conformity to inventory search standards necessarily precludes Plaintiff from plausibly alleging that the search violated clearly established law. The unique circumstances alleged here underscore the point. No "controlling authority" or "robust consensus of . . . persuasive authority" establishes that the government's inventorying of hundreds of anonymously held safe-deposit boxes, intentionally made anonymous by design and via sophisticated technology, violated the Fourth Amendment. *al-Kidd*, 563 U.S. at 741.

      Plaintiff's unadorned allegation that the search was in fact a "pretext for conducting an investigatory search" cannot save his claim. SAC ¶ 127. In *United States*

*v. Bowhay*, 992 F.2d 229 (9th Cir. 1993), the plaintiff made a similar argument when an officer admitted that he "viewed [a] search as both an investigative and as an inventory search[.]" *Id.* at 231. However, the court still held that "the presence of an investigative motive [did] not invalidate the inventory search." *Id.* It reasoned that because "the department's policy was to search everything[,] the officer had no discretion" and thus his motive was beside the point. *Id.* This case is no different. Plaintiff alleges that the inventory procedure involved opening all boxes seized. Thus motive is irrelevant. More to the point, it is clearly established that motive is irrelevant under these circumstances. "[T]he Supreme Court has not required an absence of expectation of finding criminal evidence as a prerequisite to a lawful inventory search. . . . [M]otivation [] cannot reasonably disqualify an inventory search that is performed under standardized procedures for legitimate custodial purposes." *United States v. Lopez*, 547 F.3d 364, 372 (2d Cir. 2008) (citations omitted).

> 3.      The property claims process did not violate Plaintiff's clearly established rights under the Fifth Amendment.

Plaintiff fails to allege the violation of a clearly established procedural due process right because he does not allege the absence of a "meaningful post deprivation remedy" for recovering the contents of his box. *Cf. Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[A]n unauthorized intentional deprivation of property by a [government] employee does not constitute a violation . . . of the Due Process Clause . . . if a meaningful post deprivation remedy for the loss is available."). For one thing, the Fourth Amendment "has been thought to define the 'process that is due' for seizures of person or property in criminal cases," *Gerstein v. Pugh*, 420 U.S. 103, 125 n.27 (1975). And the Fourth Amendment usually does not require pre-deprivation notice and opportunity to be heard. Instead, the availability of a post-seizure return motion, such as under Federal Rule of Criminal Procedure 41(g), is adequate post-deprivation process. *Cf. Perkins v. City of W. Covina*, 113 F.3d 1004, 1011 (9th Cir. 1997) (holding that California law provides by motion adequate remedies for return of property), *rev'd on other grounds, sub nom. City*

18

*of W. Covina v. Perkins*, 525 U.S. 234 (1999).  The chance to contest asset forfeiture proceedings provides the same for personal property seizures. *See Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 678 (1974).

For another thing, Plaintiff alleges that less than a week after the seizure the government did in fact provide a post deprivation remedy by creating a claims process for recovering his property. *See* SAC ¶¶ 50-52.  It set up a website that instructed claimants "[t]o make a claim for property stored at [USPV] . . . [by] provid[ing] the following [contact] information" so that an "FBI agent [could] contact [them] with additional details." *See id*. ¶ 51.  Whether his property was wrongly seized in the first place does not diminish the validity of either Rule 41 or this process. *See Myers v. Brooks*, No. 2:18-CV-01043-RAJ, 2019 WL 4392501 (W.D. Wash. Sept. 13, 2019) ("Even if Defendants wrongly seized Plaintiff's 'shipping containers,' no liability would ensue if the state offered a meaningful post-deprivation remedy.") *aff'd*, 845 F. App'x 630 (9th Cir. 2021).  Here, it is undisputed that the government provided a claim process and initiated a forfeiture process in which Plaintiff has made a claim.  No Supreme Court decision, Ninth Circuit decision, or consensus of persuasive authority, *Wilson v. Layne*, 526 U.S. 603, 617 (1999), clearly establishes that these were constitutionally inadequate procedures in the specific circumstances alleged here.

Plaintiff's related claim that the forfeiture notice was insufficient also falters on clearly established grounds.  His reliance on the holding in *Snitko v. United States, et al.*, 2:21-cv-04405-RGK-MAR (C.D. Cal.) 2021 WL 3139707 (C.D. Cal. June 22, 2021) proves the point.  The Court's holding that those plaintiffs received insufficient notice of the factual basis for their forfeiture: (1) occurred a month after the notice in this case; (2) stands as the first ever holding on the unique circumstances presented by this case; and (3) as a district court decision remains incapable of satisfying the clearly-established law threshold. *See Mitchell v. Forsyth*, 472 U.S. 511, 535 (1985) ("[O]fficials performing discretionary functions are not subject to suit when such questions are resolved against

them only after they have acted."). Thus, even if Plaintiff had alleged that ADIC Johnson was involved in the forfeiture, she would be entitled to qualified immunity.

Finally, Plaintiff's claim that the property recovery procedure and forfeiture process violates his privilege against self-incrimination also fails to allege a clearly-established violation. *See* SAC ¶¶ 4, 127. Plaintiff fails to appreciate that as "a fundamental trial right of criminal defendants," *United States v. Verdugo-Urquidez*, 494 U.S. 259, 264 (1990), violation of the right against self-incrimination "at the very least requires the initiation of legal proceedings," *Chavez v. Martinez*, 538 F.3d 760, 766 (2003) (Thomas, J., plurality opinion). *See Stoot v. City of Everett*, 582 F.3d 910, 925 (9th Cir. 2009) (Use of a coerced statement violates the right against self-incrimination "when it has been relied upon to file formal charges against the declarant, to determine judicially that the prosecution may proceed, and to determine pretrial custody status."). As a result, the Supreme Court has explicitly held that statements elicited during the "criminal investigatory process" do not violate the right in the absence of criminal proceedings. *Id.* Plaintiff's claim that his right was violated by "subjecting himself to criminal investigation" by "compell[ing] Plaintiff to disclose his true name," SAC ¶ 127, cannot withstand this authority under the clearly established analysis.

## CONCLUSION

For the foregoing reasons, ADIC Johnson's motion to dismiss should be granted.

Dated: September 7, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General, Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch, Civil Division

RICHARD MONTAGUE
Senior Trial Counsel, Torts Branch, Civil Division

20

/s/ *Joseph A. Gonzalez*
JOSEPH A. GONZALEZ
Trial Attorney, Torts Branch, Civil Division
U.S. DEPARTMENT OF JUSTICE
Ben Franklin Station
P.O. Box 7146
Washington, D.C. 20044-7146
(202) 598-3888 (phone)
(202) 616-4314 (fax)
joseph.a.gonzalez@usdoj.gov

Attorneys for Defendant KRISTI KOONS
JOHNSON in her individual capacity

21