BRIAN M. BOYNTON
Acting Assistant Attorney General, Civil Division
C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch, Civil Division
RICHARD MONTAGUE
Senior Trial Counsel, Torts Branch, Civil Division
JOSEPH A. GONZALEZ
Trial Attorney, Torts Branch, Civil Division
     U.S. DEPARTMENT OF JUSTICE
     Ben Franklin Station
     P.O. Box 7146
     Washington, D.C. 20044-7146
     (202) 598-3888 (phone)
     joseph.a.gonzalez@usdoj.gov

Attorneys for Defendants Kristi Koons Johnson
in her individual capacity and Justin Palmerton,
Kathryn E. Bailey Dress, Dezmond Beverly,
Jessie Murray, and Lynne K. Zellhart

## UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| LOUIS LOE,<br>        Plaintiff,<br><br>        v.<br><br>UNITED STATES OF AMERICA, ET AL.,<br>        Defendants. | Case No. 2:21-cv-03348-RGK-MAR<br><br>**Special Agents Notice Of Motion And Motion To Dismiss The Second Amended Complaint; Memorandum Of Points And Authorities And Declaration Of Joseph A. Gonzalez; [Proposed] Order Granting Motion Lodged Under Separate Cover**<br><br>Date:     November 15, 2021<br>Time:     9:00 a.m.<br>Courtroom: 850, the Honorable<br>        R. Gary Klausner |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on November 15, 2021 at 9:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable R. Gary Klausner, United States District Court, Courtroom 850, Royal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, California 90012, Defendants Justin Palmerton, Kathryn E. Bailey Dress, Dezmond Beverly, Jessie Murray, and Lynne K. Zellhart will and hereby do move, under to Fed. R. Civ. P. 12(b)(6), to dismiss the complaint for failure to state a claim upon which relief can be granted. This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on September 20, 2021 (*see* Gonzalez Decl. ¶ 2), and is made on the grounds that the Second Amended Complaint fails to state a claim upon which relief can be granted.

This motion is based upon this notice of motion; the attached memorandum of points and authorities and declaration of Joseph A. Gonzalez; the proposed order granting the motion (lodged under separate cover); all pleadings and papers on file in this action; such other and further matters as may be presented at any hearing on this motion; and matters of which the Court may take notice.

Dated: September 25, 2021          Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General, Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch, Civil Division

RICHARD MONTAGUE
Senior Trial Counsel, Torts Branch, Civil Division

/s/ *Joseph A. Gonzalez*
JOSEPH A. GONZALEZ
Trial Attorney, Torts Branch, Civil Division
U.S. DEPARTMENT OF JUSTICE

1

Ben Franklin Station
P.O. Box 7146
Washington, D.C. 20044-7146
(202) 598-3888 (phone)
(202) 616-4314 (fax)
joseph.a.gonzalez@usdoj.gov

Attorneys for Defendants Kristi Koons Johnson,
in her individual capacity, and Justin Palmerton,
Kathryn E. Bailey Dress, Dezmond Beverly,
Jessie Murray, and Lynne K. Zellhart

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................1

STANDARD OF REVIEW ...................................................................................3

ARGUMENT ........................................................................................................4

I.     Plaintiff's *Bivens* claims against the Special Agents fail because they arise in a new context and special factors counsel hesitation. .................................................4

     A.     Plaintiff's *Bivens* claims present a new context. ..................................4

     B.     Special factors counsel against a *Bivens* remedy in this new context. ..........6

          1.     Plaintiff has an alternative procedure for relief that counsels against recognizing a new *Bivens* action. .......................................................7

          2.     *Bivens* precludes holding the Special Agents responsible for the formulation of policy. ..........................................................................8

          3.     Plaintiff's *Bivens* action would cause disruptive intrusion into the Executive Branch. .............................................................................9

          4.     Existing legislation suggests that the absence of a monetary remedy against individuals under the circumstance alleged is more than inadvertent. ...................................................................................11

II.    The Special Agents are entitled to qualified immunity. .......................................12

     A.     It is not clearly established that the warrant lacked probable cause. ..........13

     B.     Plaintiff fails to allege a claim for judicial deception against Special Agent Zellhart. ...................................................................................................14

     C.     It is not clearly established that the inventory search was unconstitutional. 17

     D.     The property claims process did not violate Plaintiff's clearly established rights under the Fifth Amendment. ......................................................18

CONCLUSION ....................................................................................................20

i

# TABLE OF AUTHORITIES

**Federal Cases**

*Ahmed v. Weyker*,
   984 F.3d 564 (8th Cir. 2020) ............................................................................... 6

*Alexander v. Sandoval*,
   532 U.S. 275 (2001) ................................................................................................ 4

*Annappareddy v. Pascale*,
   996 F.3d 120 (4th Cir. 2021) ................................................................................. 5

*Armstrong v. Asselin*,
   734 F.3d 984 (9th Cir. 2013) ............................................................................... 13

*Ashcroft v. al-Kidd*,
   563 U.S. 731 (2011) ....................................................................................... 12, 17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................ 3

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
   403 U.S. 388 (1971) ............................................................................................ 4, 5

*Calero-Toledo v. Pearson Yacht Leasing Co.*,
   416 U.S. 663 (1974) .............................................................................................. 19

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*,
   824 F.3d 1156 (9th Cir. 2016) ............................................................................... 3

*Cantu v. Moody*,
   933 F.3d 414 (5th Cir. 2019) ........................................................................... 6, 10

*Carlson v. Green*,
   446 U.S. 14 (1980) ................................................................................................. 5

*Chavez v. Martinez*,
   538 U.S. 760 (2003) .............................................................................................. 20

ii

*City of W. Covina v. Perkins*,

    525 U.S. 234 (1999) ................................................................................ 19

*Colorado v. Bertine*,

    479 U.S. 367 (1987) ................................................................................ 17

*Davis v. Billington*,

    681 F.3d 377 (D.C. Cir. 2012).................................................................. 8

*Davis v. Passman*,

    442 U.S. 228 (1979) .................................................................................. 5

*District of Columbia v. Wesby*,

    138 S. Ct. 577 (2018)............................................................................... 12

*Farah v. Weyker*,

    926 F.3d 492 (8th Cir. 2019) ..........................................................passim

*Fazaga v. Fed. Bureau of Investigation*,

    965 F.3d 1015 (9th Cir. 2020) .................................................................. 4

*Fed. Bureau of Investigation v. Fazaga*,

    No. 20-828, 2021 WL 2301971 (U.S. June 7, 2021) ............................... 4

*Finkelstein v. Jangla*,

    816 F. App'x 98 (9th Cir. 2020)............................................................. 15

*Florida v. Wells*,

    495 U.S. 1 (1990) .................................................................................... 17

*Franks v. Delaware*,

    438 U.S. 154 (1978) ................................................................................ 10

*Gerstein v. Pugh*,

    420 U.S. 103 (1975) ................................................................................ 18

*Harlow v. Fitzgerald*,

    457 U.S. 800 (1982) ................................................................................ 12

iii

*Hernandez v. Mesa*,
   140 S. Ct. 735 (2020)..............................................................................4, 6, 8

*Hudson v. Palmer*,
   468 U.S. 517 (1984) .....................................................................................18

*Kisela v. Hughes*,
   138 S. Ct. 1148 (2018)..................................................................................12

*Lanuza v. Love*,
   899 F.3d 1019 (9th Cir. 2018) ...........................................................8, 10, 11

*Leyland v. Edwards*,
   797 F. Supp. 2d 7 (D.D.C. 2011)....................................................................7

*Libretti v. Woodson*,
   600 F. App'x 367 (6th Cir. 2015) ..................................................................14

*Liston v. Cnty. of Riverside*,
   120 F.3d 965 (9th Cir. 1997) ..................................................................15, 16

*Messerschmidt v. Millender*,
   565 U.S. 535 (2012) .....................................................................................13

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985) .....................................................................................20

*Mullenix v. Luna*,
   577 U.S. 7 (2015) .........................................................................................12

*Myers v. Brooks*,
   No. 2:18-CV-01043-RAJ, 2019 WL 4392501 (W.D. Wash. Sept. 13, 2019) .............19

*Myers v. Brooks*,
   845 F. App'x 630 (9th Cir. 2021).................................................................19

*Newt v. Kasper*,
   85 F. App'x 37 (9th Cir. 2003)....................................................................16

iv

*Perkins v. City of W. Covina*,
   113 F.3d 1004 (9th Cir. 1997) ........................................................................19

*Ramsden v. United States*,
   2 F.3d 322 (9th Cir. 1993) ...............................................................................7

*Rankin v. United States*,
   556 F. App'x 305 (5th Cir. 2014) ....................................................................8

*Seismic Reservoir 2020, Inc. v. Paulsson*,
   785 F.3d 330 (9th Cir. 2015) ...........................................................................3

*Snitko v. United States*,
   2:21-cv-04405-RGK-MAR, 2021 WL 3139707 (C.D. Cal. June 22, 2021)................19

*South Dakota v. Opperman*,
   428 U.S. 364 (1976) ........................................................................................17

*Stoot v. City of Everett*,
   582 F.3d 910 (9th Cir. 2009) .........................................................................20

*United States v. Bowhay*,
   992 F.2d 229 (9th Cir. 1993) .........................................................................18

*United States v. Chung*,
   553 F. App'x 690 (9th Cir. 2014) ..................................................................14

*United States v. Gaston*,
   740 F. App'x 576 (9th Cir. 2018) ..................................................................17

*United States v. Lopez*,
   547 F.3d 364 (2d Cir. 2008) ..........................................................................18

*United States v. SDI Future Health, Inc.*,
   568 F.3d 684 (9th Cir. 2009) .........................................................................13

*United States v. Verdugo-Urquidez*,
   494 U.S. 259 (1990) ........................................................................................20

*Vega v. United States*,

   881 F.3d 1146 (9th Cir. 2018) ...................................................................7

*Warren v. Fox Fam. Worldwide, Inc.*,

   328 F.3d 1136 (9th Cir. 2003) ...................................................................3

*White v. Pauly*,

   137 S. Ct. 548 (2017)..............................................................................12

*Williams v. O'Donnell*,

   No. 3:19-CV-00418-BR, 2020 WL 6686416 (D. Or. Nov. 12, 2020) ............8

*Wilson v. Layne*,

   526 U.S. 603 (1999) ...............................................................................19

*Ziglar v. Abbasi*,

   137 S. Ct. 1843 (2017).......................................................................passim

**Federal Statutes**

18 U.S.C. § 983 ......................................................................................8

vi

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

This case arises out of a criminal investigation into U.S. Private Vaults, Inc. (USPV), a company that anonymously leases safe deposit boxes. Plaintiff alleges in his Count II *Bivens* claim that five FBI Special Agents violated his constitutional rights when the government seized his safe deposit box pursuant to a seizure warrant issued in the investigation. Plaintiff's *Bivens* claims warrant dismissal for two reasons.

First, Plaintiff's theories of recovery arise in a new context that implicates classic reasons for rejecting the creation of a new *Bivens* remedy. These include: (i) the claim is improper given the existence of an alternative remedy; (ii) it would impermissibly hold the Special Agents responsible for policy decisions; (iii) the claim would cause disruptive intrusion into the Executive branch; and (iv) it likely infringes on legislative intent to not provide a remedy. Second, the unique circumstances of this case also demonstrate an entitlement to qualified immunity. No controlling authority or robust consensus of persuasive authority establishes that any of the actions alleged in these specific circumstances amounts to a violation of a clearly established right.

## BACKGROUND

USPV operates a safe deposit box business in a Beverly Hills strip-mall. *See* Second Amended Complaint (SAC) ¶¶ 28, 42. Unlike typical safety deposit boxes located in a bank, USPV does not use personal identifying information to identify box holders. *See id.* ¶¶ 31, 44. Instead, box holders "anonymously" use a "biometric data reader" which allows them to "gain[] access to the vault area" without anyone ever knowing their identity. *Id.* ¶ 44. Plaintiff, who allegedly leases box no. 2300, filed this lawsuit anonymously using the pseudonym Louis Loe. *See id.* ¶¶ 17, 32. His box contains sealed envelopes holding currency. *Id.* ¶ 36.

In March 2021, a grand jury indicted USPV for conspiracy to launder money, to distribute controlled substances, and to structure transactions to avoid reporting requirements. Gonzalez Decl. ¶ 3; Ex. A (Indictment). The indictment states that

1

USPV's business is predicated on "attract[ing] customers in possession of proceeds from criminal offenses[.]" Ex. A 3:21. USPV allegedly did so by "touting the anonymity of the safety deposit rentals" and "boasting that, unlike banks, its anonymous safety deposit box rentals did not require customer information that 'can be easily accessed by government agencies (such as the IRS)[.]'" *Id.* at 3:23-28.

Thereafter the government obtained a seizure warrant for, among other things the "[n]ests of safety deposit boxes and keys" located at USPV. Gonzalez Decl. ¶ 4; Ex. B (Warrant Attachment B) 2:26. The warrant did "not authorize a criminal search or seizure of the contents of the safety deposit boxes." *Id.* at 2:28-3:1.  Rather, it mandated that "agents shall follow their written inventory policies to protect their agencies and the contents of the boxes," and directed agents to "inspect the contents of the boxes in an effort to identify their owners[.]" *Id.* at 3:2-5. On March 22, 2021, the government executed the warrant and seized all boxes. SAC ¶¶ 39-40.

As of March 26, 2021 the FBI posted on USPV's shuttered front door a sign directing box owners to an FBI website to make a claim for their property. *Id.* ¶ 50. The website instructs a claimant to provide basic contact information—name and number— so that an "FBI Agent [can] contact [the claimant] for additional details." *Id.* ¶ 51. Despite this process, Plaintiff alleges that "[g]overnment representatives" have stated that there are no "standardized policies, procedures, or process for returning the contents of safe deposit boxes to their owners." *Id.* ¶ 53(b). Plaintiff further alleges that the website is "nothing more than a subterfuge for obtaining the identities and contact information of USPV box holders" so that it can investigate them. *Id.* ¶ 53.

Plaintiff did not utilize the website claim process. On May 20, 2021, the government initiated administrative forfeiture proceedings regarding the box contents and sent Plaintiff a notice of the proceeding. *Id.* ¶¶ 58-60. The notice explained that failure to file claim by June 24, 2021 for the property may result in forfeiture of the box contents. *Id.* ¶ 63. Plaintiff filed a claim for his property on June 16 and then on June 25

2

sent the government, through counsel, a "Demand for Immediate Return of Property." *Id.* ¶¶ 67, 71.

On April 19, 2021, Plaintiff filed a four count complaint, which he amended on July 8 and then again on August 24. In Count II, he brings a *Bivens* claim against Assistant Director In-Charge Kristi Koons Johnson, five FBI Special Agents, and DOES 1-10 in their individual capacities. He alleges that three of the Special Agents—Justin Palmerton, Kathryn Bailey Dress, and Dezmond Beverly—violated the Fourth Amendment by personally participating in the inventory process. *Id.* ¶¶ 22-24. Special Agent Jessie Murray allegedly "personally participated in the continued detention of Plaintiff's property by the government" in violation of the Fifth Amendment. *Id.* ¶ 25. And Special Agent Lynne Zellhart allegedly drafted the USPV warrant that allegedly lacked probable cause and contained false and misleading statements. *Id.* ¶¶ 26, 76. As set forth in more detail below, Plaintiff has failed to state a claim against the five Special Agents.

## STANDARD OF REVIEW

Courts should grant a Fed. R. Civ. P. 12(b)(6) motion to dismiss when a complaint fails to allege a cognizable legal theory or sufficient factual support for a legal theory. *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016); *see Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015) (internal quotations and citation omitted). Thus, a complaint must set forth "enough facts to state a claim to relief that is plausible on its face" to defeat the motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). But although courts accept as true the well-pleaded material factual allegations, they do not accept as true conclusory allegations, unwarranted factual deductions, unreasonable inferences or legal characterizations. *Id.* at 555; *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

3

**ARGUMENT**

I.  **Plaintiff's *Bivens* claims against the Special Agents fail because they arise in a new context and special factors counsel hesitation.**

*Bivens* remedies are the product of what the Supreme Court has called an "*ancien regime*" where it "would imply causes of action" not present in the text of a law. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017). In the forty years since then, the Court has reversed course and "consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). Now if a law "itself does not display an intent to create a private remedy, then a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Abbasi*, 137 S. Ct. at 1856 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001)) (internal quotations omitted). As a result, "the availability of *Bivens* actions for new claims and contexts" is now "severely restricted." *Fazaga v. Fed. Bureau of Investigation*, 965 F.3d 1015, 1055 (9th Cir. 2020) (citing *Abbasi*, 137 S. Ct. at 1856-57), *cert. granted sub nom. Fed. Bureau of Investigation v. Fazaga*, No. 20-828, 2021 WL 2301971 (U.S. June 7, 2021).

A plaintiff now only has two narrow paths to pursuing a *Bivens* action. If a plaintiff establishes that their claim qualifies as one of "the three *Bivens* claims the Court has approved in the past" then the *Bivens* claim may proceed (subject to other defenses). *Abbasi*, 137 S. Ct. at 1860. Alternatively, if the claim arises in a new context, a plaintiff must establish that there are no "special factors [that] counsel[] hesitation" before a court will imply a new cause of action. *Id.* at 1857. Plaintiff fails to establish a *Bivens* claim through either path.

A.  **Plaintiff's *Bivens* claims present a new context.**

Whether a claim presents a new context depends on whether the case is "different in a meaningful way from previous *Bivens* cases decided by th[e] [Supreme] Court." *Id.* at 1859. This requires a comparison with the only three cases in which the Supreme Court has previously recognized a *Bivens* remedy: *Bivens v. Six Unknown Named Agents*

4

*of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); *Davis v. Passman*, 442 U.S. 228 (1979); and *Carlson v. Green*, 446 U.S. 14 (1980). Because search and seizure are primarily at issue "[t]he most analogous Supreme Court case" here "is *Bivens* itself." *Quintero Perez v. United States*, 8 F.4th 1095, 1104 (9th Cir. 2021). *Davis* and *Carlson* are "are clearly dissimilar." *Id.* at 1104 n.4. But "coming closest" is still a far cry from "exactly mirror[ing] the facts and legal issues[.]" *Farah v. Weyker*, 926 F.3d 492, 498 (8th Cir. 2019). Even a case with "significant parallels to one of the [Supreme] Court's [three] previous *Bivens* cases," or a case presenting just a "modest extension" of one of them, "is still an extension" into a new context. *Abbasi*, 137 S. Ct. at 1864; *see id.* at 1860 (listing seven non-exhaustive factors).

Plaintiff's claims against the Special Agents directly implicate several of the meaningful differences set forth by the Supreme Court and thus establishes that Plaintiff's claims present a new context. Foremost, the type of injury is different. Unlike in *Bivens*, where the plaintiff was personally subjected to a warrantless search, seizure, and arrest that resulted in "humiliation, embarrassment, and mental suffering," 403 U.S. at 389-90, here, Plaintiff was never personally seized or arrested. Rather, his alleged Fourth Amendment injury is confined to a property interest in a safe-deposit box that was located in a strip-mall. *See* SAC ¶¶ 3, 42. Plaintiff's Fifth Amendment claims fare even worse. The alleged infringement on the right against self-incrimination and the due process claim regarding the continued seizure of the Plaintiff's box are also fundamentally different from the rights, injuries, and context alleged in *Bivens*, *Carlson*, or *Davis*.

But it is not just the injury that establishes a new context in this case. So too does the mechanism of injury. *Bivens* concerned a warrantless search from "stem to stern." 403 U.S. at 389. Here, conversely, the claims focus on a warrant, which was allegedly invalid for a variety of reasons, and the subsequent property retrieval process. *See Annappareddy v. Pascale*, 996 F.3d 120, 135 (4th Cir. 2021) (finding new context because "*Bivens* involved [] the Fourth Amendment right to be free of unreasonable

5

warrantless *searches* and seizures; [whereas] this case, by contrast, involves searches and a seizure conducted *with* a warrant") (emphasis in original). This difference not only establishes a new context by itself, but also reveals another meaningful difference from *Bivens*— attenuation between the defendant and the ultimate injury absent from *Bivens*.

For example, in *Ahmed v. Weyker*, 984 F.3d 564 (8th Cir. 2020) the plaintiff alleged that an officer knowingly drafted a sworn affidavit that contained "fabricated facts" and lacked probable cause. *Id.* at 566. The court held that this was enough to establish a new context. It reasoned that the steps between constructing the affidavit and executing the warrant involved "independent legal actors" and thus the "direct causal chain [present in *Bivens*] is missing." *Id.* at 569 (citation and internal quotations omitted). *See also Cantu v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019). The same holds true here. Plaintiff alleges that Special Agent Zellhart, working with prosecutors, "made materially false and misleading statements to the Magistrate Judge who issued the . . . seizure warrant[.]" SAC ¶ 119. "This indirect mechanism of injury bears little resemblance to the straightforward claims from *Bivens*." *Farah*, 926 F.3d at 499.

Similar reasoning establishes that Plaintiff's related inventory search theory also presents a new context.  Plaintiff alleges that "it was always the government's plan and intent to use the [inventory] search as a pretext to criminally investigate Plaintiff []and hundreds of other USPV customers[.]" SAC ¶ 84. This theory implicates an alleged large scale government conspiracy with numerous actors that had various levels of involvement with inventorying hundreds of boxes. Thus not only does the theory present "indirect mechanism of injury," it is also far more complicated than "the straightforward claims from *Bivens*." *Farah*, 926 F.3d at 499.

**B.    Special factors counsel against a *Bivens* remedy in this new context.**

The creation of a new *Bivens* remedy is a rare thing. Indeed, "for almost 40 years, [the Supreme Court has] consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez*, 140 S. Ct. at 743. This remains the status quo because the Supreme Court's "precedents now instruct [that] the Legislature is in the better position

to consider if the public interest would be served by imposing a new substantive legal liability." *Abbasi*, 137 S. Ct. at 1857 (internal citations and quotations omitted). The Supreme Court urges "caution" for this reason, holding that the mere presence of a "special factor counselling hesitation" forecloses the creation of *Bivens* remedy. *Id.* That is a case-specific inquiry. But if "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy[.]" *Id.* at 1858. Plaintiff's allegations here implicate textbook "sound reasons" to hesitate and for the Court to "refrain from creating" the *Bivens* remedies Plaintiff requests. *Id.*

   1. <u>Plaintiff has an alternative procedure for relief that counsels against recognizing a new *Bivens* action.</u>

  In *Abbasi*, the Supreme Court held that "the existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." *Id.* at 1865. Such "'[a]lternative remedial structures' can take many forms, including administrative, statutory, equitable, and state law remedies." *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018). In Count I, Plaintiff seeks the return of his property under Federal Rule of Criminal Procedure Rule 41(g), which as an equitable procedure, falls within the "other form[s] of equitable relief" category set forth in *Abbasi*. *See Ramsden v. United States*, 2 F.3d 322, 324 (9th Cir. 1993) ("district courts have the power to entertain motions to return property seized by the government when there are no criminal proceedings pending against the movant."). Thus, the principal relief Plaintiff seeks (property return) is capable of redress under Rule 41(g)'s alternative remedial structure. *See Leyland v. Edwards*, 797 F. Supp. 2d 7, 11 (D.D.C. 2011) (holding that the plaintiff's *Bivens* claim for the return of his property was "barred due to Rule 41(g) providing an adequate, comprehensive procedural and remedial scheme.").

  This would hold true even though the government pursued forfeiture proceedings as to Plaintiff's property (as Plaintiff alleged). *See* SAC ¶¶ 58-64. A "scheme's failure to provide a remedy to a particular plaintiff for the particular claim . . . does not make the

scheme any less comprehensive for purposes of determining whether it is a special factor that precludes the creation of a *Bivens* remedy." *Davis v. Billington*, 681 F.3d 377, 387 (D.C. Cir. 2012) (citation and quotations omitted). Thus, Rule 41(g)'s existence as a remedial scheme to address the type of injury Plaintiff alleges is enough to counsel hesitation, regardless of whether he actually can succeed under his particular circumstances. *Cf. Hernandez*, 140 S. Ct. at 750 n.12 ("Indeed, in *Abbasi* we explained that existence of alternative remedies was merely a further reason not to create *Bivens* liability.") (citation omitted).

And if forfeiture proceedings were pursued, that would provide yet another alternative remedial structure. "Although the Ninth Circuit has not addressed the issue, other circuit courts have refused to recognize a *Bivens* claim related to administrative forfeitures of property[.]" *Williams v. O'Donnell*, No. 3:19-CV-00418-BR, 2020 WL 6686416, at *6 (D. Or. Nov. 12, 2020). "Congress has created an 'alternative, existing process for protecting the [injured party's] interest'" in property under the Civil Asset Forfeiture Reform Act (CAFRA) of 2000 (18 U.S.C. § 983). *Williams*, 2020 WL 6686416, at *6. And "[b]ecause CAFRA provides a comprehensive scheme for protecting property interests, no *Bivens* claim is available." *Rankin v. United States*, 556 F. App'x 305, 311 (5th Cir. 2014). Alleged deficiencies regarding the forfeiture process do not diminish its adequacy as an alternative remedy. *See Davis*, 681 F.3d at 387. Thus, CAFRA provides yet another alternative remedial structure that also counsels hesitation.

2. *Bivens* precludes holding the Special Agents responsible for the formulation of policy.

A "*Bivens* action is not 'a proper vehicle for altering an entity's policy.'" *Abbasi*, 137 S. Ct. at 1860. This remains so "[e]ven if the [*Bivens*] action is confined to the conduct of a particular Executive Officer in a discrete instance." *Id.* Such claims still require hesitation if they "call into question the formulation and implementation of a general policy[.]" *Id.*; *see Lanuza v. Love*, 899 F.3d 1019, 1028 (9th Cir. 2018) ("special

8

factors include . . . whether *Bivens* is being used as a vehicle to alter an entity's policy"). Plaintiff's claims against the Special Agents do just that and thus counsel hesitation.

Plaintiff alleges that the Special Agents violated the Fourth Amendment because the inventory search was not "conducted pursuant to established and standardized agency policies and procedures." SAC ¶ 124. Similarly, Plaintiff asserts that the FBI has "no established or standardized policies, procedures, or process" for claiming property in violation of the Fifth Amendment. *Id.* at ¶ 53(b).  Although styled as an absence of policy, these theories function no less as an attempt "to alter an entity's policy" because they seek to force the FBI to conform to revised policies Plaintiff deems appropriate. This necessarily "require[s] inquiry and discovery into the whole course of the discussions and deliberations that led to the policies and governmental acts being challenged." *Abbasi*, 137 S. Ct. at 1860. Here those discussions range from the best method for effectively inventorying the boxes (Fourth Amendment) to how the FBI's property retrieval procedures fulfill its goal to seize criminal proceeds and return non-criminal property (Fifth Amendment). Plaintiff's attempt to change these policies counsels hesitation.

> ### 3.  Plaintiff's *Bivens* action would cause disruptive intrusion into the Executive Branch.

Plaintiff takes issue with multiple steps taken in a large criminal investigation and prosecution into a complex criminal scheme. He complains that the warrant, the search of his box, the procedure for claiming box contents, and the retention of box contents, were all unconstitutional. *See* SAC ¶¶ 118-127. But the inherent factual complexity of each theory risks "burdening and interfering with the executive branch's investigative and prosecutorial functions." *Farah*, 926 F.3d at 500. The Fourth Circuit (*Annappareddy*), the Fifth Circuit (*Cantu*), and the Eighth Circuit (*Weyker* & *Ahmed*) all recognize that this is an "intrusive" interference into "sensitive functions of the Executive Branch" that courts must avoid. *Abbasi*, 137 S. Ct. at 1861.

Plaintiff's contention that the warrant was defective guarantees intrusion. To prevail on the claim, Plaintiff must show that law enforcement officials (1) deliberately or recklessly (2) made *material* misstatements or omissions in the warrant (3) without which there would be no probable cause. *See generally, Franks v. Delaware*, 438 U.S. 154 (1978). This necessarily "invite[s] a wide-ranging inquiry into the evidence available to investigators" that is the province of the Executive. *Farah*, 926 F.3d at 500. Plaintiff concedes as much, as he alleges that the affidavit contains multiple categories of "false[] and misleading[]" information. *See* SAC ¶¶ 78-95. These range from broad questions regarding evidence collection techniques to the narrow issue of whether USPV knew its customers were engaged in illegal activity.

The complexity of the case magnifies this inquiry and thus also the intrusiveness that counsels hesitation. The government has alleged that USPV "was a criminal business that conspired with its criminal clients to distribute drugs, launder money, and structure transactions to avoid currency reporting requirements." SAC ¶ 55(a). The suspected scheme involved numerous actors and entities executing a plan sophisticated enough to skirt federal banking laws. *See id.*; *see also* Indictment at 106-7. Just as in *Cantu*, where the fact that the case involved a "multi-jurisdictional investigation into transnational organized crime" counseled hesitation, so too here does the expansiveness of the USPV investigation counsel hesitation. 933 F.3d at 424.

*Lanuza*, in which the plaintiff sued an ICE attorney for forging an immigration form that resulted in his deportation, provides a useful comparison. 899 F.3d at 1022-23. The Ninth Circuit did not find any special factors counseling hesitation in that case because the *Bivens* action was premised on simple and "undisputed" facts: an attorney, working alone, "intentionally submitted forged documents[.]" *Id.* at 1033. This made the case "particularly straightforward" and limited to "the only question remaining . . . of damages" for which "courts have substantial experience." *Id.* Questions present in this case, such as "[w]hether the evidence was falsified, and whether it was submitted willfully," were absent from *Lanuza*. *Id.* "[T]he only question remaining" there was "the

10

amount of damages," for which "courts have substantial experience." *Id.* This case, by contrast, lacks such simplicity because it necessarily requires delving into investigative complexities that *Lanuza* did not involve.

Plaintiff's related claim that the inventory search allegedly occurred in the absence of an inventory policy also would require delving into an executive function. *See* SAC ¶¶ 53(b), 80-82. As discussed above, this too constitutes an intrusion into law enforcement operations that reflect choices about how to securely and efficiently inventory property, and so too counsels hesitation. Plaintiff's Fifth Amendment claim regarding the cataloging and retrieval of box contents is subject to the same principle. *See id.* ¶¶ 50-52. Forcing the government to "explain why a receivership, a temporary restraining order, or some other legal mechanism would not be [a] sufficient" alternative would require examining an executive function that balances competing interests. *Id.* ¶ 83.

<blockquote>
4.    <u>Existing legislation suggests that the absence of a monetary remedy against individuals under the circumstance alleged is more than inadvertent.</u>
</blockquote>

Finally, the absence of a damages remedy against federal officers under these circumstances does not mean that one should be authorized here. Rather, "congressional silence might be more than 'inadvertent.'" *Abbasi*, 137 S. Ct. at 1862 (citation omitted). In *Farah*, which concerned allegations that an investigator falsified evidence, the Eighth Circuit explained this inference in the context of statutes intended to compensate wrongly convicted defendants. *See Farah,* 926 F.3d at 502 (citing to the Hyde Amendment for baseless prosecutions, and 28 U.S.C. § 1495 and 28 U.S.C. § 2513 for unjust convictions). Such statutes cut against creating a cause of action for defendants aggrieved by improper investigations, but not convicted. *Id.* It reasoned "that Congress has expressly provided a damages remedy for some victims of this particular type of injury, but not for others, suggests that it considered the issue and made a deliberate choice" not to compensate those others. *Id.* That reasoning applies in this case as well. "Congress' failure to provide a damages remedy" for those claiming damage from

11

criminal investigations but who are not convicted "might be more than mere oversight, and that congressional silence might be more than 'inadvertent.'" *Abbasi*, 137 S. Ct. at 1862. Accordingly, because "Congress might doubt the efficacy or necessity of a damages remedy" in this case, this Court should "refrain from creating the remedy." *Id.* at 1858.

## II.   The Special Agents are entitled to qualified immunity.

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). This "protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (citation and quotations omitted). It does so by insulating government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

To be clearly established, a legal principle must be settled law, and it must clearly prohibit the officer's conduct in the *particular circumstances* before him[.]" *District of Columbia v. Wesby*, 138 S. Ct. 577, 581 (2018) (emphasis added). "Such specificity is especially important in the Fourth Amendment context[.]" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam). It ensures that courts do not define the right at a "high level of generality" and therefore hold an officer liable without "fair notice that her conduct was unlawful[.]" *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam). Thus, to determine whether an officer's conduct violates clearly established law, the formulation of the conduct "must be particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam) (citation and quotations omitted). As set forth below, the Special Agents are entitled to qualified immunity because it is not clearly established under the specific circumstances alleged that Plaintiff's constitutional rights were violated.

**A.    It is not clearly established that the warrant lacked probable cause.**

Plaintiff alleges that Special Agent Zellhart's warrant "[a]ffidavit provided no probable cause whatsoever to seize and search Plaintiff's USPV box" and thus the search of his box violated the Fourth Amendment. SAC ¶ 76. In support, he alleges that "the Affidavit made no reference to Plaintiff, his USPV box, the contents of his USPV box, or the nest of safe deposit boxes that included his box." *Id.* ¶ 77.  Even if probable cause were lacking, these allegations do not rise to a violation of a clearly established right.

In *Messerschmidt v. Millender*, 565 U.S. 535 (2012), the plaintiff made a similar argument when he claimed that a warrant was obviously overbroad because it identified just one particular gun, not all of the guns seized in a house. *Id.* at 548. But the Supreme Court disagreed, holding that "[i]t is the magistrate's responsibility to determine whether the officer's allegations establish probable cause[.]" *Id.* at 547 (citation omitted). When this occurs, ordinarily "an officer cannot be expected to question the magistrate's probable-cause determination." *Id.*; *see also Armstrong v. Asselin*, 734 F.3d 984, 991 (9th Cir. 2013) ("[P]rior review of proposed searches [] supports qualified immunity, shielding police officers from liability under the line of cases reaffirmed and broadened most recently by *Messerschmidt v. Millender*."). This analysis applies in equal force here. The fact that a magistrate judge approved the USPV warrant "demonstrates that any error was not obvious" and entitles Special Agent Zellhart and the agents that executed the warrant to qualified immunity. *Messerschmidt*, 565 U.S. at 556.

An analysis of the warrant itself underscores the point. It directly identifies the "nest of safety deposit boxes" as subject to seizure and explains that the boxes are "evidence and instrumentalities of USPV's criminality." Case No. 2:21-cr-00106 (C.D. Cal.), ECF 61 at 97; *see United States v. SDI Future Health, Inc.*, 568 F.3d 684, 703 (9th Cir. 2009). The government also explained that "USPV was a criminal business that conspired with its criminal clients to distribute drugs, launder money, and structure transactions to avoid currency reporting requirements, among other offenses." SAC ¶ 55(a). And the warrant further provided specific instances of not only how the criminal

13

scheme worked, but also how the boxes were integral to the scheme. Under these facts, no settled law clearly establishes an absence of probable cause.

Cases assessing the validity of warrants for safe-deposit boxes support this conclusion, especially when, as in this case, the available evidence indicates that the safe deposit boxes are being used in criminal schemes. For example, *United States v. Chung*, 553 F. App'x 690 (9th Cir. 2014) held that a magistrate judge had a substantial basis for finding probable cause to seize a safe deposit box given a DEA agent's explanation that "loansharking conspiracies will often hide their records and paraphernalia at their homes and in safe deposit boxes." *Id.* at 692; *see Libretti v. Woodson*, 600 F. App'x 367, 372 (6th Cir. 2015) (granting agent qualified immunity for claim that his warrant lacked probable cause because he explained that it was common for "drug traffickers to store drug proceeds in safe deposit boxes" and the box had been accessed recently).

That Plaintiff's identity was unknown and that some USPV customers may not be criminals does not change this conclusion. SAC ¶¶ 86-87, 95. USPV used sophisticated technology, including a biometric data reader, to conceal the identities of box owners and disassociate them from criminal schemes. *Id.* ¶ 44. This shows Plaintiff's knowing use of the quixotic procedures also utilized by criminal actors to make him and his box functionally indistinguishable from them. Under these unique facts, Plaintiff cannot identify a body of settled case law which establishes that the affidavit showed clear lack of probable cause.

## B. Plaintiff fails to allege a claim for judicial deception against Special Agent Zellhart.

Plaintiff alleges that Special Agent Zellhart engaged in judicial deception by "knowingly or with reckless disregard" including in her affidavit "false and misleading statements[.]" SAC ¶ 26. The alleged omissions and misstatements can be reduced to three categories: (1) failure to divulge that the government's true plan was "to use the search as a pretext to criminally investigate" box holders (*Id.* ¶¶ 76, 84); (2) failure to accurately characterize USPV (*Id.* ¶¶ 86, 93, 95); and (3) that the "government had no

14

factual basis" to believe that Plaintiff or his box contents were associated with criminal activity (*Id.* ¶¶ 88-92, 96). "To overcome qualified immunity on a judicial-deception claim, a plaintiff must 1) make a substantial showing of [an officer's] deliberate falsehood or reckless disregard for the truth and 2) establish that, but for the dishonesty, the [issuing of the warrant] would not have occurred." *Finkelstein v. Jangla*, 816 F. App'x 98, 101 (9th Cir. 2020) (citation and quotations omitted). Plaintiff fails to meet both prongs.

None of these alleged omissions show a reckless disregard for the truth because including them would have no bearing on "the inferences a magistrate will draw." *See Liston v. Cnty. of Riverside*, 120 F.3d 965, 973 (9th Cir. 1997), *as amended* (Oct. 9, 1997). In fact, the first omissions category—the government's "true plan" theory— logically cannot bear upon the probable cause determination. This regards the government's alleged intent to implement a *future* plan, as opposed to relating *past* observations of USPV. The "true plan" theory also fails to qualify as a deliberate falsehood because, as Plaintiff concedes, the government set forth an inventory process which it did perform. That the process later evolved into forfeiture proceedings for some owners that refused to make a claim was not a deception because the affidavit never made any claim to the contrary.

Plaintiff's contention that the affidavit failed to accurately characterize USPV also falls short. Omitting that USPV "was a member of the Beverly Hills Chamber of Commerce" or that a "prominent traditional bank," SAC ¶¶ 86 & 93, recommended USPV did not render "technically true statements in the affidavit . . . misleading," *Liston*, 120 F.3d at 973. USPV's portrayal as a criminal enterprise rested on specific examples of criminal conduct and damning admissions by its principals that remain undiminished by the alleged omissions from the affidavit. These include:

- Identifying nine distinct investigations that lead to numerous USPV boxes which were directly connected to criminal conduct and ended with convictions. The boxes held proceeds from drug trafficking, money

15

laundering, child pornography, prostitution, credit card fraud, illegal gambling, and other crimes. Gonzalez Decl. ¶ 5; Ex. C (Warrant Aff.) ¶ 20(a), (b), (e), (f), (g).

- The founder stated that his "best USPV customers were 'bookies,' 'prostitutes,' and 'weed guys.'" *Id.* ¶ 21:10-11.

- The co-owner advised that "you don't want every drug dealer in your place either. You need normal people too." *Id.* ¶ 29:13-14.

- The USPV on-site manager stated that he was not focused on drug activity because he was "just the money laundering *mijo*." *Id.* ¶ 31:28.

The omissions that allegedly cast USPV in a more positive light neither detract from the statements supporting probable cause, nor directly relate to them. *See Newt v. Kasper*, 85 F. App'x 37, 38 (9th Cir. 2003) (Claim that affidavit failed to "include any information tending to show why evidence of a drug operation would *not* be found at [the plaintiff's] house [did] not rise to the level of 'reckless disregard for the truth[.]'") (emphasis in original). Thus, these alleged omissions were neither recklessly made, nor material.

Plaintiff's allegation that the affidavit "omitt[ed] the material fact that the government had no factual basis" to believe Plaintiff and other box holders were connected to criminal activity falters under a similar analysis. SAC ¶¶ 88-91, 96. USPV principals admitted that the majority of USPV's business came from criminals. Ex. C ¶¶ 21:10-11, 29:13-14. The affidavit also summarized nine investigations in which criminal actors used USPV boxes and identified "many current USPV customers" that were likely storing criminal proceeds at USPV. *Id.* ¶ 20(j):24-25. This information supports an inference that Plaintiff's box was connected to criminal activity. The absence of an assertion specific to Plaintiff or his box does not diminish it. *Compare Liston*, 120 F.3d at 973 (Because probable cause "depended entirely on the strength of the evidence that [the plaintiff] currently resided at that address," omitting the presence of a For Sale sign in front of the house was plausibly reckless.).

The above analysis also demonstrates that even if all of the alleged omissions were included in the affidavit, probable cause would still lie. Their peripheral and irrelevant character precludes the alleged omissions from diminishing the "fair probability" that the USPV's boxes were evidence of a crime. This remains particularly so given the sheer scope of the criminality that the affidavit sets forth in detail.

### C.     It is not clearly established that the inventory search was unconstitutional.

The inventory search alleged in this case also did not violate clearly established law. Special Agents Palmerton, Bailey Dress, and Beverly, recognizing their "responsib[ility] for the property taken into [the government's] custody," opened and cataloged the contents of the seized safe deposit boxes to protect against claims of theft, damage and "any danger . . .that may have been posed by the property." *Colorado v. Bertine*, 479 U.S. 367, 373 (1987); *see South Dakota v. Opperman*, 428 U.S. 364, 371 (1976) ("[I]t is reasonable to search the container to itemize the property to be held by the police.") (citation omitted). Critically, this alleged process occurred pursuant to "standardized criteria or established routine," *Florida v. Wells*, 495 U.S. 1, 1 (1990), that involved itemizing every box, yet also prohibited reading the contents of notebooks or thumb drives, SAC ¶ 48. *See United States v. Gaston*, 740 F. App'x 576, 577 (9th Cir. 2018) (finding that "routine practice of opening locked containers if they can be readily opened during an inventory search" qualified as standardized practice and therefore validated inventory search.). This conformity to inventory search standards necessarily precludes Plaintiff from plausibly alleging that the search violated clearly established law. The unique circumstances alleged here underscore the point. No "controlling authority" or "robust 'consensus of . . . persuasive authority'" establishes that the government's inventorying of hundreds of anonymously held safe-deposit boxes, intentionally made anonymous by design and via sophisticated technology, violated the Fourth Amendment. *al-Kidd*, 563 U.S. at 742.

17

Plaintiff's unadorned allegation that the search was in fact a "pretext for conducting an investigatory search" cannot save his claim. SAC ¶ 123. In *United States v. Bowhay*, 992 F.2d 229 (9th Cir. 1993), the plaintiff made a similar argument when an officer admitted that he "viewed [a] search as both an investigative and as an inventory search[.]" *Id.* at 231. However, the court still held that "the presence of an investigative motive [did] not invalidate the inventory search." *Id.* It reasoned that because "the department's policy was to search everything[,] the officer had no discretion" and thus his motive was beside the point. *Id.* This case is no different. Plaintiff alleges that the inventory procedure involved opening all boxes seized. Thus motive is irrelevant. More to the point, it is clearly established that motive is irrelevant under these circumstances. "[T]he Supreme Court has not required an absence of expectation of finding criminal evidence as a prerequisite to a lawful inventory search. . . . [M]otivation [] cannot reasonably disqualify an inventory search that is performed under standardized procedures for legitimate custodial purposes." *United States v. Lopez*, 547 F.3d 364, 372 (2d Cir. 2008) (citations omitted).

### D.      The property claims process did not violate Plaintiff's clearly established rights under the Fifth Amendment.

Plaintiff alleges that Special Agent Murray "has personally participated in the continued detention" of his property in violation of a procedural due process right. SAC ¶ 25. However, his failure to allege the absence of a "meaningful post deprivation remedy" for recovering the contents of his box dooms the claim. *Cf. Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[A]n unauthorized intentional deprivation of property by a [government] employee does not constitute a violation . . . of the Due Process Clause . . . if a meaningful post deprivation remedy for the loss is available."). For one thing, the Fourth Amendment "has been thought to define the 'process that is due' for seizures of person or property in criminal cases," *Gerstein v. Pugh*, 420 U.S. 103, 125 n.27 (1975). And the Fourth Amendment usually does not require pre-deprivation notice and opportunity to be heard. Instead, the availability of a post-seizure return motion, such as

18

under Federal Rule of Criminal Procedure 41(g), is adequate post-deprivation process. *Cf. Perkins v. City of W. Covina*, 113 F.3d 1004, 1011 (9th Cir. 1997) (holding that California law provides by motion adequate remedies for return of property), *rev'd on other grounds, sub nom. City of W. Covina v. Perkins*, 525 U.S. 234 (1999). The chance to contest asset forfeiture proceedings provides the same for personal property seizures. *See Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 678 (1974).

For another thing, Plaintiff alleges that less than a week after the seizure, the government did in fact provide a post deprivation remedy by creating a claims process for recovering his property. *See* SAC ¶¶ 50-52. It set up a website that instructed claimants "[t]o make a claim for property stored at [USPV] . . . [by] provid[ing] the following [contact] information" so that an "FBI agent [could] contact [them] with additional details." *See id.* ¶ 51. Whether his property was wrongly seized in the first place does not diminish the validity of either Rule 41 or this process. *See Myers v. Brooks*, No. 2:18-CV-01043-RAJ, 2019 WL 4392501 (W.D. Wash. Sept. 13, 2019) ("[E]ven if Defendants wrongly seized Plaintiff's 'shipping containers,' no liability would ensue if the state offered a meaningful post-deprivation remedy.") *aff'd,* 845 F. App'x 630 (9th Cir. 2021). Here, it is undisputed that the government provided a claim process and initiated a forfeiture process in which Plaintiff has made a claim. No Supreme Court decision, Ninth Circuit decision, or consensus of persuasive authority, *Wilson v. Layne*, 526 U.S. 603, 617 (1999), clearly establishes that these were constitutionally inadequate procedures in the specific circumstances alleged here.

Plaintiff's related claim that the forfeiture notice was insufficient also falters on clearly established grounds. His reliance on the holding in *Snitko v. United States*, 2:21-cv-04405-RGK-MAR, 2021 WL 3139707 (C.D. Cal. June 22, 2021) proves the point. The Court's holding that those plaintiffs received insufficient notice of the factual basis for their forfeiture: (1) occurred a month after the notice in this case; (2) stands as the first ever holding on the unique circumstances presented by this case; and (3) as a district court decision remains incapable of satisfying the clearly-established law threshold. *See*

19

*Mitchell v. Forsyth*, 472 U.S. 511, 535 (1985) ("[O]fficials performing discretionary functions are not subject to suit when such questions are resolved against them only after they have acted.").

Finally, Plaintiff's claim that the property recovery procedure and forfeiture process violates his privilege against self-incrimination also falters on clearly-established grounds. *See* SAC ¶¶ 4, 127. Plaintiff fails to appreciate that as "a fundamental trial right of criminal defendants," *United States v. Verdugo-Urquidez*, 494 U.S. 259, 264 (1990), violation of the right against self-incrimination "at the very least requires the initiation of legal proceedings," *Chavez v. Martinez*, 538 U.S. 760, 766 (2003) (Thomas, J., plurality opinion). *See Stoot v. City of Everett*, 582 F.3d 910, 925 (9th Cir. 2009) (Use of a coerced statement violates the right against self-incrimination "when it has been relied upon to file formal charges against the declarant, to determine judicially that the prosecution may proceed, and to determine pretrial custody status."). As a result, the Supreme Court has explicitly held that statements elicited during the "criminal investigatory process" do not violate the right in the absence of criminal proceedings. *Chavez*, 538 U.S. at 766. Plaintiff's claim that his right was violated by "subjecting himself to criminal investigation" by "compell[ing] Plaintiff to disclose his true name," SAC ¶ 127, cannot withstand this authority under the clearly established analysis.

## CONCLUSION

For the foregoing reasons, the Special Agents' motion to dismiss should be granted.


Dated: September 25, 2021                 Respectfully submitted,

                                          BRIAN M. BOYNTON
                                          Acting Assistant Attorney General, Civil Division

                                          C. SALVATORE D'ALESSIO, JR.
                                          Acting Director, Torts Branch, Civil Division

1

2

RICHARD MONTAGUE
Senior Trial Counsel, Torts Branch, Civil Division

3

4

5

6

7

8

9

*/s/ Joseph A. Gonzalez*
JOSEPH A. GONZALEZ
Trial Attorney, Torts Branch, Civil Division
U.S. DEPARTMENT OF JUSTICE
Ben Franklin Station
P.O. Box 7146
Washington, D.C. 20044-7146
(202) 598-3888 (phone)
(202) 616-4314 (fax)
joseph.a.gonzalez@usdoj.gov

10

11

12

13

Attorneys for Defendants Kristi Koons Johnson,
in her individual capacity, and Justin Palmerton,
Kathryn E. Bailey Dress, Dezmond Beverly,
Jessie Murray, and Lynne K. Zellhart

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28