BRIAN M. BOYNTON
Acting Assistant Attorney General, Civil Division
C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch, Civil Division
RICHARD MONTAGUE
Senior Trial Counsel, Torts Branch, Civil Division
PAUL C. QUAST
Trial Attorney, Torts Branch, Civil Division
JOSEPH A. GONZALEZ
Trial Attorney, Torts Branch, Civil Division
    U.S. DEPARTMENT OF JUSTICE
    Ben Franklin Station
    P.O. Box 7146
    Washington, D.C. 20044-7146
    (202) 598-3888 (phone)
    joseph.a.gonzalez@usdoj.gov

Attorneys for Defendant
KRISTI KOONS JOHNSON in her individual capacity

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| LOUIS LOE,<br>    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, ET AL.,<br>    Defendants. | Case No. 2:21-cv-03348-RGK-MAR<br><br>**Defendant Kristi Koons Johnson's (In Her Individual Capacity Only) Reply in Support of Her Motion To Dismiss The Second Amended Complaint**<br><br>Date:    October 18, 2021<br>Time:    9:00 a.m.<br>Courtroom: 850, the Honorable<br>    R. Gary Klausner |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................iii

INTRODUCTION .............................................................................................................1

ARGUMENT ....................................................................................................................1

I. This Court should reject Plaintiff's invitation to extend *Bivens*. ............................1

    A. Plaintiff's *Bivens* claims present a new context. ............................................1

    B. Special factors counsel against a *Bivens* remedy here. ................................4

        1. Plaintiff has alternative processes to seek relief. ................................5

        2. Other special factors counsel hesitation. ..............................................7

II. ADIC Johnson is entitled to qualified immunity. .....................................................9

CONCLUSION ................................................................................................................10

# TABLE OF AUTHORITIES

**Federal Cases**

*Ahmed v. Weyker*,
  984 F.3d 564 (8th Cir. 2020) .................................................................................. 4, 8

*Annappareddy v. Pascale*,
  996 F.3d 120 (4th Cir. 2021) ....................................................................................... 3

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 9, 10

*Behrens v. Pelletier*,
  516 U.S. 299 (1996) ....................................................................................................... 9

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
  403 U.S. 388 (1971) ........................................................................................................ 1

*Bush v. Lucas*,
  462 U.S. 367 (1983) ........................................................................................................ 6

*Carlson v. Green*,
  446 U.S. 14 (1980) .......................................................................................................... 2

*D.C. v. Wesby*,
  138 S. Ct. 577, (2018) .................................................................................................... 8

*Davis v. Passman*,
  442 U.S. 228 (1979) ................................................................................................... 1, 2

*Farah v. Weyker*,
  926 F.3d 492 (8th Cir. 2019) ......................................................................................... 8

*Florida v. Wells*,
  495 U.S. 1 (1990) ........................................................................................................... 10

*Franks v. Delaware*,
  438 U.S. 154 (1978) ...................................................................................................... 10

*Gete v. I.N.S.*,
    121 F.3d 1285 (9th Cir. 1997) ................................................................................ 10
*Groh v. Ramirez*,
    540 U.S. 551 (2004) .................................................................................................. 3
*Hernandez v. Mesa*,
    140 S. Ct. 735 (2020) ................................................................................................ 1
*Isayeva v. Sacramento Sheriff's Dep't*,
    872 F.3d 938 (9th Cir. 2017) .................................................................................. 10
*Lanuza v. Love*,
    899 F.3d 1019 (9th Cir. 2018) ............................................................................. 2, 6
*Messerschmidt v. Millender*,
    565 U.S. 535 (2012) .................................................................................................. 4
*Minneci v. Pollard*,
    565 U.S. 118 (2012) ......................................................................................... 5, 6, 7
*Mirmehdi v. United States*,
    689 F.3d 975 (9th Cir. 2012) .................................................................................... 5
*Mitchell v. Forsyth*,
    472 U.S. 511 (1985) .................................................................................................. 9
*Schweiker v. Chilicky*,
    487 U.S. 412 (1988) .................................................................................................. 7
*Snitko v. United States*,
    No. 2:21-cv-04405-RGK-MAR, 2021 WL 3139707 (C.D. Cal. June 22, 2021) .......... 10
*United States v. Feldman*,
    788 F.2d 544 (9th Cir. 1986) .................................................................................. 10
*United States v. Stanley*,
    483 U.S. 669 (1987) .................................................................................................. 6

*W. Radio Servs. Co. v. U.S. Forest Serv.*,
  578 F.3d 1116 (9th Cir. 2009) ..................................................................................5

*Wilkie v. Robbins*,
  551 U.S. 537 (2007) ..................................................................................................5

*Ziglar v. Abbasi*,
  137 S. Ct. 1843 (2017)......................................................................................passim

# INTRODUCTION

In her opening memorandum, Assistant Director in Charge Kristi Koons Johnson (ADIC Johnson) demonstrated that this Court should refrain from creating the *Bivens* remedy Plaintiff seeks and that, in any event, she is entitled to qualified immunity. Plaintiff responds by asking this Court to shoehorn the facts of this case into previously-implied *Bivens* contexts, ignore binding precedent, and engage in rank speculation to fill in what is lacking in the Second Amended Complaint. Plaintiff's claims against ADIC Johnson should be dismissed with prejudice.

# ARGUMENT

## I. This Court should reject Plaintiff's invitation to extend *Bivens*.

### A. Plaintiff's *Bivens* claims present a new context.

Plaintiff's purported *Bivens* claims "involve a new context, *i.e.*, one that is meaningfully different." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020); *see* Johnson Motion to Dismiss, Dkt. 57 (MTD) at 5–7. "[E]ven a modest extension is still an extension," *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1864 (2017), and the Supreme Court's "understanding of a 'new context' is broad." *Hernandez*, 140 S. Ct. at 743. Plaintiff asserts that his claims fall within "core" *Bivens* territory because they involve the same amendments as *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) and *Davis v. Passman*, 442 U.S. 228 (1979). Plaintiff's Opposition, Dkt. 66 (Opp.) at 13–14. But the Supreme Court has explicitly rejected such a superficial analysis. *See Hernandez*, 140 S. Ct. at 743 ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."). Instead, the Supreme Court has given a non-exclusive list of differences that can render a context new—at least four of which are present here. *Abbasi*, 137 S. Ct. at 1860, MTD at 5–7. Plaintiff's attempts to minimize these differences betrays a fundamental misunderstanding of the new context

analysis and asks the Court to ignore the Supreme Court's guidance in *Abbasi*.

Plaintiff first argues that ADIC Johnson's rank is irrelevant to the new context inquiry because the Supreme Court has implied *Bivens* remedies against high-ranking officials in the past. Opp. at 15. There are numerous flaws with this argument. First, *Abbasi*'s inclusion of the "rank of the officers involved" in its list of possible meaningful differences would be pointless if it was the case that between *Bivens* (line-level officers), *Carlson* (Bureau of Prisons Director), and *Davis* (Congressman), every possible "rank" has already been subsumed.[1] In other words, under Plaintiff's theory, because the Court has previously authorized *Bivens* claims against high and low ranking defendants, no "rank" of a defendant could ever render a context "new." Needless to say, this Court is not free to ignore the Supreme Court or Ninth Circuit's dictates. *See Lanuza v. Love*, 899 F.3d 1019, 1023 (9th Cir. 2018) (employing *Abbasi*'s new context analysis). Second, Plaintiff's argument conflates the distinct contexts of the Supreme Court's prior decisions. Merely because the Court has extended *Bivens* to a high-ranking official in one context does not mean that "rank" is now irrelevant in all contexts. Notably, Plaintiff makes no effort—beyond a conclusory statement, Opp. at 15—to show that ADIC Johnson's higher rank is comparable to the line-level officers in *Bivens* itself. Third, and critically, the Court has never extended *Bivens* to a claim against a supervisor (let alone one in charge of an entire field office) for the acts of a subordinate (or even for causing a subordinate to act), meaningfully distinguishing

---

[1] Although the Director of the Bureau of Prisons was a defendant in *Carlson*, the question of his rank was not an issue before the Court. *See generally Carlson v. Green*, 446 U.S. 14 (1980). Indeed, although the Director's rank is mentioned in the caption, it is not discussed (or even mentioned) in the body of the opinion, which addresses solely the conduct of line-level officers. *Id.* at 17 n.1. The Congressman in *Davis* was not exercising the function of his rank to legislate, engage in congressional oversight, or perform constituent services. Rather, he was acting as a supervisor in an individual employment action by sending a staff assistant a direct letter that he would prefer to hire a man for the position. *Davis v. Passman* 442 U.S. 228, 230 n.3. (1979).

Plaintiff's case from any previously-implied *Bivens* context. MTD at 5.

Plaintiff next argues that it is irrelevant whether ADIC Johnson was only indirectly involved in the alleged actions here, because in the Section 1983 context courts have found indirect participation to be sufficient to state a claim. Opp. at 15–16. Plaintiff's argument hinges on a category error about the nature of the new context inquiry, which asks "whether a case presents a new *Bivens* context," *Abbasi*, 137 S. Ct. at 1859. Decisions in the Section 1983 context are necessarily irrelevant because they do not involve an inquiry into whether to create a cause of action in the first place. Conspicuously, Plaintiff cites only to Section 1983 cases and does not identify any times the Court has implied a *Bivens* remedy for the indirect conduct of a supervisor. Implying a *Bivens* remedy against a supervisor for the conduct of a subordinate (or even as Plaintiff asserts—for "direct[ing]" the conduct of a subordinate, Opp. at 16) would involve a new context. MTD at 6.

Relying solely on *Groh v. Ramirez*, 540 U.S. 551 (2004), Plaintiff contends that the Supreme Court has previously implied a Fourth Amendment *Bivens* remedy to a claim not involving a personal seizure. But *Groh* addressed only immunity and the underlying violation—not whether the plaintiff there had a cause of action to proceed under *Bivens*. *See Annappareddy v. Pascale*, 996 F.3d 120, 136 n.9 (4th Cir. 2021) ("[N]o party in *Groh* questioned the existence of a *Bivens* remedy, so the Court seemed only to assume—and was not called on to decide— that the plaintiffs should be able to proceed with that claim."). That is why *Abbasi* did not include *Groh* on its list of previously-implied *Bivens* actions that are relevant to the new context inquiry. *See Abbasi*, 137 S. Ct. at 1860. As shown in our initial memorandum, the injuries involved in those cases are fundamentally different than the injury alleged by Plaintiff. MTD at 6.

Plaintiff next offers two reasons for why the presence of a warrant does not make this case "meaningfully different" than *Bivens*. Opp. at 17. First, Plaintiff

3

points out that *Groh* involved a warrant, but that a *Bivens* claim was "allowed to proceed" because the search was conducted pursuant to an *invalid* warrant. *Id.* But as explained above, *Groh* did not decide whether a *Bivens* remedy should be implied. So it is irrelevant to the new context analysis. And regardless of whether Plaintiff challenges the validity of the warrant, its presence meaningfully distinguishes this case—and the kind of legal and factual questions that would need to be asked to establish liability—from *Bivens*. *See Ahmed v. Weyker*, 984 F.3d 564, 569 (8th Cir. 2020) (recognizing a new context where "proving the[] claims would require a different type of showing"); *see also Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) (describing the distinct standard for analyzing actions taken pursuant to a warrant). Second, Plaintiff argues that this Court should ignore the presence of a warrant because other defendants in this case argue that the warrant did not provide the legal justification for the particular search of Plaintiff's box. Opp. at 17–18. Fundamentally this distinction is irrelevant because this case would involve a new context whether Plaintiff challenged the validity of (1) an inventory search or (2) a warrant—neither of which were at issue in *Bivens*. *See* Second Amended Complaint, Dkt. 53 (SAC) ¶¶ 105–109 (invoking the standard for inventory searches). But, as Plaintiff explains and as is apparent from the SAC, his challenge is broader than the inventorying of the contents of his box: "[Plaintiff's] claim is premised on a course of conduct involving the unconstitutional seizure and search of his USPV box. . . ." Opp. at 19. This necessarily implicates the warrant that allowed for and resulted in the seizure of his box. Indeed, Plaintiff makes plain his intention to challenge the validity to the warrant through this suit. *See* Opp. at 17; SAC ¶¶ 75–95 (challenging the validity of the warrant).

      **B.**     **Special factors counsel against a *Bivens* remedy here.**

*Abbasi* instructs that "most often" it will be for Congress to decide "whether

4

to provide for a damages remedy." 137 S. Ct. at 1857. Plaintiff's various arguments ignore that teaching. This Court should decline to extend *Bivens* here.

1. <u>Plaintiff has alternative processes to seek relief.</u>

In our opening brief, we demonstrated that Plaintiff had other potential avenues to address the alleged constitutional concerns raised, and these processes are sufficient to preclude a new *Bivens* remedy. MTD at 8–9; *Mirmehdi v. United States*, 689 F.3d 975, 982 (9th Cir. 2012) ("If there is such an alternative remedy, our inquiry stops."). Those alternatives include Rule 41(g) and, critically, the congressionally-created Civil Asset Forfeiture Reform Act. MTD at 9. In response, Plaintiff argues neither of these avenues is "adequate" because they do not "provide incentives that deter unconstitutional conduct 'while also providing roughly similar compensation to victims of violations.'" Opp. at 18 (quoting *Minneci v. Pollard*, 565 U.S. 118, 130 (2012)). Plaintiff's argument misapprehends *Minneci* specifically and *Bivens* jurisprudence in general.

As an initial matter, Plaintiff's use of the term "adequate alternative remedy," Opp. at 18, and his proffered standard for measuring the sufficiency of an "alternative, existing *process*" misstate the legal inquiry in several important respects. *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (emphasis added). The correct inquiry focuses on the existence of a *process* or "avenue" for relief, not the availability of a particular remedy to a particular individual (or even class of individuals). *See* MTD at 8. Central to Plaintiff's argument is the notion that the processes available to him are insufficient because they do not "provide any disincentive to Defendant's unconstitutional conduct" or provide damages. Opp. at 19. But it is black letter law that alternative processes need not "punish" officers or offer monetary relief at all. *See Mirmehdi*, 689 F.3d at 982 (holding that the Immigration and Nationality Act and habeas relief provided alternative "remedial systems"); *W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1122, 1123

5

(9th Cir. 2009) (holding that the APA is an "alternative, existing process" despite not providing for "monetary damages"); *see also Abbasi*, 137 S. Ct. at 1865 ("alternative remedies available" could include "a writ of habeas corpus," an "injunction," or "some other form of equitable relief"). Even in situations where a plaintiff has no possibility of relief, courts still refrain from implying a remedy if other special factors are present. *See United States v. Stanley*, 483 U.S. 669, 683 (1987) ("[I]t is irrelevant to a 'special factors' analysis whether the laws currently on the books afford . . . an 'adequate' federal remedy.").

Indeed, the Supreme Court does not require that available processes provide similar compensation, or backwards looking relief, particularly where those processes are created at the federal level. *See, e.g.*, *Bush v. Lucas*, 462 U.S. 367, 388 (1983) (declining to create *Bivens* action even where existing federal processes "do not provide complete relief"). Plaintiff urges this Court to follow a standard he claims is set out in *Minneci*, 565 U.S. at 130. But *Minneci* does not state any standard for considering alternative *federal* avenues or processes. *Minneci* considered an alternative *state-law tort regime* against a private actor (which, of course, could not provide injunctive or forward-looking relief against the government and would not implicate the separation-of-powers concerns animating *Abbasi*). And in *Minneci*, the Court held that state tort law's deterrence and compensation against employees of a private BOP contractor were sufficient (but not required) to *deny* a *Bivens* remedy. 565 U.S. at 130. Its analysis is inapplicable to alternative federal avenues against the federal government.[2]

Although Plaintiff argues that the alternative processes available to him

---

[2] Relatedly, the Ninth Circuit's dicta about alternative processes in *Quintero Perez v. United States*, 8 F.4th 1095, 1105 (9th Cir. 2021) (quoting *Minneci*) does not apply here. *Quintero Perez* was a shooting case that, by its very nature, could only be remedied by an award for money damages after the fact or deterrence in the first instance. *Id.* Regardless, *Quintero Perez* ultimately declined to imply a *Bivens* remedy against a Border Patrol agent who shot and killed a Mexican national. *Id.* at 1099.

6

would "only" result in "simply the return of his property," Opp. at 19, *Abbasi* recognized that such an injunctive action could be an "alternative method[] of relief" which provides "faster and more direct route to relief than a suit for money damages." 137 S. Ct. at 1863. And, regardless, alternative processes need not be "perfectly congruent" with *Bivens*, *Minneci*, 565 U.S. at 129, and certainly need not "fully compensate" a plaintiff, *Schweiker v. Chilicky*, 487 U.S. 412, 428 (1988) ("agree[ing] that suffering months of delay in receiving the income . . . cannot be fully remedied by the 'belated restoration of back benefits,'" but declining to extend *Bivens* remedy where Congress did not). Indeed, *Chilicky* rejected an argument indistinguishable from the one Plaintiff urges here. *Compare id.* (refusing to supplement a congressional-created system which only offered the possibility of restoring benefits due) *with* Opp. at 19 (arguing that the return of his property would not fully compensate him).

                2.       <u>Other special factors counsel hesitation.</u>

We have explained why *Bivens* should not be extended to a claim against a high-level officer which seeks to alter an agency's policy. MTD at 9–10. In response, Plaintiff argues that ADIC Johnson's rank is irrelevant and Plaintiff does not challenge any agency policy. Opp. at 19. The second point, if true, directly contradicts the SAC, which repeatedly complains of a lack of agency policy. SAC ¶¶ 53(b), 97. The formulation of (or failure to formulate) agency policy is implicated by the complaint, even if it is not directly challenged. *See Abbasi*, 137 S. Ct. at 1860 ("Even if the action is confined to the conduct of a particular Executive Officer in a discrete instance, these claims would call into question the formulation and implementation of a general policy."). As to ADIC Johnson's rank, Plaintiff points back to his "new context" argument. The weakness of those points is addressed above, and they do not serve to rebut any of the arguments made in our opening memorandum. MTD at 9–10.

7

The likelihood that creating a *Bivens* cause of action in this context would cause congressionally-uninvited intrusion into Executive Branch functioning also counsels hesitation before extending *Bivens*. MTD at 10–12. Plaintiff disagrees, arguing that his claim is not intrusive or, at least, "no more complicated than whether the agents in *Bivens* had probable cause for their search, the ICE attorney in *Lanuza* forged a form, or the warrant in *Groh* was valid." Opp. at 20. Plaintiff is wrong. *Groh* is inapposite for the reasons noted above. Moreover, as is apparent from Plaintiff's own description of the standard for inventory searches, the legal questions involved in determining the permissibility of the search would be more complex than *Bivens* or *Lanuza*, potentially looking to agency policies and officer motives. SAC ¶¶ 105–109. In contrast, probable cause (relevant in *Bivens*) is "an objective standard," *D.C. v. Wesby*, 138 S. Ct. 577, 585, (2018), and in *Lanuza* the only question was the amount of damages. MTD at 12. And the Court's analysis would be even more complex here because the Court would be required to determine whether (accepting Plaintiff's conclusory allegation) ADIC Johnson's purported "knowing participation in, and/or approval or ratification of the operational plan" made her causally responsible for the actions of her subordinates. No such causal inquiry was necessary in either *Bivens* or *Lanuza,* while the need for just such an inquiry has been held to be a special factor counseling hesitation elsewhere. *See Ahmed*, 984 F.3d at 569 (discussing the mechanism of injury).

Congressional action in this arena also counsels hesitation. MTD at 12–13. Plaintiff urges that this Court should ignore Congress's activities related to those aggrieved by improper investigations because Congress's silence is not telling in "a case such as this" Opp. at 20. Plaintiff's conclusory assertion does nothing to further his argument and he makes no attempt to grapple with (or acknowledge) the precedent cited on this point in our initial memorandum. MTD at 12–13 (citing and discussing *Farah v. Weyker*, 926 F.3d 492, 502 (8th Cir. 2019) and *Abbasi*, 137 S.

8

Ct. at 1862). In sum, multiple special factors counsel hesitation before extending *Bivens* to the novel context of Plaintiff's case.

## II. ADIC Johnson is entitled to qualified immunity.

Plaintiff contends that ADIC Johnson is not entitled to qualified immunity because (1) courts are instructed to use "liberal pleading standards," (2) there is a causal connection between her conduct and the alleged violation, and (3) ADIC Johnson violated clearly established rights. Opp. at 21–25. But Plaintiff's argument misstates the relevant standards, relies on inapposite precedent, and ultimately fails to remedy the fatal defects inherent in the SAC.

As to the standard, Plaintiff suggests that it may not be "possible" to tell whether Plaintiff has stated a viable claim at this stage of the case. Opp. at 21–22. But there is no question that the Court can resolve qualified immunity now. ADIC Johnson has moved to dismiss the claims against her under Rule 12(b)(6). As a result, the Court can resolve the legal question of qualified immunity by taking as true Plaintiff's nonconclusory factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Either Plaintiff has pleaded facts sufficient to state a claim at this stage or he has not. *See Behrens v. Pelletier*, 516 U.S. 299, 306 (1996) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.").

As demonstrated in our opening brief, the SAC contains—at best—only conclusory allegations that ADIC Johnson personally participated in any alleged unconstitutional actions. MTD at 13–15. Plaintiff's opposition actually underscores this. Plaintiff focuses in on paragraph 21 of the SAC, Opp. at 22, which states that the operation in question "could only have occurred with Koons Johnson's knowing participation in, and/or approval or ratification of the operational plan . . . to seize and break open all of the USPV boxes, and rifle through their contents."

9

SAC ¶ 21. Paragraph 21 is conclusory and the kind of "formulaic recitation of the elements of a cause of action" the Supreme Court condemned in *Iqbal*. *See* 556 U.S. at 678, 681 (citation and internal quotations omitted). Plaintiff provides no well-pleaded support for the notion that the federal government could not have executed a warrant at a strip-mall storefront or broken open a safety deposit box without the personal participation of the Assistant Director in Charge of the FBI's Los Angeles Field Office (the office covers the City of Los Angeles and the surrounding area—home to many millions of residents). *See* Resident Agencies, https://www.fbi.gov/contact-us/field-offices/losangeles.

Furthermore, Plaintiff has not met his burden of showing that ADIC Johnson violated his clearly established rights. *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017) (noting that the burden is on the plaintiff to show the right was clearly established). In attempting to do so now, he relies on decisions which only speak at a impermissibly high level of generality (*e.g.*, *Franks v. Delaware*, 438 U.S. 154, 164–65 (1978); *Gete v. I.N.S.*, 121 F.3d 1285, 1297 (9th Cir. 1997)), are inherently incapable of clearly establishing the law (*Snitko v. United States*, No. 2:21-cv-04405-RGK-MAR, 2021 WL 3139707 (C.D. Cal. June 22, 2021)), or are readily distinguishable (*Florida v. Wells*, 495 U.S. 1, 4–5 (1990) (faulting the Florida Highway Patrol for a lack of policy about what to do with items found during an inventory search); *United States v. Feldman*, 788 F.2d 544, 553 (9th Cir. 1986) (finding the inventory of an impounded car to be lawful)).

Nor does Plaintiff warrant a third opportunity to amend his complaint. Opp. at 25. Plaintiff has not properly moved to file a Third Amended Complaint, *see* Rule 15(a), L.R. 15-1, nor explained how amendment would cure the defects meriting dismissal.

## CONCLUSION

ADIC Johnson's motion to dismiss should be granted.

Dated: October 4, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General, Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch, Civil Division

RICHARD MONTAGUE
Senior Trial Counsel, Torts Branch, Civil Division

PAUL C. QUAST
Trial Attorney, Torts Branch, Civil Division

/s/ *Joseph A. Gonzalez*
JOSEPH A. GONZALEZ
Trial Attorney, Torts Branch, Civil Division
U.S. DEPARTMENT OF JUSTICE
Ben Franklin Station
P.O. Box 7146
Washington, D.C. 20044-7146
(202) 598-3888 (phone)
(202) 616-4314 (fax)
joseph.a.gonzalez@usdoj.gov

Attorneys for Defendant KRISTI KOONS JOHNSON in her individual capacity

11