Jeffrey B. Isaacs (SBN 117104)
Jerome H. Friedberg (SBN 125663)
William Wargo (SBN 189987)
**ISAACS | FRIEDBERG LLP**
555 South Flower Street, Suite 4250
Los Angeles, California 90071
Phone:     (213) 929-5550
Facsimile: (213) 955-5794
Email:     *jisaacs@ifcounsel.com*
           *jfriedberg@ifcounsel.com*
           *wwargo@ifcounsel.com*

*Attorneys for Plaintiff Louis Loe*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIS LOE,<br><br>        Plaintiff,<br><br>    vs.<br><br>UNITED STATES OF AMERICA;<br>TRACY L. WILKISON; KRISTI<br>KOONS JOHNSON; JUSTIN<br>PALMERTON; KATHRYN E. BAILEY<br>DRESS; DEZMOND BEVERLY;<br>JESSIE MURRAY;<br>LYNNE K. ZELLHART; and<br>DOE UNIDENTIFIED FEDERAL LAW<br>ENFORCEMENT AGENTS 1-10,<br><br>        Defendants. | Case No. 2:21-cv-03348-RGK-MAR<br><br>Hon. R. Gary Klausner<br>Magistrate Judge Margo A. Rocconi<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT SPECIAL AGENTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>**Hearing:**<br>Date:        November 15, 2021<br>Time:        9:00 a.m.<br>Courtroom:   850<br><br>Complaint filed:  April 19, 2021<br>SAC filed:      August 24, 2021<br>Trial date:     None set |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................6

II.  RELEVANT FACTS. ..............................................................................8

    A.   U.S. Private Vaults. ......................................................................8

    B.   Plaintiff is a USPV Box Holder. ..................................................8

    C.   The Government Seizes and Searches All USPV Safe Deposit
       Boxes. ...........................................................................................9

    D.   The Government's False and Misleading Affidavit. ....................10

    E.   The Special Agent Defendants' Personal Involvement in the
       Violation of Plaintiff's Constitutional Rights. ...........................10

    F.   The Unconstitutional Administrative Forfeiture Proceeding......11

III. ARGUMENT. .......................................................................................11

    A.   Legal Standard. ..........................................................................11

    B.   Plaintiff Has More Than Adequately Pled His *Bivens* Claim..................12

       1.   This Action Does Not Arise in a "New Context.".........................13

       2.   "Special Factors" Do Not Counsel Against a Bivens
          Remedy. .....................................................................................17

    C.   Qualified Immunity Does Not Shield Defendants. ......................19

       1.   The Court Must Evaluate Claims of Qualified Immunity
          with Particular Care on a Motion to Dismiss Pursuant to
          Rule 12(b)(6). ............................................................................20

       2.   The SAC Alleges that Defendants Violated Clearly
          Established Constitutional Rights................................................21

          a.   The SAC alleges the Violation of Plaintiff's Clearly
             Established Fourth Amendment Rights.........................21

          b.   The SAC Alleges the Violation of Plaintiff's Clearly
             Established Fifth Amendment Rights. ...........................23

IV.  CONCLUSION. ...................................................................................24

**PLAINTIFF'S OPPOSITION TO DEFENDANTS SPECIAL AGENTS'
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

501514.1

1
2

# TABLE OF AUTHORITIES

3

**Page(s)**

4

**Cases**

5
6

*Ahmed v. Weyker,*
  984 F.3d 564 (8th Cir. 2020) ............................................................. 16

7
8

*Am. Humanist Ass'n v. United States,*
  63 F. Supp. 3d 1274 (D. Or. 2014) .................................................... 20

9
10

*Annappareddy v. Pascale,*
  996 F.3d 120 (4th Cir. 2021) ............................................................. 16

11
12

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ..................................................................... 12, 22

13
14

*Bivens v. Six Unknown Named Agents of the Federal Bureau of*
  *Narcotics,*
  403 U.S. 388 (1971) .................................................................... *passim*

15
16

*Brunoehler v. Tarwater,*
  743 F. App'x 740 (9th Cir. 2018) ...................................................... 13

17
18

*Cantu v. Moody,*
  933 F.3d 414 (5th Cir. 2019) ............................................................. 16

19
20

*Castellanos v. United States,*
  438 F. Supp. 3d 1120 (S.D. Cal. 2020) ............................................. 13

21

*Chappell v. Mandeville,*
  706 F.3d 1052 (9th Cir. 2013) ........................................................... 20

22
23

*Chavez v. United States,*
  683 F.3d 1102 (9th Cir. 2012) ........................................................... 14

24
25

*Davis v. Passman,*
  442 U.S. 228 (1979) ..................................................................... 13, 19

26
27
28

*Espinoza v. Harris,*
  No. ED CV 13-01124-AB, 2014 WL 12772276 (C.D. Cal. Nov. 5,
  2014) .................................................................................................. 18

3

**PLAINTIFF'S OPPOSITION TO DEFENDANTS SPECIAL AGENTS'
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

*Florida v. Wells*,
   495 U.S. 1 (1990)................................................................................21

*Franks v. Delaware*,
   438 U.S. 154 (1984)............................................................................21

*Gete v. I.N.S.*,
   21 F.3d 1285 (9th Cir. 1997) ...............................................................23

*Groh v. Ramirez*,
   540 U.S. 551 (2004)..............................................................14, 15, 19

*Groten v. California*,
   251 F.3d 844 (9th Cir. 2001) ...............................................................20

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982)............................................................................20

*Hernandez v. Mesa*,
   140 S. Ct. 735 (2020).........................................................................12

*Ioane v. Hodges*,
   939 F.3d 945 (9th Cir. 2018) .........................................................12, 14

*Keates v. Koile*,
   883 F.3d 1228 (9th Cir. 2018) ........................................................20, 21

*Kreines v. United States*,
   959 F.2d. 834 (9th Cir. 1992) ..............................................................15

*Lanuza v. Love*,
   899 F.3d 1019 (9th Cir. 2018) ....................................................12, 17, 19

*Minneci v. Pollard*,
   565 U.S. 118 (2012)............................................................................17

*Owens v. Kaiser Foundations Health Plan, Inc.*,
   244 F.3d 708 (9th Cir. 2001) ...............................................................24

*Pelletier v. Fed. Home Loan Bank of S.F.*,
   968 F.2d 865 (9th Cir. 1992) ...............................................................21

*Prado v. Perez*,
   451 F. Supp. 3d 306 (S.D.N.Y. 2020) ..................................................13

4

**PLAINTIFF'S OPPOSITION TO DEFENDANT SPECIAL AGENTS' MOTION
TO DISMISS SECOND AMENDED COMPLAINT**

*Saucier v. Katz*,
    533 U.S. 194 (2001).........................................................................20

*Silvas v. E\*Trade Mortg. Corp.*,
    514 F.3d 1001 (9th Cir. 2008) .......................................................11

*Snitko v. United States, et al.*,
    2:21-cv-04405-RGK-MAR, 2021 WL 3139707 (C.D. Cal. June 22,
    2021) .......................................................................................11, 23

*United States of America v. $250,000 in U.S. Currency*,
    2:21-cv-07188-CBM-MRW ...........................................................11

*United States v. Feldman*,
    788 F.2d 544 (9th Cir. 1986) .........................................................22

*United States v. SDI Future Health, Inc.*,
    568 F.3d 684 (9th Cir. 2009) .........................................................21

*Whren v. United States*,
    517 U.S. 806 (1996).......................................................................22

*Wong v. United States*,
    373 F.3d 952 (9th Cir. 2004) .........................................................20

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017)............................................................12, 13

**Statutes**

18 U.S.C.
    §§ 983 *et seq.* ...............................................................................17

**Rules**

Fed. R. Civ. P. 15 ..................................................................................24

Fed. R. Crim. P. 41 .........................................................................17, 18

5

**PLAINTIFF'S OPPOSITION TO DEFENDANT SPECIAL AGENTS' MOTION
TO DISMISS SECOND AMENDED COMPLAINT**

501514.1

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff Louis Loe ("**Plaintiff**") hereby opposes the Motion of Defendants Justin Palmerton ("**Palmerton**"), Kathryn E. Bailey Dress ("**Bailey Dress**"), Dezmond Beverly ("**Beverly**"), Jessie Murray ("**Murray**") and Lynne K. Zellhart ("**Zhellhart**") (collectively "**Defendants**" or "**Special Agent Defendants**"), in their individual capacities, to Dismiss the Second Amended Complaint (the "**Motion**").[1]

## I.   INTRODUCTION

Plaintiff brings this action against Defendants seeking redress for their unlawful and unconstitutional seizure, search and retention of Plaintiff's property in violation of Plaintiff's Fourth and Fifth Amendment rights.  Specifically, Plaintiff seeks damages against the Special Agent Defendants pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), in which the Supreme Court held that, "violation of [the Fourth Amendment's] command by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct," *id*. at 389, and that a plaintiff "is entitled to recover money damages for any injuries he has suffered as a result of the agent's violation of the Amendment." *Id*. at 397.

Plaintiff stored valuable personal property in safe deposit Box No. 2300, that he leased at U.S. Private Vault, Inc. ("**USPV**") in Beverly Hills, California, none of which is contraband or otherwise connected to criminal activity.  On or about March 22, 2021, Defendants unlawfully seized, broke open and then searched Plaintiff's safe deposit box and its contents, in violation of his Fourth Amendment rights.  Thereafter, Defendants unlawfully deprived Plaintiff of the use, benefit and enjoyment of his property, and are continuing to deprive him of the use, benefit and enjoyment of his property, in violation

---

[1] Defendants United States of America and Tracy L. Wilkinson and Kristi Koons Johnson ("**Koons Johnson**"), in their official capacities only, have moved to dismiss Plaintiff's First, Third and Fourth Causes of Action.  Dkt. 56.  Defendants Koons Johns has also moved to dismiss the *Bivens* claim against her in her individual capacity.  Dkt. 57. The Court took these motions under submission on October 14, 2021.  Dkt. 72.

1   of his Fourth and Fifth Amendment rights.

2          The Special Agent Defendants are FBI Agents who personally participated in the

3   deprivation of Plaintiff's well-established constitutional rights.  Defendants Palmerton,

4   Bailey Dress and Beverly personally participated in the breaking open and rifling

5   through the contents of safety deposit boxes at USPV, including Plaintiff's, without any

6   supporting probable cause.  Dkt. 53, ¶¶ 22-24.  Defendant Zellhart signed a false and

7   misleading affidavit that was submitted in support of the search and seizure warrants for

8   USPV.  *Id*. ¶ 26.  Defendant Murray personally participated in the continued unlawful

9   detention of Plaintiff's property by the government.  *Id*. ¶ 25.

10         Defendants move to dismiss based on two arguments.  First, they argue that

11  Plaintiff's *Bivens* claim is not cognizable because it is "new" and is "different in a

12  meaningful way" from previous *Bivens* cases decided by the Supreme Court, and that

13  "special factors" counsel against allowing Plaintiff to proceed with a supposedly novel

14  *Bivens* claim.  Second, they argue that they are entitled to qualified immunity because

15  Plaintiff's allegations supposedly do not identify "violation of a clearly established

16  right."  The Court should reject both arguments  Neither argument is of merit.

17         Construing all allegations and reasonable inferences in Plaintiffs' favor, Plaintiff is

18  entitled to damages because his *Bivens* claim does not arise in a "new context" at all,

19  given that constitutional claims for unlawful seizures have long been cognizable under

20  *Bivens*.  Indeed, a claim based on a seizure that violated the Fourth Amendment is at the

21  very core of *Bivens*, which itself involved a claim of an unconstitutional search and

22  seizure.  Defendants are simply wrong that the nature of Plaintiff's injury, or that the

23  search at issue involved a warrant, somehow place this action outside the scope of

24  *Biven*s.  Both the Supreme Court and the Ninth Circuit have sustained *Bivens* claims

25  where the claim is based on a search and seizure conducted pursuant to a warrant.

26         As regards Defendants' second argument, because all of the constitutional rights

27  they violated were clearly established, Defendants fail to show that they are entitled to

28  qualified immunity.  Any reasonable law enforcement official would have understood

**PLAINTIFF'S OPPOSITION TO DEFENDANT SPECIAL AGENTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

1  that Defendants' actions violated Plaintiff's constitutional rights against the seizure,

2  search and retention of his property without probable cause, based on a false and

3  misleading affidavit, and as part of a pretextual inventory search.

4         Accordingly, Defendants' Motion should be denied.

5                **II.    RELEVANT FACTS.**

6  **A.    <u>U.S. Private Vaults.</u>**

7         As described in the Second Amended Complaint ("**SAC**"), the operative

8  complaint in this action, USPV has operated a facility offering private safe deposit boxes

9  for rent to the public at 9182 West Olympic Boulevard in Beverly Hills, California for

10  the past decade.  Dkt. 53, ¶ 28.  There is nothing secretive or inherently illegal about the

11  business:  USPV was a member of the Beverly Hills Chamber of Commerce and

12  advertised by prominent store front signage and on-line through a website that provided

13  detailed information about the services it offered, including videos of actual customers

14  accessing their deposit boxes.  *Id.*

15         USPV housed several hundred safe deposit boxes of varying sizes, each secured

16  by its own keys.  *Id.*, ¶ 29.  The safe deposit boxes were physically grouped into separate

17  clusters of connected individual safe deposit boxes called "nests."  *Id.*  USPV leased

18  these boxes to the public under yearly leases and provided security and insurance for

19  their contents.  *Id.*  Many of USPV's customers lived in the vicinity and used its services

20  because it was conveniently located and/or because local banks did not have safe deposit

21  boxes available for lease.  *Id.*

22  **B.    <u>Plaintiff is a USPV Box Holder.</u>**

23         Plaintiff leased safe deposit Box No. 2300 at USPV.  *Id.*, ¶ 32.  Plaintiff possesses

24  the only two keys to the box and has maintained control over the box since

25  commencement of the lease.  *Id.*  Plaintiff was current on his lease payments at the time

26  his box was seized.  *Id.*, ¶ 33.  He has an expectation of privacy in the interior of the box

27  and its contents.  *Id.*  Plaintiff leased a box at USPV for the sake of convenience.  *Id.*, ¶

28  34.

**PLAINTIFF'S OPPOSITION TO DEFENDANT SPECIAL AGENTS' MOTION
TO DISMISS SECOND AMENDED COMPLAINT**

501514.1

1  Plaintiff is not an owner, officer, director, manager, supervisor, employee, or

2  representative of USPV, and is not associated with or a customer of the gold business

3  that is co-located with or adjacent to USPV.  *Id*., ¶ 35.  He was not aware of any criminal

4  activity occurring at or connected to USPV, and would not have leased a box, or

5  continued to lease a box, at USPV if he had become aware of any such activity.  *Id*.

6  Plaintiff's box contained sealed envelopes holding currency belonging to Plaintiff.

7  *Id*., ¶ 36.  The currency is Plaintiff's savings and for emergency purposes; it is not

8  contraband or the proceeds or evidence of illegal activity.  *Id*.

9  **C.    The Government Seizes and Searches All USPV Safe Deposit Boxes.**

10  Beginning early in the morning on Monday, March 22, 2021, government agents

11  executed a seizure warrant (the "**seizure warrant**") at USPV.  *Id*., ¶ 39.  The seizure

12  warrant stated that, "[t]he items to be seized are the following pieces of business

13  equipment," including "the nests of safety deposit boxes and keys," without any limit or

14  reference to particular safe deposit boxes or descriptions of particular nests.  *Id*., ¶ 40.

15  The seizure warrant further stated that:

16  ***This warrant does not authorize a criminal search or seizure of the***

17  ***contents of the safety deposit boxes***.  In seizing the nests of boxes,

18  agents shall follow their written inventory policies to protect their

19  agencies and the contents of the boxes.

20  *Id*., ¶ 40 (emphasis added).

21  Once the government had seized USPV, its agents proceeded to break into every

22  safe deposit box at the facility, including Plaintiff's, and emptied each box of its contents.

23  *Id*., ¶ 43.  They rifled through and inspected the contents of each box.  *Id*.  They

24  continued these inspections for each box even after they discovered information

25  sufficient to identify the box owner.  *Id*.

26  The search of the USPV safe deposit boxes, including that of Plaintiff's, was not

27  an inventory search.  *Id*., ¶ 45.  As the locked safe deposit boxes were impervious to

28  tampering, the government had no cause to conduct an inventory search to prevent loss

9

**PLAINTIFF'S OPPOSITION TO DEFENDANT SPECIAL AGENTS' MOTION
TO DISMISS SECOND AMENDED COMPLAINT**

501514.1

1    or accusations of theft by forcibly opening the boxes.  *Id.*

2    **D.**    **The Government's False and Misleading Affidavit.**

3         On or about August 5, 2021, the government unsealed in full the Affidavit that it

4    has filed to obtain the search and seizure warrants for USPV (a single affidavit was

5    submitted in support of both warrants).  *Id.*, ¶ 75.  The Affidavit was relied upon by the

6    Magistrate Judge in issuing the warrants.  *Id.*

7         The Affidavit provided no probable cause whatsoever to seize and search

8    Plaintiff's USPV box.  *Id.*, ¶ 76.  In fact, despite being over 90-pages in length, the

9    Affidavit made no reference to Plaintiff, his USPV box, the contents of his USPV box, or

10   the nest of safe deposit boxes that included his box.  *Id.*  Nor did the Affidavit provide

11   any information whatsoever about any particular box or nests of boxes at USPV.  *Id.*

12        The Affidavit was materially false and misleading in several significant respects.

13   First, it created the false and misleading impression that the government needed to search

14   Plaintiff's box (and that of hundreds of other USPV customers) to be able to inventory

15   Plaintiff's property and return it to him.  In fact, however, it was always the

16   government's plan and intent to use the search as a pretext to criminally investigate

17   Plaintiff (and hundreds of other USPV customers), and to seek to administratively forfeit

18   his property (and that of hundreds of other USPV customers) without a legitimate legal

19   or factual basis for doing so.  *Id.*, ¶¶ 78-84.

20        Second, the Affidavit falsely and recklessly asserted that hundreds of USPV

21   customers, which necessarily included Plaintiff, are engaged in criminal conduct of a

22   felonious nature, omitting the material fact that USPV's customers include retirees,

23   professionals and other entirely law-abiding citizens who stored their property at USPV

24   for the sake of convenience and security.  *Id.*, ¶¶ 86-95.

25   **E.**    **The Special Agent Defendants' Personal Involvement in the Violation of**

26         **Plaintiff's Constitutional Rights.**

27        Defendant Zellhart signed the false and misleading Affidavit just discussed.

28   Moreover, she made false and misleading statements in the Affidavit knowingly, or with

10

**PLAINTIFF'S OPPOSITION TO DEFENDANT SPECIAL AGENTS' MOTION
TO DISMISS SECOND AMENDED COMPLAINT**

1  reckless disregard for their truth or falsity.  *Id.* ¶ 26.

2  Defendants Baily Dress, Beverly and Palmerton personally participated in the

3  seizure, opening and search of the contents of safety deposit boxes at USPV, including

4  Plaintiff's box without probable cause.  *Id.* ¶¶ 22-24.

5  Defendant Murray has personally participated in the continued unlawful detention

6  of Plaintiff's property by the government.  *Id.* ¶ 25.

7  **F.   The Unconstitutional Administrative Forfeiture Proceeding.**

8  On May 20, 2021, the FBI initiated an administrative forfeiture proceeding (the

9  "**AFP**") by issuing a "Notice of Seizure of Property and Initiation of Administrative

10  Forfeiture Proceedings," which attached a list of assets seized from USPV safe deposit

11  boxes that the government sought to forfeit (together, the "**FBI Notice**").  *Id.*, ¶ 58.  The

12  FBI Notice included a description of the contents of Plaintiff's box.  *Id.*, ¶ 60.  To avoid

13  having his property declared forfeited without further process, Plaintiff filed a claim in

14  the AFP on June 16, 2021.  *Id.*, ¶ 67.

15  On June 22, 2021, in the related case of *Snitko v. United States, et al.*, 2:21-cv-

16  04405-RGK-MAR, 2021 WL 3139707 (C.D. Cal. June 22, 2021) ("***Snitko***"), this Court

17  ruled that the FBI Notice, and the individualized notices of forfeiture the FBI had sent to

18  certain USPV box holders, are deficient and unconstitutional as violating claimants'

19  rights to due process of law.  *Id.,* ¶ 69.

20  On September 22, 2021, the United States filed a "Complaint for Forfeiture"

21  against Plaintiff's property in the Central District of California, *United States of*

22  *America v. $250,000 in U.S. Currency*, 2:21-cv-07188-CBM-MRW.

23  **III.   ARGUMENT.**

24  **A.   Legal Standard.**

25  On a motion to dismiss, the Court takes all well-pleaded allegations as true,

26  construing them "in the light most favorable to the nonmoving party."  *Silvas v. E*Trade*

27  *Mortg. Corp.*, 514 F.3d 1001, 1003 (9th Cir. 2008).  The court then determines whether

28  those factual allegations and corresponding reasonable inferences "plausibly give rise to

11

**PLAINTIFF'S OPPOSITION TO DEFENDANT SPECIAL AGENTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

501514.1

1    an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has

2    facial plausibility when the plaintiff pleads factual content that allows the court to draw

3    the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at

4    678.

5    **B.    Plaintiff Has More Than Adequately Pled His *Bivens* Claim.**

6           A *Bivens* claim is an implied right of action for damages against a government

7    official alleged to have violated an individual's constitutional rights. *See Ziglar v.*

8    *Abbasi*, 137 S. Ct. 1843, 1854 (2017). *Bivens* itself concerned a violation of the Fourth

9    Amendment by federal officers. In *Bivens*, the Supreme Court held that it was

10   "hardly . . . a surprising proposition" that a plaintiff who was arrested and whose

11   property was searched without probable cause by agents of the Federal Bureau of

12   Narcotics, acting under a claim of federal authority, was entitled to recover damages for

13   violation of his Fourth Amendment rights. *Id*. at 389, 395. Here, as in *Bivens*, Plaintiff

14   has pleaded specific facts to state such a claim.

15          In their Motion, Defendants challenge whether a *Bivens* remedy is available for

16   the alleged violation of Plaintiff's constitutional rights. The Supreme Court requires a

17   "two-step inquiry" for determining whether a *Bivens* remedy is available. *Hernandez v.*

18   *Mesa,* 140 S. Ct. 735, 743 (2020). The Court "first inquire[s] whether the request

19   involves a claim that arises in a 'new context' or involves a 'new category of defendant'"

20   from previous *Bevins* claims recognized by the Supreme Court. *Id.* (quoting

21   *Correctional Services Corp.* v. *Malesko*, 534 U.S. 61, 68 (2001)). If the answer to this

22   question is no, then a *Bivens* remedy is available. *See Abbasi,* 137 S. Ct. at 1859-60;

23   *Ioane v. Hodges*, 939 F.3d 945, 951-52 (9th Cir. 2018). But if the answer is yes, then the

24   Court must determine whether "special factors counsel hesitation" absent affirmative

25   action by Congress creating a right of action. *Id*. at 1860. If "special factors" do not

26   counsel hesitation, a *Bivens* remedy is available; if they do so counsel, then the remedy is

27   not available. *Id.*; *see generally Lanuza v. Love*, 899 F.3d 1019, 1023-24 (9th Cir. 2018)

28   (outlining Supreme Court test for determining whether a *Bivens* remedy is available).

**PLAINTIFF'S OPPOSITION TO DEFENDANT SPECIAL AGENTS' MOTION
TO DISMISS SECOND AMENDED COMPLAINT**

501514.1

1    The Fourth and Fifth Amendment violations Plaintiff alleges do not present a new

2    context.  To the contrary they fall decidedly within the core of *Bivens*.  And even if they

3    do not, a *Bivens* remedy is still available, unless other "special factors" counsel against

4    providing the remedy.  *Id*. at 1860.  As discussed below, none of the so-called "special

5    factors" Defendants seek to assert counsel against applying *Bivens* here.

6           ***1.    This Action Does Not Arise in a "New Context."***

7           Plaintiff's claim falls within the core of *Bivens*, 403 U.S. at 395.  S*ee Abbasi*,

8    137 S. Ct. at 1856 (recognizing "continued force" and "necessity" of *Bivens* "in the

9    search-and-seizure context in which it arose").  To arise in a "new context," the claim

10   must be "meaningful[ly]" different from prior *Bivens* cases.  *See Abbasi*, 137 S. Ct. at

11   1859.  The Supreme Court "does not require . . . perfect factual symmetry." *Brunoehler*

12   *v. Tarwater*, 743 F. App'x 740, 744 (9th Cir. 2018); *Abbasi*, 137 S. Ct. at 1865

13   ("[T]rivial" differences "will not suffice.").  While all claims contain differences, not all

14   differences are "meaningful" in this context.  *See Castellanos v. United States*, 438 F.

15   Supp. 3d 1120, 1129 (S.D. Cal. 2020) (relevant inquiry is whether case "fundamentally

16   differ[s]" from prior *Bivens* cases); *Prado v. Perez*, 451 F. Supp. 3d 306, 315 (S.D.N.Y.

17   2020) (declining to find new context in case involving arrest and search by ICE officer).

18          The constitutional rights at issue here—protections long afforded by the Fourth

19   and Fifth Amendments—are the same rights protected by *Bivens* and its Supreme Court

20   progeny.  *See Bivens*, 403 U.S. at 397 ("Having concluded that petitioner's complaint

21   states a cause of action under the Fourth Amendment . . . we hold that petitioner is

22   entitled to recover money damages for any injuries he has suffered as a result of the

23   agents' violation of the Amendment"); *Davis v. Passman*, 442 U.S. 228, 245, 249 (1979)

24   (damages remedy under *Bivens* allowed for violation of Fifth Amendment due process

25   right).  Indeed, *Bivens* itself recognized a damages remedy for an unconstitutional search

26   or seizure under the Fourth Amendment, the very claim that Plaintiff brings here.

27   Notably, following *Bivens*, numerous courts, including in the Ninth Circuit, have

28   sustained damages actions for Fourth Amendment violations.  *See*, *e.g.*, *Brunoehler*, 743

13

**PLAINTIFF'S OPPOSITION TO DEFENDANT SPECIAL AGENTS' MOTION
TO DISMISS SECOND AMENDED COMPLAINT**

F. App'x at 744 (permitting claim for search and seizure arising from purported securities violations); *Ioane*, 939 F.3d at 952 (sustaining *Bivens* claim against IRS agent for Fourth Amendment violation); *Chavez v. United States*, 683 F.3d 1102, 1111-12 (9th Cir. 2012) (permitting claim against Border Patrol supervisor for unlawful traffic stops).

Defendants nonetheless mistakenly argue that there are three "meaningful" differences between Plaintiff's claim and *Bivens* claims recognized by the Supreme Court and the Ninth Circuit citing:  (1) the type of injury; (2) that the search and seizure of Plaintiff's property was not "warrantless"; and (3) that the search and seizure of Plaintiff's property occurred during a pretextual "inventory" search.  Dkt. 63 at 5-6. These supposed differences, however, are of no moment as a matter of law, and do not place Plaintiff's claim outside the scope of *Bivens*.

**Plaintiff's Injury**.  Defendants wrongly argues that this case is different from *Bivens* in a meaningful sense because Plaintiff himself was not "personally seized or arrested." Dkt. 63 at 5.  A *Bivens* claim for Fourth Amendment violations, however, is not limited to injuries arising from personal seizure, and thus it is unsurprising that Defendants can cite no case in support of this argument.  Indeed, there is no suggestion in *Bivens* itself that the plaintiff's cognizable injury was limited to his personal seizure, and not the unlawful search of his apartment. *See Bivens*, 403 U.S. at 392 ("the Fourth Amendment operates as a limitation upon the exercise of federal power regardless of whether the State in whose jurisdiction that power is exercised would prohibit or penalize the identical act if engaged in by a private citizen.  It guarantees to citizens of the United States the absolute right to be free from unreasonable searches and seizures carried out by virtue of federal authority. And where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief") (internal quotations and citation omitted).

In fact, in *Groh v. Ramirez*, 540 U.S. 551, 553-563 (2004), the Supreme Court upheld a *Bivens* claim where the plaintiff's property had been searched pursuant to an invalid search warrant.  There was no allegation in *Groh* that the plaintiff had been

**PLAINTIFF'S OPPOSITION TO DEFENDANT SPECIAL AGENTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

1    personally seized.  *Id.* at 555.  Indeed, the plaintiff was not even personally present when

2    the search at issue in that case occurred.  *Id*.  The Supreme Court sustained the *Bivens*

3    claim, finding that the search violated the Fourth Amendment.  *Id.*

4          In her Reply in support of her motion to dismiss, Koons Johnson, represented

5    by the same Department of Justice attorney as the Special Agent Defendants, argued

6    that the Court should disregard *Groh* because the federal government defendant did

7    not contest that *Bivens* could be applied to the unlawful search and seizure of

8    property.  Dkt. no. 68 at 3.  Notably, however, Koons Johnson does not dispute—

9    because she cannot—that in *Groh* the Supreme Court found that the search at issue

10   was (1) a constitutional violation that allowed for relief under *Bivens*, and (2)

11   defendant was not entitled to qualified immunity.  *Groh,* 540 U.S. at 554-565.  If the

12   Supreme Court had viewed the case as being outside the scope of the *Bivens* remedy

13   it had created, there would have been no need for the Court to reach the issue of

14   whether there had been a constitutional violation or whether qualified immunity

15   applied.  *Id*.

16         **Seizure and Search Pursuant to Warrant**.  Nor is there any merit to

17   Defendants' contention that this case falls outside the scope of *Bivens* because it involves

18   a seizure and search pursuant to a warrant, whereas the search in *Bivens* was warrantless.

19   Dkt. 63 at 5.  The Supreme Court's decision in *Groh* makes plain that *Bivens* applies to

20   unlawful searches, whether pursuant to a warrant or not.  In *Groh*, the plaintiff was

21   allowed to proceed with a *Bivens* claim premised on the allegation that the search of his

22   house was conducted pursuant to an invalid warrant.  540 U.S. at 556-57.  Similarly, in

23   *Kreines v. United States*, 959 F.2d 834 (9th Cir. 1992), the Ninth Circuit affirmed a jury

24   verdict against officers brought under *Bivens*, which arose from the execution of a search

25   warrant, and the search of the plaintiff's residence.  *Id*. at 836, 839 ("the record contains

26   ample evidence from which from which the jury could have properly concluded that [the

27   federal agents] violated [plaintiff's] constitutional rights when they continued the search

28   of her quarters").

**PLAINTIFF'S OPPOSITION TO DEFENDANT SPECIAL AGENTS' MOTION
TO DISMISS SECOND AMENDED COMPLAINT**

501514.1

1    Here, Plaintiff has expressly alleged that the USPV search and seizure warrants

2    were invalid because they were based on an Affidavit loaded with materially false and

3    misleading statements.  Plaintiff thus has stated a *Bivens* claim.  Dkt. 53, ¶¶ 75-95.

4    The cases relied on by Defendants—none of which are Supreme Court or Ninth

5    Circuit decisions—are distinguishable.  Dkt. 63 at 5-6.  The Fourth Circuit's decision in

6    *Annappareddy v. Pascale*, 996 F.3d 120 (4th Cir. 2021), relied on by Defendants for the

7    proposition that *Bivens* does not apply to searches pursuant to a warrant is inapposite.  In

8    that case the Fourth Circuit found "it significant" that the plaintiff sought to bring a claim

9    based on the search of the plaintiff's corporation, rather than his personal property.  *Id.* at

10   136-137.  The court found there were no cases allowing for a *Bivens* claim based on acts

11   against a corporate entity.  *Id.*  Here, by contrast, Plaintiff alleges that his personal

12   property was unlawfully searched and seized by Defendants.  Dkt. 53, ¶¶ 3-4, 33, 36, 43,

13   45.

14   *Ahmed v. Weyker*, 984 F.3d 564 (8th Cir. 2020), also relied on by Defendants,

15   actually supports Plaintiff's claim.  In that case, the Eight Circuit found that the key

16   feature of *Bivens* is that it involved "physical invasions" of the plaintiff's Fourth

17   Amendment protected privacy interest, which is precisely what happened here.  *Id.* at

18   568.

19   Finally, in *Cantu v. Moody*, 933 F.3d 414 (5th Cir. 2019), the claim at issue did

20   not involve a search or seizure in violation of the plaintiff's Fourth Amendment protected

21   privacy interest.  In the words of the Fifth Circuit, it involved  a "malicious-prosecution-

22   type-claim," which is nothing like Plaintiff's claim here.  *Id.*  at 422.

23   In sum, Plaintiff's well-pleaded allegations establish that his claim falls

24   comfortably within the scope of *Bivens*.

25   **Inventory Search.**  Without citation to any authority, Defendants claim that

26   Plaintiff's allegation that the "inventory search" conducted by Defendants at USPV was

27   pretextual places his claim outside the scope of *Bivens* because it supposedly involves a

28   "large scale government conspiracy," making it more "complicated" than *Bivens*.

16

**PLAINTIFF'S OPPOSITION TO DEFENDANT SPECIAL AGENTS' MOTION
TO DISMISS SECOND AMENDED COMPLAINT**

501514.1

Dkt. 63 at 6.  There is, however, nothing complicated about Plaintiff's claim, nor does it involve a "large scale conspiracy."  Instead, Plaintiff straightforwardly alleges that Defendants conducted a search of USPV safety deposit boxes, including Plaintiff's, without the required probable cause, and then performed an "inventory search" of those boxes even though there was manifestly no need to do so.  Dkt. 53, ¶¶ 43-45.

### 2.    *"Special Factors" Do Not Counsel Against a Bivens Remedy.*

As discussed, there is no need for the Court to consider Defendants' "special factors" argument because Plaintiff's claim does not present a new context.  However, even if the Court were to conclude that Plaintiff's claim arises in a new context, no "special factors" counsel withholding a *Bivens* remedy.

**An Adequate Alternative Remedy Is Not Available**.  Defendant argues that the Court should dismiss Plaintiff's *Bivens* claim because "alternative remedies" are available to Plaintiff.  Dkt. 63 at 7.  Not so.

In the Ninth Circuit, the availability of alternative remedies can be a "special factor" when determining whether to afford a *Bivens* remedy.  *Lanuza*, 899 F.3d at 1032. However, alternative remedies weigh against application of *Bivens* only when they are "adequate" to protect the constitutional interests at issue, that is, when they provide incentives that deter unconstitutional conduct "while also providing roughly similar compensation to victims of violations."  *Minneci v. Pollard*, 565 U.S. 118, 130 (2012). As a *Bivens* remedy protects a plaintiff's interest in holding to account federal officers who violate plaintiff's constitutional rights, alternative remedies that protect other interests are inadequate, regardless of the quantity or magnitude of the relief they may afford.  *See Lanuza*, 899 F.3d at 1032.

Defendant suggests two potential alternative remedies available to Plaintiff: (1) Federal Rule of Criminal Procedure 41(g) ("**Rule 41(g)**"); and (2) the Civil Asset Forfeiture Reform Act, 18 U.S.C. section 983, *et seq*.  ("**CAFRA**").  Dkt. 63 at 7-8.  But neither is an adequate alternative remedy here.

The argument that Rule 41(g) is an adequate alternative remedy cannot be meant

17

**PLAINTIFF'S OPPOSITION TO DEFENDANT SPECIAL AGENTS' MOTION**
**TO DISMISS SECOND AMENDED COMPLAINT**

1   seriously; considering that the United States has moved to dismiss Plaintiff's cause of

2   action under Rule 41(g) on the ground that such relief is not available.  Dkt. 56 at 6-9.

3          Moreover, as Defendants expressly recognize, whether under Rule41(g) or

4   CAFRA, the only remedy the laws afford Plaintiff is limited to the return of his property.

5   Dkt 63 at 7-8.  But Plaintiff does not merely seek the return of his property; he seeks

6   damages for the violation of his constitutional rights, including punitive damages, Dkt.

7   53, Prayer For Relief, ¶¶ B-C, which neither Rule 41(g) nor CAFRA provide for.

8          The return of Plaintiff's property, while perhaps relevant to the amount of

9   Plaintiff's damages, would not serve to fully compensate him.  Nor would it provide any

10  disincentive to Defendants' unconstitutional conduct.  Money damages for violation of a

11  constitutional right is not a substitute for a claim for return of property, even where the

12  constitutional claim is premised on the unlawful seizure of that property.  *See Espinoza v.*

13  *Harris*, No. ED CV 13-01124-AB, 2014 WL 12772276, at *3, (C.D. Cal. Nov. 5, 2014)

14  (holding that claim for money damages claim for violation of constitutional rights arising

15  from seizure of currency is not identical to a request for return of the property: "[w]hile

16  perhaps seemingly subtle, this is a distinction with a difference, and Plaintiff's

17  constitutional causes of action are not transformed into a challenge of the forfeiture

18  proceeding simply because Plaintiff alleges economic damages to the tune of $12,000 in

19  lost currency") (underscoring in original).

20         **No Other Factors Counsel Against *Bivens* Liability.**   Defendants further argue

21  that Plaintiff seeks to hold them responsible for a "particular policy."  Dkt. 63 at 17.

22  Nonsense.

23         Plaintiff does not base his *Bivens* claims on a "policy."  His claim is premised on a

24  course of conduct involving the unconstitutional seizure and search of his USPV box and

25  retention of his personal property, and does not challenge any general policies of the FBI

26  or the federal government.

27         Defendants also argue that Plaintiff's *Bivens* claim would "cause disruptive

28  intrusion" into the Executive Branch.  Dkt. 63 at 10.  As an example of a supposedly

18

**PLAINTIFF'S OPPOSITION TO DEFENDANT SPECIAL AGENTS' MOTION
TO DISMISS SECOND AMENDED COMPLAINT**

"simple case," Defendant points to the Ninth Circuit's decision in *Lanuza*, 899 F.3d at 1022-23, in which a *Bivens* claim was allowed to proceed against a senior ICE attorney for forging an immigration form that resulted in a deportation. Defendants contend that in contrast Plaintiff's claim somehow promises to be complex. Dkt. 63 at 10-11. This supposed "lack of simplicity," according to Defendants, counsels against extending *Bivens* to them. *Id*.

Defendants' argument is meritless, Contrary to Defendants' unfounded speculation there is nothing complex about Plaintiff's *Bivens* claim, and it certainly presents no more complexity than the facts did in *Bivens* itself, *Lanuza*, or *Groh*. At issue here is whether Defendants acted in violation of Plaintiff's constitutional rights when they seized and searched Plaintiff's box at USPV and thereafter retained its contents for going on seven months. The determination of that question is no more complicated than whether the agents in *Bivens* had probable cause for their search, the ICE attorney in *Lanuza* forged a form, or the warrant in *Groh* was valid. Tellingly, Defendant does not cite a single case (and Plaintiff's counsel is unaware of any) where a court has held that the validity of such conduct is too complex to be determined under *Bivens*.

Finally, Defendants argue, with no cited legal support, that Congress's failure to provide a statutory damages remedy for Fourth Amendment violations is "more than inadvertent," and thus counsels against extending *Bivens* liability to Defendants. Dkt. 63 at 11. But as the Supreme Court has made clear repeatedly, the absence of any explicit declaration by Congress that it intended to provide a cause of action is not a reason to bar a *Bivens* remedy in a case such as this. *See Bivens*, 403 U.S. at 397; *Davis*, 442 U.S. at 246-47; *Carlson*, 446 U.S. at 19.

Thus, even if the Court were to reach the issue, no special factors counsel against extending *Bivens* to Defendants.

## C. <u>Qualified Immunity Does Not Shield Defendants.</u>

Defendants argue that Plaintiff's *Bivens* claim should be dismissed on qualified

19

1  immunity grounds because any alleged conduct did not violate clearly established
2  constitutional rights.  Dkt. 63 at 13.  Defendants could not be more wrong.

3          ***1.***    ***The Court Must Evaluate Claims of Qualified Immunity with Particular***
4                  ***Care on a Motion to Dismiss Pursuant to Rule 12(b)(6).***

5          Government officials are not entitled to qualified immunity when their conduct
6  violates "clearly established statutory or constitutional rights of which a reasonable
7  person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In
8  determining whether qualified immunity applies to a particular defendant, the Court
9  considers and must determine whether (1) the plaintiff has shown a constitutional or
10  statutory right has been violated, and (2) whether the right at issue was "clearly
11  established" at the time of the alleged violation.  *See Saucier v. Katz*, 533 U.S. 194, 201
12  (2001).  The second prong of this analysis must be "undertaken in light of the specific
13  context of the case, not as a broad general proposition." *Id.*  Thus, "[t]he relevant,
14  dispositive inquiry in determining whether a right is clearly established is whether it
15  would be clear to a reasonable [official] that his conduct was unlawful in the situation he
16  confronted," *id.*, which turns on "whether 'a reasonable officer would have had fair
17  notice that [the action] was unlawful . . . .'" *Chappell v. Mandeville*, 706 F.3d 1052,
18  1056-57 (9th Cir. 2013) (citation omitted).  "The fact that the action in question has not
19  previously been declared unlawful does not require a finding of qualified immunity; even
20  in novel circumstances officials can be on notice that their conduct violates the
21  Constitution." *Am. Humanist Ass'n v. United States*, 63 F. Supp. 3d 1274, 1286 (D. Or.
22  2014).

23          As the Ninth Circuit has counseled, although qualified immunity issues should be
24  decided early in a case if possible, "[d]etermining claims of qualified immunity at the
25  motion-to-dismiss stage raises special problems for legal decision making." *Keates v.*
26  *Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018); *see also Wong v. United States*, 373 F.3d
27  952, 957 (9th Cir. 2004) (decision to raise a qualified immunity defense on a motion to
28  dismiss is "not a wise choice in every case"); *Groten v. California*, 251 F.3d 844, 851

**PLAINTIFF'S OPPOSITION TO DEFENDANT SPECIAL AGENTS' MOTION**
**TO DISMISS SECOND AMENDED COMPLAINT**

1  (9th Cir. 2001) ("[A] Rule 12(b)(6) dismissal is not appropriate unless we can determine,
2  based on the complaint itself, that qualified immunity applies.").

3      The Court must consider "whether the complaint alleges sufficient facts, taken as
4  true, to support the claim that the officials' conduct violated clearly established
5  constitutional rights of which a reasonable [official] would be aware 'in light of the
6  specific context of the case.'" *Keates*, 883 F.3d at 1235 (citation omitted).  "If, liberally
7  construed, [a complaint contains] even one allegation of a harmful act that would
8  constitute a violation of a clearly established constitutional right," the plaintiff "is entitled
9  to go forward" with the claim.  *Pelletier v. Fed. Home Loan Bank of S.F.*, 968 F.2d 865,
10  872 (9th Cir. 1992).

11      **2.   *The SAC Alleges that Defendants Violated Clearly Established***
12           ***Constitutional Rights.***

13         **a.   The SAC alleges the Violation of Plaintiff's Clearly**
14              **Established Fourth Amendment Rights.**

15      The SAC describes how, among other things, there was no probable cause to
16  search Plaintiff's USPV box; the Affidavit submitted to the Magistrate Judge in support
17  of the USPV warrants was based on materially false and misleading statements; and
18  Defendants purported "inventory" search was, in fact, nothing more than a pretext for
19  conducting an investigatory search, the true purpose of which was to further Defendants'
20  indiscriminate criminal investigation of USPV box holders.  Dtk. 53, ¶¶ 118-127.  These
21  allegations all identify violations of fundamental, clearly established Fourth Amendment
22  rights.  *See, e.g., United States v. SDI Future Health, Inc.*, 568 F.3d 684, 702 (9th Cir.
23  2009) ("Under the Fourth Amendment . . . there [must] be probable cause to seize the
24  particular thing[s] named in the warrant"); *Franks v. Delaware*, 438 U.S. 154, 164-65
25  (1984) (holding that warrant based on deliberately false or misleading information
26  material to the issue of probable cause is invalid, in whole or in part); *Florida v. Wells*,
27  495 U.S. 1, 4-5 (1990) ("the opening of containers found during inventory searches is
28  based on the principle that an inventory search must not be a ruse for a general

21
**PLAINTIFF'S OPPOSITION TO DEFENDANT SPECIAL AGENTS' MOTION
TO DISMISS SECOND AMENDED COMPLAINT**
501514.1

1    rummaging in order to discover incriminating evidence); *United States v. Feldman*, 788
2    F.2d 544, 553 (9th Cir. 1986) ("An inventory search will not be sustained where the
3    court believed that the officers were searching for incriminating evidence").

4        Defendants argue that it is not clearly established that the USPV warrant was an
5    "invalid" basis to seize and search the contents of Plaintiff's USPV box because it
6    identifies a "nest of safety deposit boxes" as subject to seizure. Dkt. 63 at 13. But this
7    argument ignores the fact that the warrant itself stated that, "[t]his warrant does not
8    authorize a criminal search or seizure of the contents of the safety deposit boxes."
9    Dkt. 53, ¶ 41. Similarly, Defendants ignore that the Affidavit stated that, "[t]he warrants
10   authorize seizure of the nest of boxes themselves, <u>not</u> their contents." *Id*., ¶ 80 (emphasis
11   in original). Thus, on its face the USPV warrant provided no basis for seizure of
12   Plaintiff's property.

13       Likewise, Defendants' defense of the inventory search is unavailing at the
14   pleading stage. Dkt. 63 at 17-18. The "inventory search" was unlawful because the
15   seizure of the box and its contents was without probable cause in the first instance. *See*
16   *Whren v. United States*, 517 U.S. 806, 811 n. 1 (1996) ("An inventory search is the
17   search of property *lawfully* seized and detained") (emphasis added). It was also unlawful
18   because it was entirely pretextual. If the government's concern was to prevent losses and
19   avoid accusations of theft, there would have been no reason to forcibly open and rifle
20   through hundreds of safe deposit boxes that were otherwise impervious to tampering.
21   Dkt. 53, ¶ 45.

22       Defendant Zellhart claims that she, in particular, is entitled to qualified immunity
23   because Plaintiff supposedly has not sufficiently alleged that the Affidavit she signed was
24   false and misleading. Dkt. 63 at 15. But her argument is unavailing. The SAC sets forth
25   detailed allegations describing how her Affidavit is materially false and misleading,
26   identifying numerous material falsehoods and omissions. Dkt. 53, ¶¶ 78-95. The SAC
27   manifestly states a plausible claim for relief against Defendant Zellhart under *Iqbal*. 556
28   U.S. at 679.

22

**PLAINTIFF'S OPPOSITION TO DEFENDANT SPECIAL AGENTS' MOTION
TO DISMISS SECOND AMENDED COMPLAINT**

1      **b.      The SAC Alleges the Violation of Plaintiff's Clearly**

2              **Established Fifth Amendment Rights.**

3              The FBI's initiation of an administrative forfeiture proceeding against Plaintiff's

4      property was in violation of his due process property rights because the government

5      failed to provide plaintiff adequate notice of the factual and legal grounds on which it

6      sought to forfeit his property.  *See Gete v. I.N.S.*, 21 F.3d 1285, 1297 (9th Cir. 1997)

7      (holding that procedural due process includes the right to "sufficient notice concerning

8      the factual and legal bases" for deprivation of property rights).

9              Defendants' claim that the government's post-seizure forfeiture proceedings are

10     not "clearly unconstitutional" is unpersuasive.  In fact, this Court has already held, in

11     *Snitko*, 2021 WL 3139797, that those proceedings failed to provide constitutionally

12     required notice.  Defendant seeks to dismiss this ruling on that ground that the decision

13     of a district court cannot establish the "clearly-established law threshold."  Dkt. 63 at 19.

14     But this Court did not invent the basis for its decision.  To the contrary, as the Court's

15     ruling makes plain, its decision was based on well-established precent.  *See Snitko*, 2021

16     WL 31397808, at *2 (citing *Gete*, 21 F.3d 1285, and *Al Haramain Foundation, Inc. v.*

17     *U.S. Dept. of Treasury*, 686 F.3d 965 (2012)).  And, in any event, it hardly states a

18     remarkable or controversial proposition of constitutional law: forfeiture requires timely

19     and fair notice.

20     //

21     //

22     //

23     //

24     //

25     //

26     //

27     //

28     //

23

**PLAINTIFF'S OPPOSITION TO DEFENDANT SPECIAL AGENTS' MOTION**
**TO DISMISS SECOND AMENDED COMPLAINT**

501514.1

## IV.    CONCLUSION.

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss. If the Court is inclined to grant it, however, Plaintiff requests leave to file an amended complaint.  *See* Fed. R. Civ. P. 15(a)(2); *Owens v. Kaiser Foundations Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001).

Respectfully submitted,

DATED:  October 18, 2021          **ISAACS | FRIEDBERG LLP**

Jeffrey B. Isaacs, Esq.
William A. Wargo, Esq.

*Attorneys for Plaintiff Louis Loe*

24