BRIAN M. BOYNTON
Acting Assistant Attorney General, Civil Division
C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch, Civil Division
RICHARD MONTAGUE
Senior Trial Counsel, Torts Branch, Civil Division
JOSEPH A. GONZALEZ
Trial Attorney, Torts Branch, Civil Division
    U.S. DEPARTMENT OF JUSTICE
    Ben Franklin Station
    P.O. Box 7146
    Washington, D.C. 20044-7146
    (202) 598-3888 (phone)
    joseph.a.gonzalez@usdoj.gov

Attorneys for Defendants Justin Palmerton,
Kathryn E. Bailey Dress, Dezmond Beverly,
Jessie Murray, and Lynne K. Zellhart

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| LOUIS LOE,<br>    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, ET AL.,<br>    Defendants. | Case No. 2:21-cv-03348-RGK-MAR<br><br>**Special Agents' Reply in Support of Their Motion To Dismiss The Second Amended Complaint**<br><br>Date:    November 15, 2021<br>Time:    9:00 a.m.<br>Courtroom: 850, the Honorable<br>    R. Gary Klausner |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iii

INTRODUCTION ............................................................................................... 1

ARGUMENT ....................................................................................................... 1

I.   This Court should reject Plaintiff's invitation to extend *Bivens* ........................ 1

     A.   Plaintiff's *Bivens* claims present a new context. ...................................... 1

     B.   Special factors counsel against a *Bivens* remedy here. ............................ 4

          1.   Plaintiff has alternative processes to seek relief. ............................ 4

          2.   Other special factors counsel hesitation. ....................................... 7

II.   The Special Agents are entitled to qualified immunity. ..................................... 8

CONCLUSION ................................................................................................. 10

# TABLE OF AUTHORITIES

**Federal Cases**

*Ahmed v. Weyker*,
  984 F.3d 564 (8th Cir. 2020)...................................................................3

*Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*,
  686 F.3d 965 (9th Cir. 2012).................................................................10

*Annappareddy v. Pascale*,
  996 F.3d 120 (4th Cir. 2021)............................................................... 2, 3

*Armstrong v. Asselin*,
  734 F.3d 984 (9th Cir. 2013)...................................................................8

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
  403 U.S. 388 (1971).......................................................................... 1, 2, 4

*Bush v. Lucas*,
  462 U.S. 367 (1983)..................................................................................6

*Cantu v. Moody*,
  933 F.3d 414 (5th Cir. 2019)...................................................................3

*Carlson v. Green*,
  446 U.S. 14 (1980)....................................................................................2

*Davis v. Passman*,
  442 U.S. 228 (1979)..................................................................................1

*District of Columbia v. Wesby*,
  138 S. Ct. 577 (2018)..............................................................................10

*Farah v. Weyker*,
  926 F.3d 492 (8th Cir. 2019).......................................................... 4, 7, 8

*Fazaga v. Fed. Bureau of Investigation*,
  965 F.3d 1015 (9th Cir. 2020).............................................................. 2, 6

*Fed. Bureau of Investigation v. Fazaga*,
  No. 20-828, 2021 WL 2301971 (June 7, 2021) ...................................................... 2
*Finkelstein v. Jangla*,
  816 F. App'x 98 (9th Cir. 2020) ............................................................................... 9
*Gete v. INS*,
  121 F.3d 1285 (9th Cir.1997) ................................................................................ 10
*Groh v. Ramirez*,
  540 U.S. 551 (2004) ................................................................................................ 2
*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) .............................................................................................. 10
*Hernandez v. Mesa*,
  140 S. Ct. 735 (2020) .............................................................................................. 1
*Messerschmidt v. Millender*,
  565 U.S. 535 (2012) ................................................................................................ 3
*Minneci v. Pollard*,
  565 U.S. 118 (2012) ............................................................................................ 5, 6
*Mirmehdi v. United States*,
  689 F.3d 975 (9th Cir. 2012) ............................................................................... 4, 5
*Schweiker v. Chilicky*,
  487 U.S. 412 (1988) ................................................................................................ 6
*United States v. Bowhay*,
  992 F.2d 229 (9th Cir. 1993) ................................................................................... 9
*United States v. Gaubert*,
  499 U.S. 315 (1991) ................................................................................................ 8
*United States v. Lopez*,
  547 F.3d 364 (2d Cir. 2008) .................................................................................... 9

*United States v. Stanley*,
 483 U.S. 669 (1987)......................................................................................................5

*W. Radio Servs. Co. v. U.S. Forest Serv.*,
 578 F.3d 1116 (9th Cir. 2009)......................................................................................5

*Wilkie v. Robbins*,
 551 U.S. 537 (2007)......................................................................................................5

*Ziglar v. Abbasi*,
 137 S. Ct. 1843 (2017)..........................................................................................passim

# INTRODUCTION

The Special Agent Defendants have demonstrated that this Court should refrain from creating the *Bivens* remedy Plaintiff seeks and that, in any event, they are entitled to qualified immunity. Plaintiff responds by asking this Court to shoehorn the facts of this case into previously-implied *Bivens* contexts, ignore binding precedent, and engage in rank speculation to fill in what is lacking in the Second Amended Complaint. Plaintiff's claims against the Special Agents should be dismissed with prejudice.

# ARGUMENT

## I. This Court should reject Plaintiff's invitation to extend *Bivens*.

### A. Plaintiff's *Bivens* claims present a new context.

In their opening brief, the Special Agents established that Plaintiff's purported *Bivens* claims "involve a new context, *i.e.*, one that is meaningfully different." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020); *see* Special Agents Mot. to Dismiss, Dkt. 63 (MTD) at 5–7. Plaintiff contends otherwise because his claims involve the same amendments as *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) and *Davis v. Passman*, 442 U.S. 228 (1979). Pl.'s Opp'n, Dkt. 73 (Opp'n) at 13–14. But this reasoning rests on a superficial analysis that the Supreme Court has explicitly rejected. "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743. The new context determination depends on substantive distinctions of which the Supreme Court has given a non-exclusive list. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017). At least three of those are present here. MTD at 4–6. Plaintiff's attempts to minimize these differences betrays a fundamental misunderstanding of the new context analysis.

**Injury.** Plaintiff argues that it makes no difference that *Bivens* involved a

personal seizure—an arrest—in a home whereas his alleged Fourth Amendment injury is confined to a property interest in a safe-deposit in a strip mall. Opp'n at 14–15. Rather, according to Plaintiff, *Bivens*'s recognition of the "right to be free from unreasonable searches and seizures" is sufficient to situate this case in the same context as *Bivens*. 403 U.S. at 392. This reasoning disregards that "the availability of *Bivens* actions for new claims and contexts" is now "severely restricted." *Fazaga v. Fed. Bureau of Investigation*, 965 F.3d 1015, 1055 (9th Cir. 2020) (citing *Abbasi*, 137 S. Ct. at 1856–57), *cert. granted sub nom. Fed. Bureau of Investigation v. Fazaga*, No. 20-828, 2021 WL 2301971 (June 7, 2021). Thus, regardless of *Bivens*'s language from 1971, the U.S. Supreme Court now only recognizes cases with the same contexts as either *Bivens*, *Davis*, or *Carlson v. Green*, 446 U.S. 14 (1980) as valid *Bivens* claims. As such, "even a modest extension" of those cases to new facts "is still an extension," *Abbasi*, 137 S. Ct. at 1864, and therefore a new context. This means that Plaintiff, not the Special Agents as Plaintiff mistakenly suggests, must identify authority that establishes sufficient similarity between *Bivens* and his case. He fails to do so.

   Instead, Plaintiff cites to *Groh v. Ramirez*, 540 U.S. 551 (2004), for the proposition that the Supreme Court has previously implied a Fourth Amendment *Bivens* remedy to a claim not involving a personal seizure. Opp'n at 14–15. But in so doing he ignores a key distinction. *Groh* addressed only immunity and the underlying violation—not whether the plaintiff there had a cause of action to proceed under *Bivens*. In *Annappareddy v. Pascale*, 996 F.3d 120 (4th Cir. 2021) the Fourth Circuit made this same observation: "no party in *Groh* questioned the existence of a *Bivens* remedy, so the Court seemed only to assume—and was not called on to decide—that the plaintiffs should be able to proceed with that claim." *Id.* at 136 n.9. That is why *Abbasi* did not include *Groh* on its list of previously-implied *Bivens* actions that are relevant to the new context inquiry. *See Abbasi*, 137 S. Ct. at 1860. As shown in our initial memorandum, the injuries involved in those

2

cases are fundamentally different than the injury alleged by Plaintiff. MTD at 6.

**Warrant.** Plaintiff next offers two reasons for why the presence of a warrant does not make this case "meaningfully different" from *Bivens*. Opp'n at 15. First, Plaintiff points out that *Groh* involved a warrant and that a *Bivens* claim was "allowed to proceed" because the search was conducted pursuant to an *invalid* warrant. *Id.* But *Groh* did not decide whether a *Bivens* remedy should be implied. So it is irrelevant to the new context analysis. And regardless of whether Plaintiff challenges the validity of the warrant, its presence meaningfully distinguishes this case—and the kind of legal and factual questions that would need to be asked to establish liability—from *Bivens*. *See Ahmed v. Weyker*, 984 F.3d 564, 569 (8th Cir. 2020) (recognizing a new context where "proving the[] claims would require a different type of showing"); *see also Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) (describing standard for analyzing actions taken pursuant to a warrant).

Second, Plaintiff argues that the cases the Special Agents cite are distinguishable. Opp'n at 16. This misapprehends the new context analysis. The fact that the search warrant in *Annappareddy*, unlike this case, "ran against the corporate entity [] and not the plaintiff himself," 996 F.3d at 136–37, does not render the case inapposite. The court still found a new context because the claim "involve[d] searches and a seizure conducted *with* a warrant," which is precisely the situation in this case. *Id.* at 135 (emphasis in original). The same reasoning also demonstrates the new context findings in *Cantu v. Moody*, 933 F.3d 414 (5th Cir. 2019) and *Ahmed* apply here as well. Regardless of other distinguishing features, both courts found a new context because, just as with this case, constructing an affidavit and executing a warrant involve intermediate steps and actors unlike the direct causal chain in *Bivens*. *See Ahmed*, 984 F.3d at 569; *Cantu*, 933 F.3d at 423.

**Inventory Search.** Finally, Plaintiff argues that the Special Agents have not established a meaningful difference from *Bivens* because there is "nothing complicated" about his inventory search claim. Opp'n at 16–17. However,

3

Plaintiff's framing of the issue side steps the proper analysis. The consideration is not whether the claim is complicated *in itself*, but rather whether it is complicated *in comparison* to *Bivens* such that a meaningful difference is revealed. This comparison exposes a multitude of meaningful differences.

*Bivens* concerned a warrantless search from "stem to stern" of the plaintiff's home and his subsequent arrest. 403 U.S. at 389. Here, Plaintiff alleges that the "search and seizure of USPV was a large-scale operation, involving dozens of FBI and other federal law enforcement agents" that took place over multiple days. Second Am. Compl. (SAC) ¶¶ 21, 46. If even a case presenting just a "modest extension" of the three *Bivens* cases is "still an extension" into a new context, the world of difference present here necessarily establishes a new context as well. *Abbasi*, 137 S. Ct. at 1864. The allegation that Special Agent Zellhart, working with prosecutors, "made materially false and misleading statements to the Magistrate Judge who issued the . . . seizure warrant" underscores the point. SAC ¶ 119. "This indirect mechanism of injury bears little resemblance to the straightforward claims from *Bivens*." *Farah v. Weyker*, 926 F.3d 492, 499 (8th Cir. 2019). Thus, regardless of whether a comparison focuses on the relative overall complexity or a specific feature (like the warrant process), the salient point remains undisturbed—the *Bivens* claim here is meaningfully different.

### B. Special factors counsel against a *Bivens* remedy here.

*Abbasi* instructs that "most often" it will be for Congress to decide "whether to provide for a damages remedy." 137 S. Ct. at 1857. Plaintiff's various arguments ignore that teaching. This Court should decline to extend *Bivens* here.

#### 1. Plaintiff has alternative processes to seek relief.

In our opening brief, we demonstrated that Plaintiff had other potential avenues to address the alleged constitutional concerns raised, and these processes are sufficient to preclude a new *Bivens* remedy. MTD at 7–8; *Mirmehdi v. United States*, 689 F.3d 975, 982 (9th Cir. 2012) ("If there is such an alternative remedy,

our inquiry stops."). Those alternatives include Rule 41(g) and, critically, the congressionally-created Civil Asset Forfeiture Reform Act. MTD at 8. In response, Plaintiff argues neither of these avenues are "adequate" because they do not "provide incentives that deter unconstitutional conduct 'while also providing roughly similar compensation to victims of violations.'" Opp'n at 17 (quoting *Minneci v. Pollard*, 565 U.S. 118, 130 (2012)). Plaintiff's argument misapprehends *Minneci* specifically and *Bivens* jurisprudence in general.

      Plaintiff's use of the term "adequate alternative remedy," Opp'n at 17, and his proffered standard for measuring the sufficiency of an "alternative, existing *process*" misstate the legal inquiry in several important respects. *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (emphasis added). The correct inquiry focuses on the existence of a *process* or "avenue" for relief, not the availability of a particular remedy to a particular individual (or even class of individuals). *See* MTD at 8. Central to Plaintiff's argument is the notion that the processes available to him are insufficient because they do not "provide any disincentive to Defendants' unconstitutional conduct" or provide damages. Opp'n at 18. But it is black letter law that alternative processes need not "punish" officers or offer monetary relief at all. *See Mirmehdi*, 689 F.3d at 982; *W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1122, 1123 (9th Cir. 2009) (holding that the APA is an "alternative, existing process" despite not providing for "monetary damages"); *see also Abbasi*, 137 S. Ct. at 1865 ("alternative remedies available" could include "a writ of habeas corpus," an "injunction," or "some other form of equitable relief"). Even in situations where a plaintiff has no possibility of relief, courts still refrain from implying a remedy if other special factors are present. *See United States v. Stanley*, 483 U.S. 669, 683 (1987) ("[I]t is irrelevant to a 'special factors' analysis whether the laws currently on the books afford . . . an 'adequate' federal remedy.").

      Indeed, the Supreme Court does not require that available processes provide similar compensation, or backwards looking relief, particularly where those

processes are created at the federal level. *See, e.g.*, *Bush v. Lucas*, 462 U.S. 367, 388 (1983) (declining to create *Bivens* action even where existing federal processes "do not provide complete relief"). Plaintiff urges this Court to follow a standard he claims is set out in *Minneci*, 565 U.S. at 130. But *Minneci* does not state any standard for considering alternative *federal* avenues or processes. *Minneci* considered an alternative *state-law tort regime* against a private actor (which, of course, could not provide injunctive or forward-looking relief against the government). And in *Minneci*, the Court held that state tort law's deterrence and compensation against employees of a private BOP contractor were sufficient (but not required) to *deny* a *Bivens* remedy. 565 U.S. at 130. Its analysis is inapplicable to alternative federal avenues against the federal government.[1]

Although Plaintiff argues that the alternative processes available to him would "only" result in simply "the return of his property," Opp'n at 18, *Abbasi* recognized that such an injunctive action could be an "alternative method[] of relief" which provides "faster and more direct route to relief than a suit for money damages." 137 S. Ct. at 1863. And, regardless, alternative processes need not be "perfectly congruent" with *Bivens*, *Minneci*, 565 U.S. at 129, and certainly need not "fully compensate" a plaintiff, *Schweiker v. Chilicky*, 487 U.S. 412, 428 (1988) ("agree[ing] that suffering months of delay in receiving the income . . . cannot be fully remedied by the 'belated restoration of back benefits,'" but declining to extend *Bivens* remedy). Indeed, *Chilicky* rejected an argument indistinguishable from the one Plaintiff urges here. *Compare id.* (refusing to supplement a congressional-created system which only offered the possibility of restoring

---

[1] Relatedly, the Ninth Circuit's dicta about alternative processes in *Quintero Perez v. United States*, 8 F.4th 1095, 1105 (9th Cir. 2021) (quoting *Minneci*) does not apply here. *Quintero Perez* involved a shooting, which is an injury that, by its very nature, could be remedied only by an award for money damages. *Id.* Regardless, *Quintero Perez* ultimately declined to imply a *Bivens* remedy against a Border Patrol agent who shot and killed a Mexican national. *Id.* at 1099.

6

benefits due) *with* Opp'n at 18 (arguing that the return of his property would not fully compensate him).

### 2. Other special factors counsel hesitation.

The Special Agents established in their motion that Plaintiff's *Bivens* claims counseled hesitation for two other related reasons. The claims would "call into question the formulation and implementation of a general policy," *Abbasi*, 137 S. Ct. at 1860, and risk "burdening and interfering with the executive branch's investigative and prosecutorial functions," *Farah*, 926 F.3d at 500. *See* MTD at 8–11. Plaintiff responds with a common (but mistaken) maneuver. He characterizes his claims broadly so that he can gloss over the presence of these special factors. *See, e.g.*, Opp'n at 18 (Plaintiff's *Bivens* "claim is premised on a course of conduct involving the unconstitutional seizure and search of his USPV box[.]"). As a result, he contends that he "does not challenge any general policies" and "there is nothing complex about Plaintiff's *Bivens* claim[.]" Opp'n at 18, 19.

Plaintiff's approach focuses on the actions at issue, yet mistakenly disregards the discussions and decision making that lead to those actions. Thus, while Plaintiff may see the search warrant claim as just concerning a discrete "course of conduct," Opp'n at 18, he disregards that it also "invite[s] a wide-ranging inquiry into the evidence available to investigators" that is the province of the Executive. *Farah*, 926 F.3d at 500 (denying *Bivens* claim premised on allegedly invalid search warrant). Similarly, Plaintiff disregards that "[e]ven if the action is confined to … a discrete instance" the conduct can still "call into question the formulation and implementation of a general policy." *Abbasi*, 137 S. Ct. at 1860. Plaintiff's own allegations demonstrate that is the case here. He alleges that the inventory search was not "conducted pursuant to established and standardized agency policies and procedures," SAC ¶ 124, and that the FBI has "no established or standardized policies, procedures, or process" for claiming property, *Id.* at ¶ 53(b). That ignores that agencies sometimes make policy on a case-by-case basis.

7

*United States v. Gaubert*, 499 U.S. 315, 324 (1991). And in any event, such allegations of inadequate policy necessarily "require inquiry and discovery into the whole course of the discussions and deliberations that led to the policies and governmental acts being challenged." *Abbasi*, 137 S. Ct. at 1860.

This renders Plaintiff's claims far more complicated than the claims in *Lanuza* and *Groh*. *See* Opp'n at 19. *Lanuza* was no more than a damages-only case and *Groh* did not even evaluate special factors. Here, by contrast, not only is an in-depth special factors analysis required, but also that analysis reveals the presence of hallmark special factors that counsel hesitation.

Finally, Congressional action in this arena also counsels hesitation. MTD at 12–13. Plaintiff urges that this Court should ignore Congress's activities related to those aggrieved by improper investigations because Congress's silence is not telling in "a case such as this" Opp'n at 19. Plaintiff's conclusory assertion does nothing to further his argument and he makes no attempt to grapple with (or acknowledge) the precedent cited on this point in our initial memorandum. MTD at 12–13 (discussing *Farah*, 926 F.3d at 502 and *Abbasi*, 137 S. Ct. at 1862).

## II. The Special Agents are entitled to qualified immunity.

**Fourth Amendment.** We established in our opening brief that the USPV warrant was valid on its face for a variety of reasons. MTD at 13–14. This included that it identified the nests of safety deposit boxes as subject to seizure and provided a wide-ranging and factually detailed explanation about how the nests were evidence and instrumentalities of USPV's criminality. *Id.* We also cited to the rule that a magistrate judge's "prior review of proposed searches [] supports qualified immunity [thereby] shielding police officers from liability[.]" *Armstrong v. Asselin*, 734 F.3d 984, 991 (9th Cir. 2013). Plaintiff does not address these points.

Instead, he argues that because the warrant explicitly states that it "does not authorize a criminal search or seizure of the contents of the safety deposit boxes" any seizure of the contents was unlawful. Opp'n at 22 (quoting SAC ¶ 22). This

ignores that the warrant also states that "[i]n *seizing* the nests of safety deposit boxes . . . agents shall inspect the contents of the boxes in an effort to identify their owners in order to notify them so that they can claim their property[.]" Warrant 3:1-3 (emphasis added), Dkt. 63-3. The Affidavit reinforces the point, stating that by "*seizing* the nests of safety deposit boxes, the government will necessarily end up with custody of what is inside those boxes initially." Warrant Aff. ¶ 108:16-19 (emphasis added), Dkt. 63-4. Thus, although the warrant does not authorize a *criminal* seizure of the contents, it did recognize that the government would come into custody of those contents and have to undertake a process to notify owners. Plaintiff's refusal to participate in that process, which no agent could have known beforehand, does not transform the execution of the warrant into an unlawful act.

Plaintiff's claim that the inventory search was unlawful because it was allegedly pretextual also falters. Opp'n at 22. The warrant set forth the basic parameters of the inventory search, which the government indisputably did in fact perform according to standardized procedures. Plaintiff's belief that the performance of these procedures was motivated by pretextual reasons is beside the point. "[M]otivation [] cannot reasonably disqualify an inventory search that is performed under standardized procedures for legitimate custodial purposes." *United States v. Lopez*, 547 F.3d 364, 372 (2d Cir. 2008) (citations omitted); *see United States v. Bowhay*, 992 F.2d 229, 231 (9th Cir. 1993) ("[T]he presence of an investigative motive [did] not invalidate the inventory search.").

Plaintiff also asserts that he has alleged a judicial deception claim because the SAC contains "detailed allegations" which describe how the "Affidavit is materially false and misleading." Opp'n at 22. But Plaintiff provides no more than this assertion. Plaintiff fails to explain *how* his allegations plausibly allege a "deliberate falsehood or reckless disregard for the truth" and *how* "but for the dishonesty, the [issuing of the warrant] would not have occurred." *Finkelstein v. Jangla*, 816 F. App'x 98, 101 (9th Cir. 2020) (citation and quotations omitted).

9

Just as fatal, Plaintiff so too fails to address the Special Agents' in-depth explanation of how the allegations fall short of a viable claim. MTD at 15–16.

Finally, the entirety of the Plaintiff's Fourth Amendment argument suffers from an overarching defect. Plaintiff still has not "identified a single precedent—much less a controlling case or robust consensus of cases—finding a Fourth Amendment violation 'under similar circumstances.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 591 (2018). The unique circumstances of this case foreclose the possibility. As a result, no clearly established law "of which a reasonable person would have known" provided notice that the particular conduct at issue here was unlawful. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

**Fifth Amendment.** Plaintiff declines to address the bulk of the Special Agents' arguments with respect to the Due Process claim. *See* MTD at 18–20. Instead, Plaintiff argues that the "FBI's initiation of an administrative forfeiture proceeding against Plaintiff's property was in violation of his due process property rights[.]" Opp'n at 23. This assertion has no bearing on the liability of the Special Agents. None of them are alleged to have initiated the proceeding. *See* SAC ¶¶ 22–26. But even if that were not the case, Plaintiff still fails to show how the two cases[2] he relies upon to assert a constitutional violation also meet the similar circumstances requirement mandated by the clearly established standard. This case, unlike those, concerns anonymously held safe-deposit boxes, where the claimant refused to participate in the initial claim process, and where the claimant focuses on the initiation of the forfeiture proceeding (as opposed to the notice).

## CONCLUSION

The Special Agents' motion to dismiss should be granted.

---

[2] *Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 986-87 (9th Cir. 2012) (non-profit challenging its designation as a terrorist organization by the government); *Gete v. INS,* 121 F.3d 1285, 1287–91 (9th Cir.1997) (seizure of motor vehicles from aliens whose identities were known to the government).

10

Dated: November 1, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General, Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch, Civil Division

RICHARD MONTAGUE
Senior Trial Counsel, Torts Branch, Civil Division

/s/ *Joseph A. Gonzalez*
JOSEPH A. GONZALEZ
Trial Attorney, Torts Branch, Civil Division
U.S. DEPARTMENT OF JUSTICE
Ben Franklin Station
P.O. Box 7146
Washington, D.C. 20044-7146
(202) 598-3888 (phone)
(202) 616-4314 (fax)
joseph.a.gonzalez@usdoj.gov

Attorneys for Defendants Justin Palmerton, Kathryn E. Bailey Dress, Dezmond Beverly, Jessie Murray, and Lynne K. Zellhart