UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03348-RGK-MAR | Date | December 7, 2021 |
|---|---|---|---|
| Title | *Louis Loe v. United States of America, et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Jennifer Graciano | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: | |
| Not Present | | Not Present | |

**Proceedings:**   **(IN CHAMBERS) Order Re: Defendants' Motions to Dismiss [DEs 56, 57, and 63]**

### I.   INTRODUCTION

On August 24, 2021, an individual proceeding under the fictitious name Louis Loe ("Plaintiff") [1] filed a Second Amended Complaint ("SAC") against: (1) the United States of America; (2) Tracy L. Wilkison in her official capacity as Acting United States Attorney for the Central District of California; and (3) Kristi Koons Johnson ("Johnson"), individually and in her official capacity as the Assistant Director in Charge ("ADIC") of the Los Angeles Field Office of the FBI (collectively, "the Government"). Plaintiff also sued several Special Agents in their individual capacity: (1) FBI Special Agents Justin Palmerton, Kathryn E. Baily Dress, and Lynne E. Zellhart; (2) Federal Law Enforcement Agent Dezmond Beverly; and (3) FBI Supervisory Special Agent Jessie Murray (collectively, the "Special Agent Defendants," and together with the Government and Johnson, "Defendants"). Plaintiff's claims arise from the Government's allegedly unlawful seizure and search of Plaintiff's personal property which was located in safe deposit box number 2300 on the premises of non-party United States Private Vaults.

Presently before the Court are three motions: (1) the Government's Motion to Dismiss ("Government Motion"); (2) Defendant Johnson's Motion to Dismiss ("Johnson Motion"); and (3) the Special Agent Defendants' Motion to Dismiss ("Special Agent Motion"). (ECF Nos. 56, 57, and 63.). For the reasons that follow, the Court **GRANTS** Defendants' Motions.

---

[1] Plaintiff filed this lawsuit under a fictitious name, and makes no representations about Plaintiff's gender, to protect herself or himself from the risk of criminal prosecution, harassment, retaliation, and embarrassment. (SAC ¶ 1 n. 1, ECF No. 53.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03348-RGK-MAR | Date | December 7, 2021 |
|---|---|---|---|
| Title | *Louis Loe v. United States of America, et al.* | | |

## II.  FACTUAL BACKGROUND

Unless otherwise noted, the following facts are alleged in the SAC:

Non-party United States Private Vaults ("USPV") offers its customers a unique service. The company, located at a strip mall in Beverly Hills, California, rents safe deposit boxes. But USPV's offerings, designed to provide customers with increased privacy and security, differ from those available at a typical bank in several material ways. First, USPV does not keep keys to its customers' boxes. Customers maintain all keys to their boxes and can access the vault containing their boxes only through a biometric data reader. Second, USPV offers 24/7 monitoring by the ADT security company. Finally, USPV offers insurance for each safe deposit box, which banks do not offer.

USPV has several hundred safe deposit boxes which it rents to hundreds of different customers. Plaintiff rented box number 2300, where Plaintiff kept property—namely, currency.

USPV's business model attracted the Government's attention. A grand jury indicted USPV for conspiring with its customers to launder money, distribute drugs, and structure financial transactions to avoid currency reporting requirements. (Gov't Mot. at 2, ECF No. 56.) From March 22 through March 26, 2021, federal law enforcement agents acting at the direction of the United States Attorney's Office ("USAO") for the Central District of California conducted a search of USPV and seized every safe deposit box contained in the facility, including box number 2300. Plaintiff alleges that the affidavit used to obtain the search and seizure warrant was obtained via false and misleading statements by Special Agent Zellhart.

On March 23, 2021, Plaintiff's counsel visited USPV and attempted to ascertain whether there was a warrant authorizing the search and seizure operation for Plaintiff's boxes and, if so, to request a copy of it. The Assistant U.S. Attorney in charge of the investigation refused to provide a copy unless counsel disclosed Plaintiff's name, which was at the time unknown to USPV and the Government.

Plaintiff alleges, based on communications with the Assistant U.S. Attorney, that the Government always intended to refuse to return the property of any USPV box holder who refused to waive his or her Fifth Amendment right against self-incrimination. Specifically, Plaintiff alleges that the Government intended to subject every box holder that came forward to claim his or her property to a criminal investigation. Only if Plaintiff (and other box owners) could convince the USAO that they legally obtained their property would the Government return it to them. Thus, for Plaintiff to vindicate his or her Fourth Amendment right to be free from unreasonable searches and seizures, Plaintiff would have to forego his or her Fifth Amendment right against self-incrimination.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03348-RGK-MAR | Date | December 7, 2021 |
|---|---|---|---|
| Title | *Louis Loe v. United States of America, et al.* | | |

Since March 26, 2021, USPV's Beverly Hills storefront has been closed. Affixed to the door is a sign that bears the seal of the FBI and states: "Please go to the following link to initiate a claim for your US Private Vaults box: **forms.fbi.gov/uspvclaims**[.]" (SAC ¶ 50, ECF No. 53.) The website, in turn, states: "To make a claim for property stored at U.S. Private Vaults in Beverly Hills, California, please provide the following information. An FBI agent will contact you for additional details." Below this statement is a form that requires a claimant to provide his or her first name, middle name, last name, and "best contact number." (*Id.* ¶ 51.)

Around May 20, 2021, the FBI began administrative forfeiture proceedings against the boxes it had seized, requiring that claimants file a claim by June 24. Plaintiff filed a Declaration and Claim with the FBI on June 16, 2021. On June 22, 2021, in a related case, this Court found that the FBI's administrative forfeiture notices were unconstitutional due to the FBI's failure to disclose: (1) the factual basis for seizing the individual boxes; and (2) the specific statutory provision alleged against box holders. *See Snitko v. United States, et al.*, 2:21-cv-04405-RGK-MAR, 2021 WL 3139707 (C.D.Cal. June 22, 2021). After the Court's order, Plaintiff sent a "Demand for Immediate Return of Property," to which the Government has not responded.

To date, Plaintiff's property remains in the Government's possession. The currency that was located in Plaintiff's box is the subject of a judicial forfeiture proceeding currently pending before this Court. *See United States v. $250,000 in U.S. Currency*, 2:21-cv-07188-RGK-MAR.

### III. JUDICIAL STANDARD

#### A. 12(b)(1): Dismissal for Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and are "presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes of the Colville Reservation,* 873 F.2d 1221, 1225 (9th Cir. 1989). A party may move to dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When subject matter jurisdiction is challenged under Federal Rule of Civil Procedure ("Rule") 12(b)(1), the plaintiff has the burden of establishing jurisdiction. *Kingman Reef Atoll Invs., L.L.C. v. United States,* 541 F.3d 1189, 1197 (9th Cir. 2008).

#### B. 12(b)(6): Dismissal for Failure to State a Claim Upon Which Relief Can be Granted

Under Rule 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03348-RGK-MAR | Date | December 7, 2021 |
|---|---|---|---|
| Title | *Louis Loe v. United States of America, et al.* | | |

(2007)). A claim is plausible if the plaintiff alleges enough facts to draw a reasonable inference that the defendant is liable. *Iqbal*, 556 U.S. at 678. A plaintiff need not provide detailed factual allegations, but must provide more than mere legal conclusions. *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When ruling on a Rule 12(b)(6) motion, the Court must accept well-pled factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *See Autotel v. Nev. Bell. Tel. Co.*, 697 F.3d 846, 850 (9th Cir. 2012). Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

### IV.   DISCUSSION

Plaintiff's SAC alleges the following claims: (1) return of property pursuant to Federal Rule of Criminal Procedure ("Criminal Rule") 41(g); (2) damages under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); (3) a declaratory judgment that all Defendants violated Plaintiff's Fourth and Fifth Amendment rights; and (4) an injunction requiring that the Government Defendants provide an inventory of Plaintiff's seized property. Plaintiff does not oppose dismissal of his fourth claim.

In their Motions, Defendants present various arguments for dismissal of the SAC. The Government Defendants argue that the Court should dismiss Plaintiff's first and third claims for lack of subject matter jurisdiction or, alternatively, because the Court should exercise its discretion to abstain from hearing them. Johnson (in her individual capacity) and the Special Agent Defendants argue that the Court should dismiss Plaintiff's second claim because Plaintiff presents a new *Bivens* context, and the Court should not create a claim for the new context. The Court addresses each of Plaintiff's claims in turn.

#### A.   Claim 1: Return of Property

Plaintiff seeks a return of his seized property pursuant to Criminal Rule 41(g). Motions for return of property, as well as complaints seeking return of property under Criminal Rule 41(g), are generally "used to seek the return of seized property after an indictment has been issued." *Ramsden v. United States*, 2 F.3d 322, 324 (9th Cir. 1993). But district courts have the power to entertain, in civil cases, "motions to return property seized by the government when there are no criminal proceedings pending against the movant." *Id.* A court's power to adjudicate such demands for relief is equitable in nature and must therefore be exercised with "caution and restraint." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03348-RGK-MAR | Date | December 7, 2021 |
|---|---|---|---|
| Title | *Louis Loe v. United States of America, et al.* | | |

Courts consider four factors in deciding whether to exercise equitable jurisdiction under Criminal Rule 41(g): whether "(1) the Government displayed a callous disregard for the constitutional rights of the movant; (2) the movant has an individual interest in and need for the property he wants returned; (3) the movant would be irreparably injured by denying return of the property; and (4) the movant has an adequate remedy at law for the redress of his grievance." *United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005) (quoting *Ramsden*, 2 F.3d at 324–25). A pending judicial forfeiture proceeding provides the movant with an adequate remedy at law, and therefore weighs heavily against an exercise of equitable jurisdiction. *United States v. U.S. Currency $83,310.78*, 851 F.2d 1231, 1235 (9th Cir. 1988).

As a threshold matter, the fourth factor clearly cuts against exercise of jurisdiction here. The only relief Plaintiff seeks with this claim is equitable relief ordering the Government to return his property, and Plaintiff may obtain this relief in the judicial forfeiture proceeding pending before this Court. Courts tend to find the existence of a concurrent judicial forfeiture dispositive when determining whether to exercise equitable power over requests for return of property, because the forfeiture action functions as an adequate remedy at law. *See, e.g.*, *In re Return of Seized Property, Specifically All Funds Seized from BoundlessRise, LLC Wells Fargo Bank Account Number 'XXXX*, SACV 17-00771-CJC(JCGx), 2017 WL 4180149, at *1 (C.D. Cal. Aug. 30, 2017) ("A civil forfeiture proceeding gives the claimant 'an adequate remedy at law, *precluding* exercise of the district court's equitable powers.'") (emphasis added) (quoting *United States v. Clagett*, 3 F.3d 1355, 1356 (9th Cir. 1993)).

Even if the existence of an adequate remedy is not dispositive, the remaining *Kama* factors disfavor an exercise of jurisdiction here. Plaintiff has failed to establish the third factor—irreparable injury. He states only that he is suffering ongoing harm because he is "deprived of any use, benefit, enjoyment, or access" to his property and he "has no means to recover" it. (SAC ¶ 97.) These allegations do not demonstrate a specific, immediate need for the property at issue. *Cf. Snitko*, 2021 WL 3139706, at *5 (entering preliminary injunction in favor of Rule 41(g) movant in related case where movant established a likelihood of irreparable harm because he "need[ed] the [seized] money to pay for medical care and food"). Absent an immediate, exigent need for the property, Plaintiff's harm is remediable in the forfeiture proceeding. In a similar vein, the second factor—whether the movant has an individual interest in and need for the property—is neutral at best. Plaintiff may indeed have an interest in his property if it was legally obtained, but has no such interest if the currency is contraband. Finally, the Court declines to consider the first factor—whether the Government displayed a callous disregard for the constitutional rights of the movant—given that two of the *Kama* factors favor dismissal, one is neutral, and many courts consider a concurrent judicial forfeiture proceeding dispositive to the analysis. As discussed in Section IV.C, below, Plaintiff's constitutional arguments may be raised in the forfeiture proceeding.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03348-RGK-MAR | Date | December 7, 2021 |
|---|---|---|---|
| Title | *Louis Loe v. United States of America, et al.* | | |

Accordingly, the Court declines to exercise its equitable jurisdiction and **DISMISSES** Plaintiff's first claim.

### B.   Claim 2: Damages Pursuant to *Bivens*

With his second claim, Plaintiff requests, pursuant to *Bivens*, money damages against Johnson in her individual capacity and the Special Agent Defendants. Defendants argue that both alleged constitutional violations present new *Bivens* contexts, and there are reasons for the Court to hesitate before expanding the scope of *Bivens*. The Court agrees.

Federal law did not historically provide a cause of action for damages to those whose constitutional rights are violated by federal officials. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). With *Bivens*, however, the Supreme Court implied one, "even absent statutory authorization." *Id.* In *Bivens*, Federal Bureau of Narcotics agents violated the 4th Amendment when they arrested the plaintiff without a warrant, handcuffed him in front of his family, threatened to arrest his family, searched his apartment, and subjected him to a visual strip search. *See Bivens*, 403 U.S. at 389. Aside from *Bivens*, the Supreme Court has only recognized an implied cause of action for money damages against federal officers on two occasions: (1) a due process violation under the Fifth Amendment based on workplace discrimination, *Davis v. Passman*, 442 U.S. 228, 248–49 (1979); and (2) a violation of the Eighth Amendment's Cruel and Unusual Punishments Clause based on failure to provide medical care to an inmate, *Carlson v. Green*, 446 U.S. 14, 17–19 (1980).[2] Since 1980, the Court has recognized no new *Bivens* claims, chiefly due to separation-of-powers concerns; "[i]n most instances . . . the Legislature is in the better position to consider if the public interest would be served by imposing a new substantive legal liability." *Abbasi*, 137 S. Ct. at 1857.

In 2018, the Court made clear that judicial creation of new *Bivens* claims is a "disfavored judicial activity," and introduced a demanding two-step inquiry that courts must undertake before doing so. *Abbasi*, 137 S. Ct. at 1856–57. First, a court must determine "whether the plaintiff is seeking a *Bivens* remedy in a new context." *Lanuza v. Love*, 899 F.3d 1019, 1023 (9th Cir. 2018). If so, then the court must ask whether "special factors counsel hesitation," such that a new *Bivens* remedy should not be

---

[2] Plaintiff argues that the Supreme Court recognized a *Bivens* cause of action in *Groh v. Ramirez*, 540 U.S. 551 (2004). As other courts have recognized, the *Groh* Court was "not called on to decide . . . that the plaintiffs should be able to proceed with [their] claim," and therefore "seemed only to assume" that the claim was proper. *Annappareddy v. Pascale*, 996 F.3d 120, 136 n.9 (4th Cir. 2021). This explains why the Supreme Court did not include *Groh* in its list of recognized *Bivens* claims. *See Abbasi*, 137 S. Ct. 1843 at 1857 ("[T]he Court has refused to [extend *Bivens*] for the past 30 years.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03348-RGK-MAR | Date | December 7, 2021 |
|---|---|---|---|
| Title | *Louis Loe v. United States of America, et al.* | | |

implied. *Id.* Here, for the reasons explained below, the Court finds that Plaintiff's claims would extend *Bivens* to a new context and that special factors counsel against such an extension.

       1.    <u>New Context</u>

*Bivens* claims are typically limited to the circumstances of *Bivens*, *Carlson*, and *Davis*, and a case presents a "new context" if it differs "in a meaningful way" from that "*Bivens* trilogy." *Abbasi*, 137 S. Ct. at 1859. Virtually any other claim is a "new context" because "even a modest extension" of the original three *Bivens* cases "is still an extension." *Id.* at 1864; *see also Ahmed v. Weyker*, 984 F.3d 564, 570 (8th Cir. 2020) ("If the test sounds strict, it is."). The Supreme Court has listed several non-exclusive factors that indicate a case might meaningfully differ from *Bivens*. Those factors include the "rank of the officers involved," the "constitutional right at issue," and the "generality or specificity of the official action." *Abbasi*, 137 S. Ct. at 1859–60. After *Abbasi*, courts have also considered the type of injury suffered, along with "the mechanism of injury [] and the kinds of proof those injuries would require." *Farah v. Weyker*, 926 F.3d 492, 500 (8th Cir. 2020).

Plaintiff alleges violations of his Fourth and Fifth Amendment rights. The Court determines whether each presents a "new context" in turn.

       a.    Fourth Amendment

Plaintiff alleges that Defendants violated his Fourth Amendment rights when they searched his USPV box without probable case and pursuant to an invalid warrant, when Agent Zellhart misled the magistrate judge in order to obtain the warrant, and because the purported inventory search was done improperly and not pursuant to any "standardized agency policies and procedures." (SAC ¶¶ 117–124.) Using the "meaningful difference" factors laid out above, the Court determines that Plaintiff's allegations present a new *Bivens* context.[3]

**First**: Plaintiff's claim against ADIC Johnson differs from *Bivens* because Johnson's rank differs from the officers in *Bivens*. The plaintiff in *Bivens* brought an action against line-level federal agents who were present for and directly carried out the alleged constitutional violation. *Bivens*, 403 U.S. at 389. Plaintiff here does not allege that ADIC Johnson was present at the search of his box. Rather, he

---

[3] Because *Davis* and *Carlson* involved claims brought under different constitutional amendments, the Court compares Plaintiff's Fourth Amendment claim to the only member of the "*Bivens* trilogy" that could possibly be analogous: *Bivens* itself, which involved Fourth Amendment search and seizure violations. *Bivens*, 403 U.S. at 389.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03348-RGK-MAR | Date | December 7, 2021 |
|---|---|---|---|
| Title | *Louis Loe v. United States of America, et al.* | | |

alleges that due to her rank and the extensive nature of the operation, she must have either had "knowing participation in, and/or approval or ratification of the operational plan." (SAC ¶ 21.) Johnson's supervisory rank and attenuated involvement in the alleged violations indicate a new context.

**Second**: The alleged malfeasance of the Defendants and the mechanism of Plaintiff's injury differ from *Bivens*. *Bivens* involved federal agents operating without a warrant, who handcuffed and strip-searched the plaintiff while they searched his apartment. *Bivens*, 403 U.S. at 389–90. The agents' actions resulted in plaintiff's "humiliation, embarrassment, and mental suffering." *Id.* Defendants here did no such thing, and Plaintiff does not seem to have suffered injuries similar to *Bivens*. First and foremost, Defendants obtained a warrant prior to seizing the USPV boxes. Plaintiff alleges that Zellhart made misrepresentations to the magistrate to obtain the warrant, while the other Special Agent Defendants searched Plaintiff's box under the pretext of an inventory search. While the Ninth Circuit has yet to address facts such as these head-on, other courts have found that the existence of a warrant along with allegations that one or more defendants knowingly misled the magistrate are meaningfully different situations than *Bivens* and its straightforward warrantless search. *See, e.g.*, *Annappareddy*, 996 F.3d at 135–36 (finding new context and emphasizing that a search pursuant to a warrant presented different legal questions than the warrantless search in *Bivens*); *Ahmed*, 984 F.3d at 568 (finding new context where defendants did not themselves enter plaintiffs' home, but provided allegedly false information resulting in their arrest). Plaintiff also does not allege that he suffered emotional injuries to the extent of the *Bivens* plaintiff, further widening the gap between the two cases.

**Third:** Because the mechanism of Plaintiff's injury differs from *Bivens*, the type of evidence necessary to prove Plaintiff's case does as well. Because Plaintiff alleges that the federal agents obtained their warrant improperly, the Court would need to delve "into evidence before numerous decisionmakers," including the agents themselves and the magistrate judge. *Farah*, 926 F.3d at 499. *Bivens* required only an inquiry into the actions of arresting officers, rather than the "fact-checking and conscience-probing" required to establish that Defendants knowingly or recklessly made false statements on the warrant affidavit. *Ahmed*, 984 F.3d at 569. Such an inquiry poses a great "risk of intruding on the investigatory and prosecutorial functions of the executive branch." *Annappareddy*, 996 F.3d at 136.

Plaintiff argues that, because the Ninth Circuit has found a *Bivens* remedy proper in other Fourth Amendment contexts, this Court should follow suit. Plaintiff's argument impermissibly generalizes the *Bivens* analysis. *See Cantu v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019) ("Courts do not define a *Bivens* cause of action at the level of 'the Fourth Amendment' or even at the level of 'the unreasonable searches-and-seizures clause.'"); *see also Quintero-Perez v. United States*, 8 F.4th 1095, 1104 (9th Cir. 2021) (finding new context for Fourth Amendment claim despite "similarities between this case and *Bivens*"). The post-*Abbasi* cases that the Ninth Circuit found analogous to *Bivens* are distinguishable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03348-RGK-MAR | Date | December 7, 2021 |
|---|---|---|---|
| Title | ***Louis Loe v. United States of America, et al.*** | | |

from the present case, insofar as they involved a search or seizure of the plaintiff's person in addition to a search of his property. *See Ioane*, 939 F.3d at 952 (finding no new context where, as in *Bivens*, plaintiff claimed "that a federal agent conducted a warrantless search of her person"); *Brunoehler v. Tarwater*, 743 Fed. App'x 740, 743 (9th Cir. 2018) (finding no new context where plaintiff alleged that agents "arrested him in his home without probable cause").

Taking all of the above in its totality, the Court concludes that Plaintiff's Fourth Amendment claims present a meaningful difference from the claims in *Bivens*, and thus present a new context for the doctrine.

    b.  *Fifth Amendment*

Plaintiff alleges that Defendants violated his Fifth Amendment right against self-incrimination and right to due process by providing improper notice of the administrative forfeiture proceedings and by requiring claimants to identify themselves before they could claim their property. The only Fifth Amendment *Bivens* remedy implied by the Supreme Court involved a due process claim relating to federal workplace gender discrimination. *Davis*, 442 U.S. at 247–48. While Plaintiff's Fourth Amendment claims were superficially similar enough to *Bivens* to require a detailed analysis, the Court need not embark on such a journey here. Plaintiff's claims, brought against federal agents (not a workplace supervisor) and relating to an allegedly improper forfeiture proceeding (not gender discrimination) would unquestionably extend *Bivens* and *Davis* "to [a] new context [and a] new category of defendants." *Abbasi*, 137 S. Ct. at 1857.

    c.  *Conclusion*

For the foregoing reasons, Plaintiff's Fourth and Fifth Amendment claims present an extension of *Bivens* into a new context. Having established as much, the Court must now determine whether "special factors" exist here that "counsel hesitation" in creating a new *Bivens* claim.

  2.  <u>Reasons for Hesitation</u>

The focus of the "special factors" inquiry is "whether the judiciary is well-suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857–58. The threshold for whether a factor "counsels hesitation" is "remarkably low." *Canada v. United States*, 950 F.3d 299, 309 (5th Cir. 2020). Courts have considered many special factors, including: (1) the existence of an alternative remedial structure; (2) the level of intrusion into the functions of the executive branch required; and (3) whether a plaintiff is seeking to improperly challenge policy via its damages action. *See Abbasi*, 137 S. Ct. at 1861–63. The Court considers each in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03348-RGK-MAR | Date | December 7, 2021 |
|---|---|---|---|
| Title | ***Louis Loe v. United States of America, et al.*** | | |

                a.     *Alternative Remedial Structure*

    If there is an "alternative remedial structure present . . . that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* at 1858. An alternative remedial structure may "take many forms, including administrative, statutory, equitable, and state law remedies." *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018).

    The heart of Plaintiff's claims is that his property has been improperly taken and withheld from him. Congress has provided a remedy for such an injury, via the Civil Asset Forfeiture Reform Act ("CAFRA"), 18 U.S.C. § 983. The circuit courts that have addressed the issue have found that CAFRA provides the exclusive remedy for plaintiffs with claims related to forfeiture proceedings. *See Francis v. Milligan*, 530 F. App'x 138, 138 (3d Cir. 2015) ("CAFRA provides a remedy for the very claim [plaintiff] sought to bring under *Bivens*, and it provides the exclusive remedy for such a claim."); *Rankin v. United States*, 556 F. App'x 305, 311 (5th Cir. 2014) (holding similarly). District courts within the Ninth Circuit are in accord. *See, e.g.*, *Williams v. O'Donnell*, 3:19-CV-00418-BR, 2020 WL 6686416, at *6 (D. Or. Nov. 12, 2020). By creating an "exclusive remedy" for forfeiture claims, 18 U.S.C. § 983(e), Congress has indicated its intent to not create a money damages remedy for improper forfeitures. This alone likely "limit[s] the power" of the Court "to infer a new *Bivens* cause of action." *Abbassi*, 137 S. Ct. at 1858.[4]

                b.     *Interference with Functions of the Executive Branch*

    Another factor that courts consider is whether a damages action "would require courts to interfere in an intrusive way with sensitive functions of the Executive Branch." *Abbasi*, 137 S. Ct. at 1861. When a claim alleges that officers obtained a warrant pursuant to a false affidavit, the plaintiff must adduce evidence that would "invite a wide-ranging inquiry into the evidence available to investigators." *Farah*, 926 F.3d at 500. "Burdensome discovery" into "complicated investigations" typically counsels against creating a new *Bivens* action. *Cantu*, 933 F.3d at 424.

---

[4] Plaintiff argues that CAFRA does not serve to "fully compensate" him here, since money damages are not the same as a return of property. (Pl.'s Opp. to Johnson Mot. at 19.) However, a remedial structure may be adequate even if it does not include money damages, since "[t]he absence of statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages." *Schweiker v. Chilicky*, 487 U.S. 412, 421–22 (1988). "Less than complete relief is not a Congressional failure to provide meaningful safeguards and remedies." *Canada*, 950 F.3d at 310.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03348-RGK-MAR | Date | December 7, 2021 |
|---|---|---|---|
| Title | *Louis Loe v. United States of America, et al.* | | |

As laid out in the "new context" discussion above, Plaintiff is seeking to prove that Zellhart knowingly made material misstatements to obtain the search warrant and that Johnson was involved in "the operational plan for the seizure of the USPV safe deposit boxes . . . despite the complete absence of probable cause to do so." (SAC ¶ 21.) To do so, Plaintiff would need to adduce evidence as to "what [these Defendants] knew, what [they] did not know, and [their] state of mind." *Ahmed*, 984 F.3d at 570. As the Eighth Circuit notes, there are "'substantial costs' associated with requiring public officials to litigate these types of issues, including 'the diversion' of public resources and deterring 'able citizens from . . . public office.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982)). Because Congress is the entity that should be weighing whether a damages action is worth these costs, this factor also counsels against extending *Bivens*.

     *c.*  Bivens *Action as a Vehicle for Challenging Policy*

A *Bivens* action is not "a proper vehicle for altering an entity's policy." *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001). Such a "legal inquiry into the formulation and implementation of policy would impose too high a burden on officials' ability to effectively discharge their duties." *Quintero-Perez*, 8 F.4th at 1106. Plaintiff argues that he does not "challenge any general policies of the FBI," but the SAC indicates otherwise: "Plaintiff has no means to recover possession of [his] property because the government *has no established and standardized policies, procedures, or processes* for promptly returning Plaintiff's property to him." (SAC ¶ 97) (emphasis added.) At the very least, this allegation implicitly challenges the FBI's policy, or lack thereof, regarding return of property after an inventory search. Accordingly, yet another factor weighs against extending *Bivens* to Plaintiff's claims.

     *d.*  *Conclusion*

Because the above factors counsel hesitation against extending *Bivens* to Plaintiff's claims, the Court declines to do so. Therefore, because Plaintiff has no cause of action under *Bivens*, the Court **DISMISSES** his second claim against all individual Defendants.

  **C.**  <u>**Claim 3: Declaratory Relief**</u>

Plaintiff's remaining claim is for declaratory relief, asking the Court to declare that Defendants violated his Fourth and Fifth Amendment rights. Defendants argue, *inter alia*, that the Court should abstain from adjudicating Plaintiff's declaratory relief claim for prudential reasons. The Court agrees with Defendants.

The Declaratory Judgment Act authorizes courts to declare a party's rights, but does not mandate that they do so. *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942). When faced with a request

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03348-RGK-MAR | Date | December 7, 2021 |
|---|---|---|---|
| Title | *Louis Loe v. United States of America, et al.* | | |

for a declaratory judgment, "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of *practicality and wise judicial administration*." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) (emphasis added). When deciding whether to adjudicate a declaratory judgment claim, courts consider: (1) whether the relief would "serve a useful purpose in clarifying and settling the legal relations in issue"; and (2) whether relief would "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Eureka Fed. Sav. and Loan Ass'n v. Am. Cas. Co. of Reading, Pa*, 873 F.2d 229, 231 (9th Cir. 1989). When asked to adjudicate constitutional issues via declaratory relief, courts must be particularly cautious, and should not "decide any constitutional question in advance of the necessity for its decision." *Alabama State Fed'n of Labor v. McAdory*, 325 U.S. 450, 461 (1945); *see also Fletes-Mora v. Brownell*, 231 F.2d 579, 581 (9th Cir. 1955) ("The adjudication of alleged constitutional rights in a declaratory judgment action is not to be encouraged.").

The Court need not adjudicate Plaintiff's declaratory relief claim here. The Government has filed a judicial forfeiture action against the property contained within Plaintiff's box. That action is currently pending before this Court. Plaintiff may raise his argument that his constitutional rights were violated in that proceeding. *See United States v. $186,416.00 in U.S. Currency*, 590 F.3d 942, 948–50. If the Court were to find in Plaintiff's favor, it would necessarily issue an order stating that the Government had violated Plaintiff's constitutional rights. Given that this Court will adjudicate the very same issues in the forfeiture action, the Court finds that "considerations of practicality and wise judicial administration" counsel abstention, particularly because no coercive claim remains. *Wilton*, 515 U.S. at 288.

Accordingly, the Court **DISMISSES** Plaintiff's third claim.

**V.     CONCLUSION**

For the foregoing reasons, the Court **GRANTS** the Defendants' Motions.

**IT IS SO ORDERED.**